UNITED STATES DISTRICT COURT

EASTERN DISTRICT OF CALIFORNIA

SOUTH YUBA RIVER CITIZENS
LEAGUE and FRIENDS OF THE
RIVER,

NO. CIV. S-06-2845 LKK/JFM

        Plaintiffs,

    v.                                    O R D E R

NATIONAL MARINE FISHERIES
SERVICE, et al.,

        Defendants.

_____/

    Plaintiffs are two non-profit corporations suing to enforce provisions of the Administrative Procedures Act, 5 U.S.C. §§ 500-596, the Endangered Species Act, 16 U.S.C. §§ 1531-1544, and the Freedom of Information Act, 5 U.S.C. § 552. Defendants are the federal and local entities who play a role in the operation of the Daguerre dam on the Yuba River.

    The federal defendants have brought a motion to dismiss the plaintiffs' second, third, fifth, and eighth claims. For the

1    reasons described herein, the court grants the motion in part and

2    denies it in part.

3         The Cordua Irrigation District has brought a motion to

4    intervene. For the reasons described herein, the court grants the

5    motion.

### I. BACKGROUND AND FACTS[1]

7    **A.    Statutory Background**

8         Under the ESA, federal agencies must seek to conserve

9    endangered and threatened species. 16 U.S.C. § 1531(c)(1). Included

10   in this mandate are federal agencies' obligations not to take

11   species listed as threatened or endangered under the ESA. 16 U.S.C.

12   § 1538(a)(1). Every federal agency, before undertaking an action

13   authorized, funded, or carried out by that agency, must ensure that

14   the action is not likely to jeopardize an endangered species or

15   harm the habitat of an endangered species. 16 U.S.C. § 1536(a)(2).

16        If a federal agency seeks to take action in an area where

17   endangered or threatened species may be present, the agency must

18   conduct a biological assessment to determine the likely effect of

19   its proposed action on the species. 16 U.S.C. § 1536(c)(1); 50

20   C.F.R. § 402.02. If the agency concludes that its proposed action

21   may affect listed species or critical habitat, it must initiate

22   consultation with the Fish and Wildlife Service or National Marine

23   Fisheries Service ("NMFS"). The NMFS has authority over the species

24   at issue in the present case. After consultation, investigation and

25   _____

26        [1] The facts are derived from the plaintiff's third amended
     complaint and the papers filed in the instant motions.

analysis, NMFS prepares a biological opinion ("BiOp"). 16 U.S.C. § 1536(b)(3). The BiOp must be based on the best scientific and commercial data available. 16 U.S.C. § 1536(a).

The BiOp includes a summary of the information upon which it was based, a discussion of the effects of the action on the listed species or critical habitat, and the NMFS' opinion of whether the action is likely to jeopardize the existence of the listed species or threaten critical habitat. 50 C.F.R. § 402.12(h)(3). If the BiOp concludes that the action will not jeopardize the species or threaten critical habitat, or that there is a reasonable or prudent alternative to the action that would avoid these harms, the NMFS can issue an Incidental Take Statement ("ITS"). 16 U.S.C. § 1536(b)(4). The ITS describes conditions for the acting agency which, if followed, exempt the acting agency from liability under Section 9 of the ESA. Id.

While completing its action, the federal agency must report back to the NMFS on the action's progress and its impact on the species. 50 C.F.R. § 402.14(i)(3). The acting agency must reinitiate consultation with the NMFS if (1) the amount or extent of taking exceeds that specified in the ITS, or (2) new information shows that one agency's action may affect the protected species in a manner not previously contemplated, or (3) the agency's action has been modified, which may affect a protected species or critical habitat, or (4) a new species has been listed as endangered and the agency's action may affect that species. 50 C.F.R. § 402.16. The NMFS must then issue a new BiOp and ITS that reflect the changed

3

1   circumstances.  Id.

2   **B.   Procedural History**

3        The Plaintiffs filed their original complaint on December 20,

4   2006 against the National Marine Fisheries, the U.S. Army Corps of

5   Engineers, and related federal defendants.   This complaint was

6   amended on April 26, 2007 to add the Yuba County Water Agency as

7   a defendant.  Plaintiffs filed their third amended complaint on May

8   17, 2007, which is the complaint presently before the court.

9        The plaintiffs' claims center around three fish species, the

10  central valley spring-run Chinook, central valley steelhead and

11  green  sturgeon,  which  plaintiffs  contend  are  harmed  by  the

12  operation of the Daguerre and Englebright dams on the Yuba River.

13  The plaintiffs allege that the management of the Daguerre dam has

14  further  jeopardized  these  fish  species,  in  violation  of  the

15  Endangered Species Act. The plaintiffs also allege that the federal

16  defendants  have  violated  the  Administrative  Procedures  Act  by

17  failing to comply with the procedural requirements of the ESA.

18  Finally, the plaintiffs allege that the National Marine Fisheries

19  Service has violated the Freedom of Information Act by failing to

20  respond to the plaintiffs' requests for information.

21       On June 19, 2007, Dry Creek Mutual Water Company was permitted

22  to intervene for the remedial portion of the case. On July 24,

23  2007, Brophy Water District, and Hallwood Irrigation Company were

24  permitted  to  intervene  for  the  same  purpose.   The  federal

25  defendants and Yuba County Water Agency filed their answers on June

26  11, 2007 and the intervenors filed answers on June 27, 2007 and

4

1  July 27, 2007.

2  **C.   Factual Background**

3       The Army Corps filed a Biological Assessment with the NMFS

4  regarding the species affected by the Daguerre dam, pursuant to ESA

5  section 7. The NFMS issued a BiOp and ITS in 2002, for a period of

6  five years. In March 2007, the Army Corps delivered a letter and

7  biological assessment to NMFS requesting reitiation of consulation

8  for the spring Chinook and steelhook, and requesting initiation of

9  consultation for the green sturgeon. In April 2007, the NMFS issued

10 a new BiOp and ITS for a period of one year, with the caveat that

11 consultations were still on-going.

12 **D.   Cordua Irrigation District**

13      Cordua Irrigation District ("CID") is a water company that

14 diverts water upstream of Daguerre Point Dam. There are two

15 diversions at Daugerre.  The south side is controlled by YCWA and

16 delivers water to the South Yuba Water District, Brophy Water

17 District, and Dry Creek Mutual Water Company.  The northern side

18 of the dam delivers water to the Hallwood Water Company and Cordua

19 Irrigation District.

20      Daguerre creates a head that allows CID to divert water into

21 the North Canal by gravity flow.  CID alleges that it relies on the

22 retention of debris caused by the dam so that the debris does not

23 block the water from going into the diversion facilities owned by

24 CID.

25      CID has significantly invested in maintaining the dam.  CID

26 constructed a fish screen on the North Canal that can only be

1  operable at the current head elevation that Daguerre provides. CID

2  is a contractual partner with YCWA for the sale and purchase of

3  water from Daguerre. Additionally, CID alleges that it has

4  appropriative rights and water rights that predate the creation of

5  the dam.

6                              **II. STANDARDS**

7  **A.   MOTION TO DISMISS**

8        **1.   Standard for Dismissal Under Federal Rule of Civil**

9             **Procedure 12(b)(1)**

10       It is well established that the party seeking to invoke the

11  jurisdiction of the federal court has the burden of establishing

12  that jurisdiction exists. KVOS, Inc. v. Associated Press, 299 U.S.

13  269, 278 (1936); Scott v. Breeland, 792 F.2d 925, 927 (9th Cir.

14  1986).  On a motion to dismiss pursuant to Federal Rule of Civil

15  Procedure 12(b)(1), the standards that must be applied vary

16  according to the nature of the jurisdictional challenge.

17       If the challenge to jurisdiction is a facial attack, i.e., the

18  defendant contends that the allegations of jurisdiction contained

19  in the complaint are insufficient on their face to demonstrate the

20  existence of jurisdiction, the plaintiff is entitled to safeguards

21  similar to those applicable when a Rule 12(b)(6) motion is made.

22  The factual allegations of the complaint are presumed to be true,

23  and the motion is granted only if the plaintiff fails to allege an

24  element necessary for subject matter jurisdiction.  See 2A J.

25  Moore, J. Lucas & G. Grotheer, Moore's Federal Practice, ¶ 12.07

26  (2d ed. 1987); see also Eaton v. Dorchester Development, Inc., 692

1  F.2d 727, 731 (11th Cir. 1982); Williamson v. Tucker, 645 F.2d 404,

2  412 (5th Cir. 1981), cert. denied, 454 U.S. 897 (1981); Mortensen

3  v. First Fed. Sav. & Loan Ass'n., 549 F.2d 884, 891 (3d Cir. 1977).

4  A  complaint  will  be  dismissed  for  lack  of  subject  matter

5  jurisdiction (1) if the case does not "arise under" any federal law

6  or  the  United  States  Constitution,  (2)  if  there  is  no  case  or

7  controversy within the meaning of that constitutional term, or (3)

8  if the cause is not one described by any jurisdictional statute.

9  Baker v. Carr, 369 U.S. 186, 198 (1962).

10      If  the  challenge  to  jurisdiction  is  made  as  a  "speaking

11  motion" attacking the truth of the jurisdictional facts alleged by

12  the  plaintiff,  a  different  set  of  standards  must  be  applied.

13  Thornhill Pub. Co., Inc. v. General Tel. & Elec. Corp., 594 F.2d

14  730,  733  (9th  Cir.  1979).   Where  the  jurisdictional  issue  is

15  separable from the merits of the case, the district court is free

16  to hear evidence regarding jurisdiction and to rule on that issue

17  prior  to  trial,  resolving  factual  disputes  where  necessary.

18  Augustine v. United States, 704 F.2d 1074, 1077 (9th Cir. 1983);

19  Thornhill,  594  F.2d  at  733.   "In  such  circumstances  '[n]o

20  presumptive truthfulness attaches to plaintiff's allegations, and

21  the  existence  of  disputed  material  facts  will  not  preclude  the

22  trial court from evaluating for itself the merits of jurisdictional

23  claims.'"  Augustine, 704 F.2d at 1077 (quoting Thornhill, 594 F.2d

24  at 733).

25          However,  where  the  jurisdictional  issue  and
           substantive issues are so intertwined that the
26          question  of  jurisdiction  is  dependent  on  the

7

> resolution of factual issues going to the merits, the jurisdictional determination should await a determination of the relevant facts on either a motion going to the merits or at trial.

Augustine, 704 F.2d at 1077 (citing Thornhill, 594 F.2d at 733-35; 5 C. Wright & A. Miller, Federal Practice & Procedure § 1350, at 558 (1969 & Supp. 1987)).  On a motion going to the merits, the court must, of course, employ the standard applicable to a motion for summary judgment.  Farr v. United States, 990 F.2d 451, 454 n. 1 (9th Cir. 1993), cert. denied, 510 U.S. 1023 (1993).

> **2.   Standard for Dismissal Pursuant to Federal Rule of Civil Procedure 12(b)(6)**

On a motion to dismiss, the allegations of the complaint must be accepted as true.  See Cruz v. Beto, 405 U.S. 319, 322 (1972).  The court is bound to give the plaintiff the benefit of every reasonable inference to be drawn from the "well-pleaded" allegations of the complaint.  See Retail Clerks Intern. Ass'n, Local 1625, AFL-CIO v. Schermerhorn, 373 U.S. 746, 753 n.6 (1963).  Thus, the plaintiff need not necessarily plead a particular fact if that fact is a reasonable inference from facts properly alleged. See id.; see also Wheeldin v. Wheeler, 373 U.S. 647, 648 (1963) (inferring fact from allegations of complaint).

In general, the complaint is construed favorably to the pleader.  See Scheuer v. Rhodes, 416 U.S. 232, 236 (1974).  The court may not dismiss the complaint if there is a reasonably founded hope that the plaintiff may show a set of facts

consistent with the allegations.  <u>Bell Atlantic Corp. v.</u>
<u>Twombly</u>, 127 S.Ct. 1955, 1967-69 (2007).  In spite of the
deference the court is bound to pay to the plaintiff's
allegations, however, it is not proper for the court to assume
that "the [plaintiff] can prove facts which [he or she] has not
alleged, or that the defendants have violated the . . . laws in
ways that have not been alleged."  <u>Associated General</u>
<u>Contractors of California, Inc. v. California State Council of</u>
<u>Carpenters</u>, 459 U.S. 519, 526 (1983).

**B.   MOTION TO INTERVENE**

    **1.   Standard for Intervention Under Federal Rule of Civil**
       **Procedure 24(a)(2)**

    Rule 24(a)(2) directs the district court to grant
intervention if "(1) the applicant's motion is timely; (2) the
applicant has asserted an interest relating to the property or
transaction which is the subject of the action; (3) the
applicant is so situated that without intervention the
disposition may, as a practical matter, impair or impede its
ability to protect that interest; and (4) the applicant's
interest is not adequately represented by the existing parties."
<u>Portland Audubon Society v. Hodel</u>, 866 F.2d 302, 308 (9th Cir.
1989); <u>United States v. State of Oregon</u>, 913 F.2d 576, 587 (9th
Cir. 1990). "Rule 24 is broadly construed in favor of applicants
for intervention." <u>United States v. Stringfellow</u>, 783 F.2d 821,
826 (9th Cir. 1986). The test should be applied with an eye on
practical consideration.  <u>Id.</u> <u>citing</u>, Fed. R. civ. P. 24(a)(2)

advisory note ("if an [applicant] would be substantially affected in a practical sense by the determination made in an action, [the applicant] should, as a general rule, be entitled to intervene...")<u>Id.</u> at 821.

**2.   Standard for Intervention Under Federal Rule of Civil Procedure 24(b)(2)**

Where a party may not intervene as a matter of right under Federal Rule of Civil Procedure 24(a), the court may consider whether permissive intervention under Federal Rule of Civil Procedure 24(b) is appropriate.  See <u>Spangler v. Pasadena Board of Education</u>, 552 F.2d 1326, 1329 (9th Cir. 1977).  The district court's discretion to grant or deny permissive intervention is broad, <u>see</u> <u>Spangler</u>, 552 F.2d at 1329 (citing <u>United States v. Board of School Commissioners</u>, 466 F.2d 573, 576 (9th Cir. 1972)), and includes the discretion to limit intervention to particular issues.  See <u>Van Hoomissen v. Xerox Corp.</u>, 497 F.2d 180, 181 (9th Cir. 1974) (citation omitted).

Rule 24(b) permits intervention "when a statute of the United States confers a conditional right to intervene[,]" Fed. R. Civ. P. 24(b)(1), or when an applicant's claim or defense shares a common question of law or fact with the main action. Fed. R. Civ. P. 24(b)(2).  Applicants seeking permissive intervention under Rule 24(b)(2) must also demonstrate that the court has an independent  basis for jurisdiction over its claims or defenses.  See <u>Donnelly v. Glickman</u>, 159 F.3d 405, 412 (9th

1  Cir. 1998) (citing <u>Northwest Forest Resource Council v.</u>

2  <u>Glickman</u>, 82 F.3d 825, 839 (9th Cir. 1996)).

3       Although both Rule 24(b)(1) and (b)(2) require timely

4  application, <u>see</u> <u>Donnelly</u>, 159 F.3d at 839, the determination of

5  timeliness is analyzed more stringently where permissive

6  intervention is sought than where the intervention is as of

7  right.  <u>See</u> <u>League of United Latin American Citizens v. Wilson</u>,

8  131 F.3d 1297, 1308 (9th Cir. 1997) (citing <u>United States v.</u>

9  <u>Oregon</u>, 745 F.2d 550, 552 (9th Cir. 1984)).  Unlike intervention

10 as of right, however, a legally protectable interest is not

11 required for permissive intervention.  <u>See</u> <u>Employee Staffing</u>

12 <u>Services, Inc. v. Aubry</u>, 20 F.3d 1038, 1042 (9th Cir. 1994)

13 (citing <u>S.E.C. v. United States Realty & Improvement Co.</u>, 310

14 U.S. 434, 459 (1940)).

15      If the above threshold conditions for either Rule 24(b)(1)

16 or 24(b)(2) are met, the court must then determine whether

17 intervention will unduly delay the main action or will unfairly

18 prejudice the original parties.  <u>See</u> <u>Donnelly</u>, 159 F.3d at 412

19 (citing Fed. R. Civ. P. 24(b)(2)); <u>Venegas v. Skaggs</u>, 867 F.2d

20 527, 530 (9th Cir. 1989), <u>aff'd on other grounds sub nom.</u>

21 <u>Venegas v. Mitchell</u>, 495 U.S. 82 (1990).  The court should also

22 evaluate "whether the movant's 'interests are adequately

23 represented by existing parties,'" <u>see</u> <u>Venegas v. Skaggs</u>, 867

24 F.2d at 530 (citing <u>State of California v. Tahoe Regional</u>

25 <u>Planning Agency</u>, 792 F.2d 775, 779 (9th Cir. 1986)), the nature

26 and extent of the interveners' interest, their standing to raise

1  relevant legal issues, and the legal position they seek to

2  advance and its probable relation to the merits of the case.

3  See Spangler, 552 F.2d at 1329.  The court may also consider

4  whether parties seeking intervention will significantly

5  contribute to full development of the underlying factual issues

6  in the suit and to the just and equitable adjudication of the

7  legal questions presented.  See Spangler, 552 F.2d at 1329

8  (citing Hines v. Rapides Parish School Bd., 479 F.2d 762, 765

9  (5th Cir. 1973)).  Finally, consideration of "judicial economy"

10 is also relevant in deciding a motion for permissive

11 intervention.  See Venegas, 867 F.2d at 531.

12                          **III. ANALYSIS**

13 **A. MOTION TO DISMISS**

14      The federal defendants have moved to dismiss plaintiffs'

15 second, third, fifth, and eighth claims. As explained below,

16 defendants' motion is granted in part and denied in part.

17      **1.   Plaintiffs' Second Claim for Relief Is Moot**

18      In Plaintiffs' second claim, they seek a declaratory

19 judgment that the NMFS and the Army Corps have failed to

20 reinitiate consultation and an injunction to compel such

21 consultation. Federal regulations require reinitiation of formal

22 consultations when certain conditions occurs. 50 C.F.R. §

23 402.16. Plaintiffs allege that circumstances have occurred to

24 trigger this requirement. Because the agencies allegedly have

25 failed to reinitiate consultations as the regulations require,

26

1   the plaintiffs claim that NMFS and the Army Corps have violated

2   the APA. See 5 U.S.C. § 706(2).

3        As the defendants demonstrate, the NMFS and Army Corps have

4   reinitiated the formal consultation process, rendering this

5   claim moot. A claim is moot if it does not present the court

6   with an actual, live controversy and if there is no effective

7   relief that the court could provide. Am. Rivers v. Nat'l Marine

8   Fisheries Serv., 126 F.3d 1118, 1123 (9th Cir. 1997); S. Or.

9   Barter Fair v. Jackson County, 372 F.3d 1128, 1134 (9th Cir.

10  2004).

11       On March 23, 2007, the Army Corps requested initiation of

12  formal consultations. Declaration of Michael Dietl ("Deitl

13  Decl.") ¶ 4; Declaration of Michael Tucker ("Tucker Decl.") ¶ 2.

14  As a result, NMFS apparently issued a condensed, new BiOp and

15  intends to issue a completed BiOp by November 2, 2007.

16  Plaintiffs have presented nothing to contradict this. Dietl

17  Decl. ¶¶ 6-7; Tucker Decl. ¶¶ 3-4. Therefore, the claim for

18  injunctive relief is moot, as the action the plaintiffs seek the

19  court to compel has already occurred. Given this, there is also

20  no purpose in the court entering the declaratory judgment that

21  the plaintiffs seek.

22       Defendants' motion to this claim is granted.

23       **2.   Plaintiffs' Third Claim Was Not Properly Noticed, and**

24            **Therefore Must Be Dismissed for Want of Subject-Matter**

25            **Jurisdiction**

26

1    In their third claim for relief, plaintiffs allege that the
2   Army Corps violated its duty under the ESA to insure that its
3   actions do not jeopardize the continued existence of a listed
4   species or adversely affect a critical habitat. Specifically,
5   the plaintiffs argue that the 2002 and 2007 BiOps are so flawed
6   that the Army Corps' reliance on them constitutes a violation of
7   the ESA. See 16 U.S.C. § 1536(a)(2).

8    Defendants argue that plaintiffs' second and third claims
9   are constructively identical, in that they allege that the Army
10  Corps has not met its duties under 16 U.S.C. § 1536(a)(2). For
11  this reason, defendants contend, because plaintiffs failed to
12  timely notice their second claim, the court lacks subject matter
13  jurisdiction over it. The issues before the court, therefore,
14  are whether claims two and three are distinct and whether
15  plaintiffs properly noticed claim three.

16          **a.   Plaintiffs' Claims Two and Three State Distinct**
17                       **Causes of Action**

18   The ESA requires that federal agencies "insure that any
19  action authorized, funded, or carried out by such agency . . .
20  is not likely to jeopardize the continued existence of any
21  species listed as endangered or threatened. 16 U.S.C. §
22  1536(a)(2). A private party may bring a citizen suit to enforce
23  this obligation. 16 U.S.C. § 1540(g)(1); Bennett v. Spear, 520
24  U.S. 154, 173 (1997). In Bennett, the Supreme Court held that
25  the citizen-suit provision of the ESA is a permissible means of
26  enforcing the substantive provisions of the ESA, including those

14

1  that bind federal agencies. <u>Bennett</u>, 520 U.S. at 173. Section

2  1536(a)(2) clearly imposes a substantive duty on federal

3  agencies, and the Ninth Circuit has repeatedly permitted parties

4  to use ESA citizen suits to enforce it. <u>Nagrampa v. Mailcoups</u>

5  <u>Inc.</u>, 413 F.3d 1024, 1034 (9th Cir. 2005); <u>Envtl. Prot. Info.</u>

6  <u>Ctr. v. Simpson Timber Co.</u>, 255 F.3d 1073 (9th Cir. 2001).

7       The ESA and the related federal regulations also describe

8  procedures that agencies must follow when undertake an action

9  that may affect a threatened or endangered species. Before

10 undertaking such an action, the federal agency must consult with

11 the NMFS. 16 U.S.C. § 1536(a). After the consultation, the NMFS

12 issues a Biological Opinion ("BiOp") that describes the

13 potential effect of the agency's action on protected species. 16

14 U.S.C. § 1536(b). If the NMFS concludes that the agency's action

15 is likely to jeopardize a protected species, NMFS must identify

16 reasonable and prudent alternatives. <u>Id.</u> If the NMFS determines

17 that the agency's action will not likely jeopardize protected

18 species, then the action is permitted. <u>Id.</u>

19      Under certain circumstances, both the NMFS and the acting

20 agency have a duty to reinitiate consultation. 50 C.F.R. §

21 402.16. Reinitiation of consultation requires that the NMFS

22 issue a new BiOp that takes account of the changed

23 circumstances. <u>Id.</u>

24      If a federal agency fails to adhere to these procedural

25 requirements, a court may hold that the agency has violated the

26 Administrative Procedures Act (APA). <u>Pyramid Lake Paiute Tribe</u>

15

1  of Indians v. United States Dep't of the Navy, 898 F.2d 1410,

2  1414 (9th Cir. 1990). A court may set aside agency actions that

3  are "arbitrary, capricious, an abuse of discretion or otherwise

4  not in accordance with the law." 5 U.S.C. § 706(2)(A). For

5  example, a BiOp based on incomplete or outdated information may

6  constitute arbitrary and capricious action, thus violating the

7  APA. Resources Ltd., Inc. v. Robertson, 35 F.3d 1300, 1305 (9th

8  Cir. 1994); see also Envtl. Prot. Info. Ctr., 255 F.3d at 1079;

9  Pacific Coast Fed'n of Fishermen's Ass'ns. v. Nat'l. Marine

10  Fisheries Serv., 265 F.3d 1028, 1034 (9th Cir. 2001).

11      It is therefore apparent that the ESA imposes both

12  substantive and procedural duties on federal agencies. The

13  former is enforced via the citizen-suit provision of the ESA and

14  the latter is enforced via the APA. Even if the claims are

15  factually related, they nevertheless give rise to two distinct

16  claims. See, e.g., Envtl. Prot. Info. Ctr., 255 F.3d at 1079.

17      The plaintiffs' second and third claims of their Third

18  Amended Complaint assert, respectively, the procedural and

19  substantive claims described above. Their second claim alleges

20  that the Army Corps' and NMFS' failure to reinitiate

21  consultation when they were required to do so under the federal

22  regulations. See 50 C.F.R. § 402.16. The plaintiffs state: "[b]y

23  . . . failing to reinitiate consultation, NMFS and the Corps

24  violated the ESA and have acted in a manner that is arbitrary,

25  capricious, an abuse of discretion, and otherwise contrary to

26  law, in violation of the APA [citation]." In contrast, the

plaintiffs' third claim asserts that, by relying on allegedly deficient BiOps, the Army Corps breached its substantive duty to insure that its actions do not jeopardize threatened species or critical habitats. The plaintiffs' second and third claims, therefore, are plainly distinct.

As a result, the court cannot agree with defendants' contention that if plaintiffs failed to properly notice their second claim, then they necessarily failed to properly notice their third claim. Plaintiffs' second and third claims are distinct, and each is governed by a separate notice requirement. Importantly, the Ninth Circuit has held that this notice requirement does not apply to claims brought under the APA. American Rivers v. Nat'l Marine Fisheries Serv., 126 F.3d 1118, 1124-25 (9th Cir 1997). Therefore, the defendants are in error in asserting that the plaintiffs' second claim was improperly noticed, as there exists no such notice requirement for APA claims. The court must instead consider whether claim three was noticed properly, regardless of whether notice was given for claim two.

### b.   Plaintiffs Did Not Provide Adequate Notice for Their Third Claim

Citizen suits brought to enforce the ESA may not be commenced without first giving at least sixty-day notice to the Secretary of the Interior. 16 U.S.C. § 1540(g)(2)(A)(i). Compliance with this provision is a jurisdictional prerequisite. Sw. Ctr. for Biological Diversity v. U.S. Bureau of Reclamation,

143 F.3d 515, 520 (9th Cir. 1998). Notice is adequate if it provides potential defendants with notice of the issues the plaintiffs intend to pursue in litigation, so that the alleged violations may be corrected. Id. at 522; Marbled Murrelet v. Babbitt, 83 F.3d 1068, 1073 (9th Cir. 1996). The notice requirement must be complied with strictly, and cannot be given a "flexible or pragmatic construction." Sw. Ctr. for Biological Diversity, 143 F.3d at 520; Hallstrom v. Tillamook County, 493 U.S. 20, 26-28 (1989).

Here, the plaintiffs sent a notice of intent to sue letter to the federal defendants on December 20, 2006.[2] In the letter, the plaintiffs described the crux of what would become the third claim of their amended complaint: that, by relying on an allegedly inadequate BiOp, the Army Corps breached its duty under the ESA to avoid jeopardizing protected species or critical habitat. However, these allegations were based only on the defendants' 2002 BiOp, as the notice letter preceded the issuance of the April 27, 2007 BiOp.

On March 12, 2007, plaintiffs filed their First Amended Complaint, in which they included their third claim for the first time. This claim alleged that both the 2002 and 2007 BiOps were faulty and that the Corps violated its substantive duty under the ESA by relying on them. Although it is true that this claim was adequately noticed as to the 2002 BiOp, the plaintiffs

---

[2] This letter was received by all federal defendants on January 8, 2007.

never satisfied the notice requirement as to that portion of
their third claim that alleged faulty reliance on the 2007 BiOp.
Because the plaintiffs must strictly comply with the notice
requirement of section 1540(g)(2)(A)(I), the court is compelled
to conclude that it has no subject matter jurisdiction over this
claim. See Sw. Ctr. for Biological Diversity, 143 F.3d at 520;
Hallstrom, 493 U.S. at 26-28.

Because the plaintiffs did not meet the notice requirement
for Claim Three, defendants' motion to dismiss is granted as to
this claim.

### 3.   Plaintiffs' Fifth Claim for Relief Is Not Moot

In their fifth claim, plaintiffs allege that NMFS violated
the Freedom of Information Act by not releasing all documents
that plaintiff South Yuba River Citizens League requested. A
federal agency's failure to release all nonexempt material in
response to a FOIA request is a claim upon which relief may be
granted. See Papa v. United States, 281 F.3d 1004, 1013 (9th
Cir. 2004). Defendants concede this in their reply.
Consequently, defendants' motion to dismiss is denied as to this
claim.

### 4.   Plaintiffs' Eighth Claim for Relief

In the eighth claim, the plaintiffs allege that NMFS's
failure to issue a complete and final BiOp and Incidental Take
Statement violates the APA. Defendants argue that this does not
state a claim upon which relief may be granted, and that the
plaintiffs lack standing.

1          **a.   Plaintiffs State a Claim Upon Which Relief May Be**

2               **Granted**

3          Under the ESA, the NMFS must issue a BiOp and ITS after

4     consultation with the federal agency that seeks to take action

5     that may affect protected species or critical habitats. The ESA

6     requires that the consultation be completed within ninety days

7     and the BiOp issued "promptly" thereafter. 16 U.S.C. § 1536(b).

8     If the NMFS concludes that the agency's action will not

9     jeopardize protected species or critical habitats, or that there

10    are reasonable and prudent alternatives to the agency's proposed

11    action, NMFS may issue an ITS. The ITS establishes conditions

12    for the agency's taking of protected species. Nat'l Wildlife

13    Fed'n v. Nat'l Marine Fisheries Serv., 481 F.3d 1230 (9th Cir.

14    2007).

15         If the NMFS and acting agency fail to adhere to these

16    procedures, the agencies may be held liable under the APA. 5

17    U.S.C. § 706(1). Flaws in the BiOp and ITS may be "arbitrary,

18    capricious, an abuse of discretion or otherwise not in

19    accordance with the law" under section 706(1) of the APA. Oregon

20    Natural Res. Council v. Allen, 476 F.3d 1031 (9th Cir. 2007);

21    Arizona Cattle Growers' Ass'n. v. United States Fish and

22    Wildlife, Bureau of Land Management, 273 F.3d 1229 (9th Cir.

23    2001). Plaintiffs allege that NMFS has failed to adhere to the

24    ESA's timeframes for issuance of the BiOp and ITS, and that this

25    violates 5 U.S.C. section 706(1). This states a claim upon which

26    relief may be granted.

1    Additionally, plaintiffs allege that an ITS is a "license"

2  and that the defendants have violated the APA's requirement that

3  license must be issued within a reasonable time and with due

4  regard for the rights of interested parties and those adversely

5  affected. Defendants contend that an ITS is not a license but a

6  safe harbor from liability, making 5 U.S.C. section 558(c)

7  inapplicable.

8    The court agrees with plaintiffs' interpretation of

9  "license" in 5 U.S.C. section 558(c) to include Incidental Take

10 Statements. The APA defines a "license" as "an agency permit,

11 certificate, approval, registration, charter, membership,

12 statutory exemption or other form of permission."  5 U.S.C. §

13 551(8). This definition is "extremely broad." Air N. Am. v.

14 Dep't of Transp., 937 F2d 1427, 1437 (9th Cir. 1991).

15   An ITS plainly meets this definition. An ITS must, among

16 other things, specify the reasonable and prudent measures the

17 NMFS considers necessary to minimize the impact of incidental

18 taking and describe the terms and conditions with which the

19 acting agency must comply in implementing these measures. 16

20 U.S.C. § 1536(b)(4). If the acting agency complies with the

21 terms and conditions, it is exempt from penalties for such

22 takings. 16 U.S.C. § 1536(o)(2). An ITS, therefore, is a form of

23 permission under section 551(8) of the APA, as it specifies

24 conditions under which the federal agency is permitted to take

25 protected species. See Oregon Natural Res. Council, 476 F.3d at

26 1036 ("the Incidental Take Statement's primary function is to

21

1  authorize the taking of animals incidental to the execution of a

2  particular proposed action"); <u>see</u> <u>also</u> <u>Bennett</u>, 520 U.S. at 169-

3  71; <u>Ramsey v. Kantor</u>, 96 F.3d 434, 439 (9th Cir. 1996). An ITS

4  protects a federal agency from liability only when the agency

5  has complied with the specific terms and conditions of the ITS.

6  50 C.F.R. § 402.14(i)(5); <u>see</u> <u>also</u> <u>Oregon Natural Res. Council</u>,

7  476 F.3d at  1040; <u>Nat'l Wildlife Fed'n.</u>, 481 F.3d at 1230.

8  Nothing in the plain language of the APA and ESA, nor the Ninth

9  Circuit's description of the ITS, suggests to this court that

10  the ITS as a matter of law cannot be considered a license under

11  the APA.

12      Therefore, the plaintiffs' eighth claim states a claim upon

13  which relief may be granted, based upon either 5 U.S.C. section

14  558(c) or section 706(1).

15          **b.    Plaintiffs Have Standing to Assert Their Eighth**

16              **Claim**

17      To demonstrate standing under Article III, a plaintiff must

18  show that (1) it has suffered an actual, concrete injury in

19  fact, (2) this injury is fairly traceable to the defendant, and

20  (3) it is likely that a favorable decision by the court will

21  redress the injury. <u>Friends of the Earth, Inc. v. Laidlaw Envtl.</u>

22  <u>Servs.</u>, 528 U.S. 167, 180-81 (2000). When a plaintiff brings a

23  claim under the APA, he must also show that his alleged injury

24  is arguably within the zone of interests that the statute was

25  designed to protect. <u>Douglas County v. Babbitt</u>, 48 F.3d 1495,

26

1  1499 (9th Cir. 1995); <u>Yesler Terrace Cmty. Council v. Cisneros</u>,

2  37 F.3d 442, 444 (9th Cir. 1994).

3      The plaintiffs have met the requirements for Article III

4  standing. First, plaintiffs have asserted an injury in fact.

5  When a plaintiff asserts a procedural injury, he need only show

6  that "the procedures in question are designed to protect some

7  threatened concrete interest of his that is the ultimate basis

8  of his standing." <u>Lujan v. Defenders of Wildlife</u>, 504 U.S. 555,

9  573 n. 8 (1992). When the plaintiff's underlying interest is

10 protection of the environment, it adequately alleges an injury

11 in fact if it avers that it uses the affected area and that the

12 challenged activity would lessen the aesthetic and recreational

13 values of the area for the plaintiffs. <u>Friends of the Earth</u>, 528

14 U.S. at 183. Here, the plaintiffs have alleged that they enjoy

15 the Yuba River and its fish inhabitants for "wildlife viewing,

16 scientific observation, educational study, aesthetic enjoyment,

17 spiritual contemplation, and recreation." The plaintiffs'

18 contention that federal agencies' failure to issue a prompt and

19 complete BiOp and ITS, which would minimize the harm to the

20 protected fish species in the Yuba River, satisfactorily

21 demonstrates an injury-in-fact. <u>See</u> <u>Bennett</u>, 520 U.S. at 168

22     Second, the plaintiffs have shown that their injury in fact

23 is fairly traceable to the acts of the defendants and that court

24 action will redress the harm. When a plaintiff's injury in fact

25 is procedural, the causation and redressibility requirements of

26 Article III are relaxed. <u>Cantrell v. City of Long Beach</u>, 241

1  F.3d 674, 682 (9th Cir. 2001).   Where the plaintiff has met the

2  requirements for alleging an injury-in-fact of a procedural

3  right, the plaintiff will be granted standing and he need not

4  show that when the federal agency undertakes the procedures

5  sought, the outcome will be favorable to the plaintiff. Id.

6  (collecting cases). Therefore, the court must concluded that

7  plaintiffs have met Article III's requirements for standing.

8       Finally, the plaintiffs have also met the prudential

9  requirement that their injury fall within the zone of interests

10 that a statute seeks to protect. The plaintiffs assert an

11 interest in the protection of threatened species present in the

12 Yuba River. They also allege that federal agencies have failed

13 to adhere to the procedural requirements of the ESA in order to

14 protect these species. The Ninth Circuit has held that this

15 interest falls within the zone of interests of the ESA, and

16 therefore the plaintiffs have standing to sue under the APA. See

17 Envtl. Prot. Info. Ctr., 255 F.3d at 1079; see also Bennett, 520

18 U.S. at 162-63.

19      The court holds that the plaintiffs' eighth claim states a

20 claim upon which relief may be granted and that the plaintiffs

21 have standing to assert it. The defendants' motion to dismiss is

22 denied as to this claim.

23 **B.   MOTION TO INTERVENE**

24      CID argues that they should be granted intervention as a

25 matter of right under Federal Rule of Civil Procedure 24(a)(2)

26 or, alternatively, that they should be granted permissive

1  intervention under Rule 24(b)(2). The court concludes that CID

2  has met both standards and therefore grants the motion to

3  intervene.

4         **1.    Intervention as a Matter of Right**

5         In order to be granted intervention as a matter a right

6  under Federal Rule of Civil Procedure 24 (a)(2), the entity

7  seeking to intervene must satisfy a four part test.  This four

8  part test includes the following:  a timely application, that

9  the would-be intervenor has a significant interest relating to

10 the property or transaction involved in the pending lawsuit,

11 that the disposition of the lawsuit may adversely affect the

12 would-be intervenor's interest without intervention, and that

13 the existing parties do not adequately represent the potential

14 intervenor's interests.  <u>Arakai v. Cayetano</u>, 324 F.3d 1078, 1083

15 (9th Cir. 2003).

16        **a.    Timeliness of CID's Motion for Intervention**

17        In determining whether the motion to intervene was timely,

18 the court must consider the stage of the proceeding at which an

19 applicant seeks to intervene, the prejudice to the other

20 parties, and the reason for the length of the delay.  <u>United</u>

21 <u>States ex. Rel. McGough v. Convington Technologies</u> Co., 967 F.2d

22 1391, 1384 (9th Cir. 1992); <u>United States v. Oregon</u>, 745 F.2d

23 550, 552 (9th Cir. 1984). Lapse in time is not enough to

24 constitute a lack of timeliness.  <u>League of United Latin</u>

25 <u>American Citizens</u>, 131 F.3d at 1302 (9th Cir. 1997). If the

26

1  lapse in time is substantial, however, this may weigh against
2  allowing for intervention. Id.

3                    **i.   Stage of Proceedings**

4       Even when a case in still in the pretrial stage, if
5  significant substantive rulings have been made, intervention may
6  not be appropriate. For instance, in League of United Latin
7  American Citizens, the Ninth Circuit held that "the fact that
8  the district court [had] substantively – and substantially –
9  engaged the issues in [the] case" weighed strongly against
10 intervention. 131 F.3d at 1303. There, plaintiffs sought
11 injunctive relief against the defendants for having enforced
12 ballot initiatives related to the provision of health care. Id.
13 at 1302. The district court has issued a temporary restraining
14 order and permanent injunction against the defendants, which was
15 appealed to the Court of Appeals. Id. Later, the district court
16 provisionally certified the plaintiff class. Id. The defendants
17 filed a motion to dismiss, which the district court denied, and
18 filed an answer. Id. The plaintiffs filed a motion for summary
19 judgment, which the court granted in part and denied in part
20 after hearing oral argument. Id. Finally, discovery had
21 proceeded for approximately nine months. Id. At this point, a
22 foundation that supported the initiative sought to intervene.
23 Id. The Ninth Circuit held that the proceedings were in such an
24 advanced stage, that this weighed strongly against intervention.
25 Id. at 1303.

26

1    Here, plaintiffs' compliant was filed on December 14, 2006

2  and their third amended complaint was filed on May 17, 2007.

3  Since then, the parties have conducted their initial meeting of

4  counsel and discussed discovery plans, initial disclosure, and

5  settlement pursuant to Rule 26(f). Brophy Water District and

6  Hallwood Irrigation Co. intervened on July 24, 2007. CID filed

7  the present motion on July 31, 2007. The only substantive motion

8  yet filed before this court has been the federal defendants'

9  motion to dismiss, which is being considered concurrently with

10 the present motion. It is also worthwhile to note that CID's

11 motion was brought before the court's October 2, 2008 deadline

12 of for filing dispositive motions.

13    This is not a situation, therefore, in which the

14 proceedings in the case have advanced to the point where

15 intervention in inappropriate. See League of United Latin

16 American Citizens, 131 F.3d at 1303. CID is moving to intervene

17 not long after other parties have successfully intervened.

18 Also, there have not been any rulings by the court on the

19 motions to dismiss that have been filed, unlike in League of

20 United Latin American Citizens. CID has met its burden under

21 this prong of the timeliness test.

22         **ii.  Prejudice to other parties**

23    Determining whether allowing CID to intervene will

24 prejudice the other parties is a crucial consideration when

25 determining timeliness.  See Oregon, 745 F.2d at 552.  In

26 Northwest Forest Resource Council v. Glickman, 82 F.3d 825, 837

27

1  (9th Cir. 1996), the court determined that a party's motion to

2  intervene did not prejudice the other party because the motion

3  was filed before the district court had made any substantive

4  rulings. Id. Prejudice can also be shown where there will be a

5  loss of evidence, a loss of settlement offers in expectation of

6  no further claims being made, or a need to revisit previously

7  adjudicated matters.   Natural Resources Defense Council v.

8  Gutierrez, 2007 U.S. Dist. LEXIS 40895 (N.D. Cal. 2007).

9      There have been no allegations made by the plaintiffs aside

10  from the fact that there will be a repetition of previously done

11  work such as negotiating the joint status report.  Plaintiffs

12  argue that this will create more delays causing the fish more

13  harm. There is no case law cited in either motion demonstrating

14  that delay necessarily means the motion would cause prejudice.

15      Although the defendants in this case filed a motion to

16  dismiss on July 20, 2007, the court has not yet made any

17  substantive rulings on the motion. There have been no other

18  substantive motions filed before the court in this case. Per the

19  Ninth Circuit's holding in Northwest, CID's motion to intervene

20  does not prejudice the other parties in this case. 82 F.3d at

21  837. A mere delay in the proceedings does not suffice to show

22  that intervention will prejudice the parties. See id.

23  Furthermore, CID has agreed to abide by the parties' original

24  Joint Status Report from June 6, 1007 and has agreed to the

25  limitations that have been set for future proceedings.  These

26  factors demonstrate that there appears to be no substantial

28

1  prejudice caused by the motion to intervene.

2  **iii. Reason and length of delay**

3  The entity seeking intervention must provide a reason to

4  the court for its delay in seeking to enter into the case.

5  Alisal Water Corp., 370 F.3d at 923 (9th Cir. 1990).

6  Particularly, the would-be intervener must supply a reason for

7  the delay when it has had reason to know that its interests

8  might be adversely affected by the outcome of the litigation.

9  Id.

10  When considering the length of the delay, the court should

11  look to the date that the would-be intervener realized its

12  interests would not be adequately represented by the parties.

13  Officers for Justice v. Civil Service Commission, 934 F.2d 1092,

14  1095 (9th Cir. 1991).

15  Here, CID alleges that it learned of the lawsuit on April

16  26, 2007. On July 24, 2007, CID realized that the other parties

17  that had intervened were only involved in the remedial aspects

18  of the case and therefore it was not until this date that it

19  learned that its interests would not be adequately protected by

20  the other parties. CID filed this motion on July 31, 2007. The

21  length of the delay, therefore, is not substantial and its

22  reasons for delay are adequate.

23  The court concludes that the motion to intervene was

24  timely.

25  **b.   Whether CID's Interest Is Significant**

26  A would-be intervener must show that it has a "protectable

29

1  interest," warranting intervention. Smith v. Pangilinan, 651

2  F.2d 1320, 1324 (9th Cir. 1981).  This need not be a legal or

3  equitable interest. Id.; Blake v. Pallan, 554 F.2d 947, 952 (9th

4  Cir. 1977).  For example, a entity that had an interest in a

5  court's determination of the lawfulness of a constitutional

6  amendment has a protectable interest under Rule 24(a)(2).

7  California ex. Rel. Lockyer v. United States, 4450 F.3d 436, 441

8  (9th Cir. 2006).  The Ninth Circuit concluded that the would-be

9  intervenor had a significant interest because "it will suffer a

10 practical impairment of its interests as a result of the pending

11 litigation." Id. at 441.

12      Here, the plaintiffs are seeking an injunction that may

13 call for modifications to the Daguerre dam, including the

14 possible removal of it. CID has an interest in maintaining the

15 dam to ensure water flow from the north canal. The injunction

16 the plaintiffs seek may call for the removal of CID's fish

17 screen and gravity fed diversion point.  These negative

18 consequences that can result from the action sought constitute a

19 significant interest.

20      CID analogizes its case to that of the City of Phoenix in

21 Sierra Club v. United States Environmental Protection Agency,

22 995 F. 2d 1478 (9th Cir. 1993).  In that case, the court held

23 that the City of Phoenix was entitled to intervene because the

24 plaintiffs sought a change in the water permits which would

25 affect the Phoenix because it would affect its use of real

26 property. Id.  Similarly, CID asserts that it has pre-1914 water

1   rights and related property interests in and around Daguerre.

2   Finally, plaintiffs do not dispute that the CID's interest is

3   significant.

4        The court holds that CID has shown that it has a

5   significant interest under Rule 24(a)(2).

6            **c.    Whether CID's Interests May Be Adversely Affected**

7                    **Without Intervention**

8        If a would-be intervener can show that his interests would

9   be substantially affected by the action, he should be entitled

10  to intervention. See Southwest Center for Biological Diversity

11  v. Berg, 268 F.3d 810, 822 (9th Cir. 2001). As discussed above,

12  removal or alteration of the Daguerre dam may impinge upon CID's

13  interests in the water rights and property interests related to

14  the dam. Plaintiffs do not dispute this. The court holds that

15  this element of Rule 24(a)(2) has been met.

16           **d.    Whether Existing Parties Adequately Represent**

17                   **CID's Interests**

18       The burden of showing inadequacy of representation by other

19  parties is minimal. See Southwest Center for Biological

20  Diversity v. Berg, 268 F.3d 810, 822-23 (9th Cir. 2001). The

21  would-be intervenor need only show that the existing parties

22  "may" inadequately represent its interests. Id. at 823. In

23  making this determination, the court should consider whether the

24  interests of the existing parties are so aligned with the

25  intervener's that the parties will undoubtedly make all of the

26  intervener's arguments, whether the existing parties are capable

1  and willing to make those arguments, and whether the would-be

2  intervener would offer any element to the litigation that the

3  existing parties would neglect. Id.; see also Northwest Forrest

4  Resource Council v. Glickman, 82 F.3d 825, 838 (9th Cir. 1996).

5  Even where the would-be intervener has the same "ultimate

6  objective" as some of the parties, intervention may still be

7  appropriate if its interests might diverge from those of the

8  existing parties. Southwest Center for Biological Diversity, 268

9  F.3d at 823-24.

10      Applying this standard, the court concludes that CID's

11  interests will not be adequately represented by the existing

12  parties. The interests of the present parties are not so

13  congruent that it appears as though any of the parties involved

14  will make all of the would be intervener's arguments.

15      First, Dry Creek, Brophy and Hallwood seek intervention

16  only for the remedial phases of the trial whereas CID seeks to

17  intervene for the entire action. Therefore, these three parties

18  would not be able to argue for CID's interests with regard to

19  the non-remedial portions of the suit.

20      Second, YCWA's interests appear specific to the southern

21  portion of Daguerre dam. YCWA operates an upstream network of

22  dams and power plants for generating water supply for the

23  southern region.  Although CID does receive some water from

24  YCWA, CID's interests extend beyond those of YCWA, as CID also

25  has interests in the North Canal.  Therefore, YCWA will not

26  undoubtedly make CID's arguments, as their interests may

1  diverge.

2       Finally, the federal defendants have no interest in the
3  water rights CID claims, and furthermore these defendants have
4  duties under federal law that CID does not have. There is
5  nothing to suggest that the federal defendants will make CID's
6  arguments regarding its property and water rights in and around
7  Daguerre dam.

8       Moreover, CID asserts that it will offer elements to the
9  litigation that other parties would neglect. CID states that it
10 has property interests in the North Canal region that date to
11 the 1920s and that it has relied on Daguerre's operation since
12 Congress authorized its use in 1899. For this reason, CID argues
13 that its interests predate the passage of the ESA and thus
14 should not be abrogated by that statute. This appears to be a
15 challenge to the plaintiff's complaint that no other defendant
16 can offer. Furthermore, as a state agency, CID claims that it
17 has duties under California law that do not bind the other
18 defendants. For these reasons, the court concludes that CID can
19 offer elements to the litigation that the existing parties could
20 not.

21      Because CID has shown that its motion for intervention is
22 timely, that it has a significant and protectible interest that
23 would be jeopardized without intervention, and that the existing
24 parties may be inadequate in representing CID's interests, the
25 court hold that CID should be granted intervention as a matter
26 of right.

1  ////

2      **2.  Permissive Intervention**

3        Even if CID should not be granted intervention as a matter

4  of right, CID should be allowed to permissively intervene under

5  Federal Rule of Civil Procedure 24(b)(2).  Under this rule, an

6  entity is permitted to intervene if: the applicant's claim or

7  defense and the main action have a question of law or a question

8  of fact in common, the motion to intervene is timely, and the

9  court has independent grounds for jurisdiction. Fed. R. Civ.

10  Proc. 24(b)(2); <u>Beckman Indus., Inc. v. International Ins. Co.</u>,

11  966 F.2d 470, 473 (9th Cir. 1992).

12      **a.  Common Questions of Law Or Fact**

13    Whether there is a common question of law or fact is liberally

14  construed by the courts.  <u>Kootenai Tribe of Idaho v. Veneman</u>,

15  313 F.3d 1094, 1111 (9th Cir. 2002).  Unless there are no

16  questions of law or fact common to the main action and would-be

17  intervenor's claim or defense, the court has discretion to

18  permit the intervention. <u>Id.</u>

19    Here, the main action concerns violations of the ESA as a

20  result of operation of the Corps' Project and YCWA's operation

21  of the Cophy Diversion.  CID interests in the case relate to the

22  impact the ESA may have on its prior land rights. CID also has

23  an interest in enforcing the 2007 BiOp, which is the main issue

24  of contention between the plaintiffs and defendants. The issues

25  regarding Daguerre's operation and compliance with the ESA are

26  directly related.  Since CID is directly affected by the BiOp

34

1  being contested, the take permit, and the related facts

2  supporting the current operation of Daguerre, this sufficiently

3  shows that common issues of fact exist.

4       **b.   CID's Motion to Intervene Was Timely**

5       As explained in section B(1)(a), *supra*, CID was timely in

6  its motion to intervene.

7       **c.   The Court Has Independent Grounds For**

8            **Jurisdiction**

9       This court has supplemental jurisdiction over all claims

10 that form part of the same case or controversy as a claim over

11 which the court has original jurisdiction. 28 U.S.C. § 1367(a).

12 In determining whether it has supplemental jurisdiction, the

13 court should endeavor to "most sensibly accomodat[e] the values

14 of economy, convenience, fairness and comity." Executive

15 Software N. Am., Inc. v. United States Dist. Court, 24 F.3d

16 1545, 1557 (9th Cir. 1994). Here, CID alleges that the ESA does

17 not apply to the maintenance of the Deguerre dam, as the dam

18 predates the statute's enactment. This question relates to the

19 very core of the plaintiff's complaint, by addressing whether

20 the ESA can be enforced against the defendants with regard to

21 Deguerre dam. This clearly brings CID's claim into the same case

22 or controversy as the plaintiff's action.

23      The court concludes that CID should be granted permissive

24 intervention under Federal Rule of Civil Procedure 24(b)(2).

25 ////

26 ////

1                              **IV. CONCLUSION**

2        For the reasons set forth above, the motion to dismiss is

3   GRANTED in part and DENIED in part. Cordua Irrigation District's

4   motion to intervene is GRANTED.

5        A status conference is hereby SET for November 5, 2007 at

6   11:00 AM in Courtroom 4.

7        IT IS SO ORDERED.

8        DATED: October 16, 2007.

9

10

11                              _____
                                LAWRENCE K. KARLTON
12                              SENIOR JUDGE
                                UNITED STATES DISTRICT COURT
13

14

15

16

17

18

19

20

21

22

23

24

25

26

                                     36