UNITED STATES DISTRICT COURT

EASTERN DISTRICT OF CALIFORNIA

SOUTH YUBA RIVER CITIZENS
LEAGUE and FRIENDS OF THE
RIVER,

                                   NO. CIV. S-06-2845 LKK/JFM

       Plaintiffs,

   v.                               O R D E R

NATIONAL MARINE FISHERIES
SERVICE, et al.,

       Defendants.

_____/

    Plaintiffs are two non-profit corporations suing to enforce provisions of the Administrative Procedures Act, 5 U.S.C. §§ 500-596, the Endangered Species Act, 16 U.S.C. §§ 1531-1544, and the Freedom of Information Act, 5 U.S.C. § 552 ("FOIA"). Defendants are the federal and local entities who play a role in the operation of the Daguerre dam on the Yuba River.

    Pending before the court are the plaintiffs' and defendants' cross motions for summary judgment on the plaintiffs' FOIA claims

1

1  (their fifth, seventh, and eighth causes of action). The court

2  resolves the motions on the papers and after oral argument.

3  **I. BACKGROUND AND FACTS**

4  **A.   Allegations and Procedural History**

5       The plaintiffs' claims center around three fish species, the

6  central valley spring-run Chinook, central valley steelhead and

7  green sturgeon, which plaintiffs contend are harmed by the

8  operation of the Daguerre and Englebright dams on the Yuba River.

9  The plaintiffs allege that the management of the Daguerre dam has

10 further jeopardized these fish species, in violation of the

11 Endangered Species Act. The plaintiffs also allege that the federal

12 defendants have violated the Administrative Procedures

13 Act by failing to comply with the procedural requirements of the

14 ESA. Finally, the plaintiffs allege that the National Marine

15 Fisheries Service has violated the Freedom of Information Act by

16 failing to respond to several of the plaintiffs' requests for

17 information.

18      The Plaintiffs filed their original complaint on December 20,

19 2006 against the National Marine Fisheries, the U.S. Army Corps of

20 Engineers, and related federal defendants. Over the course of the

21 past year, the plaintiffs have filed several amended complaints.

22 The operative complaint currently is the Fifth Amended Complaint,

23 filed on February 12, 2008.[1]

24

25      [1]The court has signed a stipulation permitting the filing of
   a sixth amendment.  That order has no bearing on the instant
26 motion.

1   In June and July, 2007, Dry Creek Mutual Water Company, Brophy

2   Water District, and Hallwood Irrigation Company were permitted to

3   intervene for the remedial portion of the case. In October 2007,

4   the court granted Cordua Water District's motion to intervene. The

5   court also granted defendants' motion to dismiss certain of

6   plaintiffs' claims as moot and as improperly noticed.

7   **B.   Facts Relevant to Plaintiffs' FOIA Claims**

8   There are three FOIA requests relevant to plaintiffs' causes

9   of action: that filed in August 2006, in October 2007, and in March

10  2008.[2]

11  **1.   August 2006 FOIA Request**

12  Plaintiff South Yuba River Citizens League ("SYRCL") sent a

13  FOIA request on August 14, 2006 to defendant National Marine

14  Fisheries Service ("NMFS") seeking documents related to a 2002

15  Biological Opinion issued by NMFS, documents by the Army Corps of

16

17  [2]Because the Fifth Amended Complaint was filed in February
    2008, it does not contain allegations regarding the timeliness
18  defendants' response to the March 2008 FOIA request. Nevertheless,
    the pending motions are a valid vehicle for addressing some of
19  those allegations, see Fed. R. Civ. P. 15(b)(2), and doing so does
    not prejudice defendants, specifically because they addressed the
20  timeliness of their response to the March 2008 request both in
    their Counter-Motion for Summary Judgment and in their Reply to
21  Plaintiffs' Opposition to Defendants' Counter-Motion. Moreover, the
    plaintiffs' allegations about the inadequacy of the defendants'
22  response to the March 2008 request echo their allegations regarding
    the response to the previous two requests, specifically in their
23  indictment of the completeness and timeliness of the defendants'
    response. It therefore does not appear to be unfairly prejudicial
24  to defendants to consider allegations regarding the March 2008
    request in the instant motions. See generally Gonzales v. United
25  States, 589 F.2d 465, 469 (9th Cir. 1979)(attempted amendment under
    Rule 15(b) would be unfairly prejudicial to defendants where the
26  allegations at issue had been only "inferentially suggested by
    incidental evidence in the record" (internal quotations omitted)).

Engineers regarding the use of water diversions near Daguerre Point Dam, and documents regarding the Corps' compliance with the 2002 Biological Opinion. Plaintiffs' Statement of Undisputed Facts ("SUF") ¶ 1. This request was received on August 18, 2006. Declaration of Ana Liza Malabanan in Support of NMFS's Counter-Motion for Summary Judgment ("Malabanan Decl.") ¶ 5.

On October 12, 2006, NMFS sent their first response to this request to SYRCL, deemed by NMFS to be an interim response while they continued to review additional documents. SUF ¶ 2. This response was comprised of four documents, totaling fourteen pages. Id. On November 15, 2006, NMFS sent another interim response, which included an additional twenty-eight documents. Id. ¶ 3. On January 4, 2007, NMFS sent another response to SYRCL, which contained thirty-two documents and a document index. Id. ¶ 4.

Although SYRCL expressed to NMFS that it believed that certain documents were missing from NMFS' responses, it agreed to put on hold its pursuit of documents via its FOIA request on the expectation that the administrative record for the 2002 Biological Opinion would contain all the documents SYRCL sought. Id. ¶ 5. Once the administrative record was produced, however, SYRCL determined that there were documents still missing. Id. ¶ 6. It continued to seek these through conversations with NMFS's counsel. Id. ¶¶ 7-8.

On July 3, 2007, NMFS sent additional documents to plaintiffs' counsel, characterizing them as an "addendum" to the "complete response" that had been provided on January 4, 2007. Id. ¶ 9. SYRCL still believed that there were additional responsive documents in

4

1  the Federal Defendants' possession and sent a letter to this effect
2  to NMFS on August 23, 2007. Id. ¶ 10. On September 7, 2007, NMFS
3  provided some of these documents without conceding that they were
4  responsive to the August 2006 request. Id. ¶ 11.

5      **2.   October 2007 FOIA Request**

6      On October 4, 2007, SYRCL sent another FOIA request to NMFS,
7  again seeking documents related to the 2002 Biological Opinion, as
8  well as documents regarding the April 2007 Biological Opinion and
9  forthcoming November 2007 Biological Opinion. Id. ¶ 15. In total,
10 SYRCL had twenty-three separate requests for information. Id. ¶ 16.
11 This request was received on October 10, 2007. Malabanan Decl. ¶
12 15. On October 26, 2007, SYRCL sent a letter limiting the scope of
13 its request to only projects involving the Yuba River. SUF ¶ 15.

14     On December 19, 2007, NMFS sent its first set of responsive
15 documents: fifteen documents that responded to one of SYRCL's
16 requests.  Id. ¶ 16. On December 31, 2007, it sent seventeen
17 additional documents responsive to another of the requests. Id. ¶
18 17. It provided additional responses on January 16, 2007 and March
19 18. 2008.  Id. ¶¶ 18-19. NMFS subsequently retracted the March 18,
20 2008 responses as having been sent by mistake. Reply Declaration
21 of Christopher Sproul in Support of Plaintiffs' Motion for Summary
22 Judgment ("Sproul Reply Decl.") ¶ 7.

23     On April 17, 2008, NMFS sent another response, which it deemed
24 to be a complete response to the October 2007 request. Id. ¶ 8. In
25 the response letter, NMFS indicated that some documents had been
26 forwarded to the Corps and Fish and Wildlife Services for review,

and that there were no responsive documents to several of SYRCL's

requests.[3] Id. ¶¶ 9-10. It also indicated that it was withholding

some documents as privileged. Id. ¶ 8.

There are eleven documents the NMFS claimed to be privileged.

These are:

A.   "Early Draft Recovery Plan for the Evolutionarily
     Significant Units of Sacramento River Winter Run Chinook
     Salmon (Oncorhynchus tshawytscha) and Central Valley
     Spring-run Chinook Salmon (O. tshawytscha), and the
     Distinct Population Segment of Central Valley Steelhead
     (O. mykiss)," dated 6/29/07, 105 pages.

B.   "Appendix A / Threats Assessment for the Evolutionarily
     Significant Units of Winter-run Chinook Salmon
     (Oncorhynchus tshawytscha) and Central Valley Spring-run
     Chinook Salmon (O. tshawytscha), and the Distinct
     Population Segment of Central Valley Steelhead (O.
     mykiss)," 6/29/07, 309 pages.

C.   "Appendix ___ / Threats Assessment for the
     Evolutionarily Significant Units of Winter-run Chinook
     Salmon (Oncorhynchus tshawytscha) and Central Valley
     Spring-run Chinook Salmon (O. tshawytscha), and the
     Distinct Population Segment of Central Valley Steelhead
     (O. mykiss)," 6/29/07, 309 pages.

D.   "Appendix A / Stressor Matrix for the Sacramento River
     Winter-run Chinook Salmon Evolutionarily Significant
     Unit," 6/29/07, 6 pages.

E.   "Appendix B / Stressor Matrices for the Central Valley
     Spring-run Chinook Salmon Evolutionarily Significant
     Unit," 6/29/07, 124 pages.

F.   "Appendix C / Stressor Matrices for the Central Valley
     Steelhead Distinct Population Segment," 6/29/07, 233
     pages.

G.   "Recovery Plan for the Evolutionarily Significant Units
     of Sacramento River Winter-run Chinook Salmon and
     Central Valley Spring-run Chinook Salmon and the

_____

[3]The Corps had released their documents to plaintiffs on March
31, 2008 and the Fish and Wildlife Service had released their
documents to plaintiffs on April 2, 2008. Malabanan Decl. ¶ 29.

Distinct Population Segment of Central Valley Steelhead / Early Draft / Version:  November 2007," co-manager review draft, 107 pages.

H.   "Appendix B / Recovery Actions," 11/16/07, 150 pages.

I.   "Winter-run Chinook Salmon Stressor Matrix," 11/16/07, 5 pages.

J.   Central Valley Spring-run Chinook Salmon Stressor Matrices, 11/16/07, 122 pages.

K.   Central Valley Steelhead Stressor Matrices, 11/16/07, 197 pages.

Vaughn Declaration of Ana Liza Malabanan ("Vaughn Decl.") ¶ 2. All of these documents are described by defendants as portions of drafts of a recovery plan for the spring-run Chinook and Central Valley Steelhead fish, which was prepared per the mandate of the Endangered Species Act. Id. ¶ 3.

### 3.   March 2008 FOIA Request

On March 17, 2008, SYRCL sent a third FOIA request to NMFS. Id. ¶ 12. This request sought information similar to that sought in the prior requests. Id. ¶ 13. NMFS received this request on March 18, 2008. Id. On April 14, 2008, NMFS informed SYRCL that it sought a ten-day extension -- to April 29, 2008 -- to respond to the request. Id.

On April 29, 2008, NMFS sent a response to SYRCL. Id. ¶ 14. This response included sixty documents and NMFS stated that it was an incomplete response to the March 2008 FOIA request. Id.

## II. SUMMARY JUDGMENT STANDARD UNDER FEDERAL RULE OF CIVIL PROCEDURE 56 FOR FOIA CASES

"Summary judgment is the procedural vehicle by which nearly

7

all FOIA cases are resolved." <u>Mace v. EEOC</u>, 37 F. Supp. 2d 1144, 1146 (E.D. Miss. 1999). "Courts are permitted to rule on summary judgment in FOIA cases solely on the basis of government affidavits." <u>Lion Raisins, Inc. v. United States Dep't of Agric.</u>, 354 F.3d 1072, 1082 (9th Cir. 2004).[4]

FOIA opens government records to private citizens. <u>See Minier v. CIA</u>, 88 F.3d 796, 800 (9th Cir. 1996). The statute "mandates a policy of broad disclosure of government documents." Church of Scientology v. Dep't of the Army, 611 F.2d 738, 741 (9th Cir. 1979). An agency may withhold a requested document "only if the material at issue falls within one of the nine statutory exemptions found in [5 U.S.C.] § 552(b)." Maricopa Audubon Soc'y v. United States Forest Serv., 108 F.3d 1082, 1085 (9th Cir. 1997).

Where a citizen has made a request for information under FOIA, and the agency has refused in whole or in part to produce responsive materials, the Act authorizes the citizen to bring suit in federal court challenging the agency's refusal to disclose documents to the requester. 5 U.S.C. § 552(a)(4)(B). These lawsuits typically present a dispute over the agency's claim that the

_____

[4]The well-known standard for summary judgment, is not applied to a FOIA proceeding. "Unlike the typical summary judgment analysis, in a FOIA case, we do not ask whether there is a genuine issue of material fact, because the facts are rarely in dispute." <u>Minier v. CIA</u>, 88 F.3d 796, 800 (9th Cir. 1996); <u>see</u> <u>also</u> <u>Fiduccia v. United States DOJ</u>, 185 F.3d 1035, 1040 (9th Cir. 1999) ("Though this is review of a summary judgment, our review in a FOIA summary judgment case is not simply de novo, nor do we ask whether there is a genuine issue of fact in most cases. Instead, in a FOIA case, we first determine whether the district judge had an adequate factual basis for decision, and if not, remand.").

withheld documents fall within one of the statutorily authorized exemptions. These exemptions are "explicitly exclusive, and must be narrowly construed in light of FOIA's dominant objective of disclosure, not secrecy." Maricopa, 108 F.3d at 1085 (internal citations and quotation marks omitted).

The peculiar nature of a FOIA dispute poses unique problems. As the Ninth Circuit has observed:

> In a typical FOIA case, the plaintiff must argue that a government agency has improperly withheld requested documents, even though only the agency knows their actual content. This lack of knowledge by the party seeking disclosure seriously distorts the traditional adversarial process. To address this problem, courts have created methods to be sure the requesting party and the deciding judge have sufficient information upon which to determine whether the government agency properly withheld the requested documents. These methods include creation of a " Vaughn index" ... and the submission of some other form of accounting for the withheld documents, such as an affidavit.

Schiffer v. Fed. Bureau of Investigation, 78 F.3d 1405, 1408-09 (9th Cir. 1996) (internal citations, quotation marks and brackets omitted).

The burden is on the agency to show that withheld materials are exempt from disclosure. U.S.C. § 552(a)(4)(B); see also Minier, 88 F.3d at 800. In addition, the governmental agency has the burden of proving that it has "conducted a search reasonably calculated to uncover all relevant documents." Weisberg v. United States Dep't of Justice, 705 F.2d 1344, 1351 (D.C. Cir. 1983); see also Zemansky v. United States EPA, 767 F.2d 569, 571 (9th Cir. 1985). In order to prevail on summary judgment, the agency must prove "it has fully discharged [these burdens] under FOIA, after the underlying facts

9

1  and the inferences to be drawn from them are construed in the light

2  most favorable to the FOIA requester." Miller v. United States

3  Dep't of State, 779 F.2d 1378, 1382 (8th Cir. 1985) (citing

4  Weisberg, 705 F.2d at 1350); see also Zemansky, 767 F.2d at 571.

### III. ANALYSIS

6  Plaintiffs' fifth, seventh and eighth causes of action allege

7  that NMFS violated the provisions of FOIA and seek injunctive and

8  declaratory relief. In their motion, plaintiffs seek partial

9  summary judgment on the grounds that: (1) NMFS has acted unlawfully

10  by failing to respond to the three FOIA requests in a timely

11  manner, (2) NMFS's response to the October 2007 request is

12  incomplete, (3) NMFS's discovery and declarations are inadequate

13  in showing the completeness of its response to the August 2006

14  request, and (4) NMFS has a pattern and practice of unlawfully

15  "providing piecemeal delayed and incomplete responses" to the FOIA

16  requests. Plaintiffs' Motion for Summary Judgment at 1. Plaintiffs

17  seek declaratory and injunctive relief as a remedy.

18  Defendants oppose plaintiffs' motion and also seek summary

19  judgment on the question of whether NMFS conducted a reasonable

20  search in response to plaintiffs' FOIA requests.

21  **A.   Timeliness of NMFS's Response to the Three FOIA Requests**

22  FOIA requires that when an agency has received a request for

23  information, the agency must determine within twenty court days

24  "whether to comply with such request," at which time it must

25  immediately notify the requester of its determination. 5 U.S.C. §

26  552(a)(6)(A). If the agency concludes that it may need more time

10

to respond to the request, it must first notify the requester so that the latter has an opportunity to narrow the request. Id. § 552(a)(6)(B). Then, the agency may extend the twenty-day deadline an extra ten days, provided that there are "unusual circumstances." Id. Unusual circumstances include the need to collect records that are held off-site, to review voluminous materials, or to consult with another agency. Id.

Although the statute in terms provides that an agency must merely notify the requester within twenty days of whether to respond to the request, courts consistently treat the twenty-day deadline as the agency's deadline to provide the responsive documents. See Electronic Privacy Info. Ctr. v. Dep't of Justice, 416 F. Supp. 2d 30, 36-40 (D.D.C. 2006); Or. Natural Desert Ass'n v. Gutierrez, 409 F. Supp. 2d 1237, 1248 (D. Or. 2006); Am. Civil Liberties Union v. Dep't of Defense, 339 F. Supp. 2d 501, 503-504 (S.D.N.Y. 2004); Gilmore v. U.S. Dep't of Energy, 33 F. Supp. 2d 1184, 1186-88 (N.D. Cal. 1998). This appears to have been Congress' intent. See Gilmore, 33 F. Supp. 2d at 1186-88 (discussing the Congressional record). This interpretation of the deadline provisions of FOIA, 5 U.S.C. § 552(a)(6)(A), comports with the overarching purpose of the statute, which is "to contribute to the fuller and faster release of information." H.Rep. No. 876, 93d Cong., 2d Sess., reprinted in 1974 U.S. Code Cong. & Admin. News 6267, 6267.

A plaintiff has suffered an injury in fact when he does not receive information that Congress has commanded must be provided

to him. <u>Fed. Election Comm'n v. Atkins</u>, 524 U.S. 11, 21 (1998). In the FOIA context, given Congress' particular concern with delays in agencies' responses to information requests, "an agency's failure to comply with the FOIA's time limits is, by itself, a violation of the FOIA." <u>Gilmore</u>, 33 F. Supp. 2d at 1186-88; <u>see also</u> <u>Long v. United States I.R.S.</u>, 693 F.2d 907, 910 (9th Cir. 1982) ("[The agency's] unreasonable delays in disclosing non-exempt documents violate the intent and purpose of the FOIA, and the courts have a duty to prevents those abuses."); <u>Payne Enter. v. United States</u>, 837 F.2d 486 (D.C. Cir. 1988) (agency's pattern of delay in responding to plaintiff's FOIA requests was a redressable injury).[5]

Here, there appears no dispute that NMFS violated FOIA by failing to respond to plaintiffs' August 2006, October 2007, and March 2008 requests within the statutory time limit. The August 2006 request was received by NMFS on August 18, 2006. No request for an extension was made and therefore the response was presumptively due to plaintiffs on September 18, 2006. NMFS did not send their first response to plaintiffs until October 12, 2006 and did not send a complete response until July 3, 2007.[6] There is no dispute that NMFS failed to comply with FOIA's mandate in its

---

[5]Despite the court's treatment of 20 days as the presumptive date for supplying documents falling within FOIA's mandate, a test of reasonable delay may provide an appropriate measure of timeliness when dealing with thousands of documents.

[6]This does not take into consideration the defendants' September 7, 2007 disclosure of documents that it asserted were not covered by the August 2006 request.

1  untimely response to plaintiffs' August 2006 request.

2      The same is true for plaintiffs' October 2007 request. This

3  request was received by NMFS on October 10, 2007. No extension was

4  sought, although on October 26, 2007 plaintiffs did agree to limit

5  the scope of their request. NMFS's response, therefore, was

6  presumptively due on November 7, 2007. NMFS did not send any

7  response to plaintiffs until December 19, 2007 and did not send its

8  "complete" response until April 17, 2008. Again, this is violative

9  of FOIA. See Long, 693 F.2d at 910; Gilmore, 33 F. Supp. 2d at

10  1186-88.

11      NMFS again repeated this violation in its untimely response

12  to the plaintiffs' March 2008 request. That request was received

13  on March 18, 2008. On April 14, 2008, NMFS sought a ten-day

14  extension to respond. Leaving aside the issue of whether NMFS

15  complied with the statute's requirement for obtaining an

16  extension,[7] assuming the extension was proper, NMFS's response was

17  due to plaintiffs on April 29, 2008. On April 29, 2008, NMFS sent

18  a response to SYRCL, which the former acknowledged was not a

19  complete response. It has been held that this too violates the

20  timeliness requirement of FOIA. See McGehee, III. v. Central

21  Intelligence Agency, 697 F.2d 1095, 1101 n. 18 (D.C. Cir. 1983)

22

23      [7]There is no evidence tendered to the court that NMFS
   experienced "unusual circumstances" warranting an extension, see
   5 U.S.C. § 552(a)(6)(B)(iii), or that NMFS allowed plaintiffs an
24  opportunity to narrow their request, see id. § 552(a)(6)(B)(ii).On
   the other hand, as suggested above, a large number of documents
25  could perhaps, if communicated to plaintiff, justify some delay in
   producing the documents, so long as the agency make known its
26  intent within 20 days.

1  vacated in part on other grounds, 711 F.2d 1076 (1983) (FOIA

2  requires that agencies comply "promptly and fully" to requests);

3  Gilmore, 33 F. Supp. 2d at 1188 (even if agency withholds documents

4  on the grounds that they are not subject to disclosure, the

5  timeliness requirement still applies).[8]

6       Plaintiffs seek a declaratory judgment that NMFS's delays in

7  responding to plaintiffs' FOIA requests are unlawful. Declaratory

8  judgment is proper when there are purely legal questions at issue

9  and if the judgment will clarify the legal issues and provide

10 clarity to the parties and the public. Natural Res. Def. Council,

11 Inc. v. EPA, 966 F.2d 1292, 1299 (9th Cir. 1992). When an agency

12 has ignored statutory mandates, including deadlines imposed by

13 statute, a declaratory judgment may be merited. Id. (granting

14 declaratory judgment because "[t]he court must uphold adherence to

15 the law, and cannot condone a failure of an executive agency to

16 conform to express statutory requirements"). Here, NMFS has

17 repeatedly shirked its statutory responsibility to respond fully

18 to plaintiffs' FOIA requests within the timeframe set by Congress,

19 or at the very least, explain why a timely response was not

20 possible. The consistency of these violations and the possibility

21 that they might recur with plaintiffs' fourth, pending FOIA request

22 show that a declaratory judgment is appropriate here. Plaintiffs'

23

24       [8]On April 28, 2008, NFMS did respond.  That response, however,
    was not complete.   No evidence has been tendered demonstrating
25  whether  or  not  the  request  required  a  review  of  voluminous
    documents.   Under the circumstances, the court need not consider
26  the interplay of the timeliness and review of voluminous documents.

14

motion is granted to this extent. NMFS's failure to adhere to FOIA's deadline for responding to plaintiffs' information requests is unlawful.

**B.  Completeness of NMFS's Response to Plaintiffs' October 2007 FOIA Request**

In their motion for summary judgment, the plaintiffs contend that not only was NMFS's response to the October 2007 request untimely, but that NMFS unlawfully failed to disclose responsive documents. Specifically, plaintiffs take issue with NMFS's referral of thirty-four documents to other government agencies for release to the plaintiffs, and with NMFS's refusal to release several responsive documents that it claimed were privileged. The court considers each argument in turn.

**1.  NMFS's Referral of Request to Other Agencies**

According to plaintiffs, in March and April 2008 NMFS sent letters to plaintiffs explaining that NMFS had forwarded certain documents responsive to the October 2007 request to the Army Corps of Engineers and the U.S. Fish and Wildlife Service for those agencies' review to determine whether release to the plaintiffs was proper.[9] Declaration of Christopher Sproul in Support of Plaintiffs' Motion for Summary Judgment on FOIA Claims ("Sproul Decl.") ¶ 26; Sproul Reply Decl. ¶ 9. The Army Corps of Engineers and Fish and Wildlife Services released the responsive documents

_____

[9]In their April 2008 letter, defendants explained that the March 2008 letter had been sent by mistake and thereby retracted it. Sproul Reply Decl. ¶ 9. With regards to the issue of NMFS's forwarding of documents to other agencies, however, the contents of the letters appear to be the same.

1   to the plaintiffs on March 31, 2008 and April 2, 2008,
2   respectively. Sproul Reply Decl. ¶ 9, Exh. AA-BB.

3      Plaintiffs argue that this practice of NMFS referring
4   responsive documents to other agencies for review and possible
5   release is unlawful. I cannot agree.

6      While it is true that an agency may not refuse a FOIA request
7   by referring the requester to another agency or source for the
8   documents, see United States Dep't of Justice v. Tax Analysts, 492
9   U.S. 136, 149-50 (1989), here the NMFS merely forwarded the
10   documents to other agencies for review and release of the
11   documents. In doing so, it did not withhold the documents, either
12   actually or constructively. Cf. id. This practice accords with
13   federal regulations, which directs an agency to forward a FOIA
14   request to another federal agency when the latter has the "primary
15   interest" in the subject of the request. 15 C.F.R. § 4.5(b). It
16   appears, then, that this practice only violated FOIA by resulting
17   in a delayed disclosure of the documents. See, e.g., Ore. Natural
18   Desert Ass'n, 409 F. Supp. 2d at 1249 (holding that agency's
19   referral of FOIA request to another agency was reasonable because
20   it did not "impair the requester's ability to obtain the records
21   or significantly to increase the amount of time he must wait to
22   obtain them"). This allegation, however, is encompassed in the
23   plaintiffs' claim regarding the NMFS's untimely response to the
24   October 2007 request, discussed supra.[10]

25

26      [10]Again, the relationship between the timeliness and
  forwarding the documents to other agencies, has not been fully

1    Accordingly, the court concludes that NMFS did not unlawfully
2  "withhold" responsive documents by forwarding the documents to
3  other agencies prior to their release to plaintiffs.

4    **2.   NMFS' Withholding of Documents As Privileged**

5    Because FOIA creates a generous right to government documents,
6  an agency may only choose to withhold responsive documents under
7  a narrow set of circumstances. See 5 U.S.C. § 552(b); Assembly of
8  State of Cal. v. U.S. Dep't of Commerce, 968 F.2d 916, 920 (9th
9  Cir. 1992). Among these statutory exceptions, the agency may
10  withhold documents that constitute "inter-agency or intra-agency
11  memorandums or letters which would not be available by law to a
12  party other than an agency in litigation with that agency." Id. §
13  552(b)(5). This is interpreted to protect from disclosure those
14  documents that would be privileged in a civil discovery context.
15  Nat'l. Labor Relations Board (NLRB) v. Sears, Roebuck & Co., 421
16  U.S. 132, 149 (1975). Here, defendants assert that eleven documents
17  requested by the plaintiffs in October 2007 were withheld under the
18  deliberative process privilege.[11]

19

20  explored.  It hardly seems remarkable, however, that a brief delay
    occasioned by such referral is to be expected.
21
22    [11]In their moving papers, plaintiffs represent that the
    defendants withheld fourteen documents, asserting that the
23  documents are predecisional and attorney-client communications.
    Plaintiffs' Motion for Summary Judgment at 11. In their opposition
24  and supporting declarations, defendants state that they only
    withheld eleven documents. See NMFS' Counter-Motion and Opposition
25  to SYRCL's Summary Judgment Motion at 9. In their reply brief,
    plaintiffs do not dispute that there are eleven documents withheld.
26  Reply in Support of Plaintiffs' Motion for Summary Judgment at 5-6,
    28-35.

1       The deliberative process privilege "covers 'documents

2   reflecting advisory opinions, recommendations and deliberations

3   comprising part of a process by which governmental decisions and

4   policies are formulated.'" Dep't of Interior v. Klamath Water Users

5   Protective Ass'n, 532 U.S. 1, 8 (2001)(quoting NLRB, 421 U.S. at

6   150). The purpose of the privilege is "to promote frank and

7   independent discussion among those responsible for making

8   governmental decisions and also to protect against premature

9   disclosure of proposed agency policies or decisions." F.T.C. v.

10  Warner Commc'n Inc., 742 F.2d 1156, 1161 (9th Cir. 1984) (internal

11  citations omitted); see also NLRB, 421 U.S. at 150-51.

12      Nonetheless, the capacity of privileges to deprive the public

13  of documents to which it is entitled, requires a narrow limit to

14  privileges in general, and the deliberative process privilege in

15  particular.  To qualify for the privilege a document must be both

16  "predecisional" and "deliberative." Id. A document is predecisional

17  if it was "prepared in order to assist an

18  agency decisionmaker in arriving at his decision," Assembly of

19  State of Cal., 968 F.2d at 920, and "may include 'recommendations,

20  draft documents, proposals, suggestions, and other subjective

21  documents which reflect the personal opinions of the writer rather

22  than the policy of the agency." Carter v. U.S. Dep't of Commerce,

23  307 F.3d 1084, 1089 (9th Cir. 2002). A document is not

24  predecisional if it has been released to the public. Nat'l Res.

25  Def. Council (NRDC) v. U.S. Dep't of Def., 442 F. Supp. 2d 857

26  (C.D. Cal. 2006).

1        A predecisional document is "deliberative" if "the disclosure

2   of [the] materials would expose an agency's decisionmaking process

3   in such a way as to discourage candid discussion within the agency

4   and thereby undermine the agency's ability to perform its

5   functions." Assembly of State of Cal., 968 F.2d at 920. A

6   "deliberative" document is one in which the writer has expressed

7   opinions on legal and policy matters or has made recommendations

8   relative to such matters. Vaughn v. Rosen, 523 F.2d 1136, 1143-44

9   (D.C. Cir. 1975).

10       The agency asserting the privilege bears the burden of

11  justifying it. Envtl. Prot. Agency v. Mink, 410 U.S. at 93;

12  Assembly of State of Cal., 968 F.2d at 920. The burden may be met

13  through detailed affidavits that establish in a nonconclusory and

14  logical fashion the decision-making deliberative process to which

15  the documents pertain and the role played by the document. Wiener

16  v. F.B.I., 943 F.2d 972 (9th Cir. 1991); Bay Area Lawyers Alliance

17  for Nuclear Arms Control (BALANAC) v. Dep't of State, 818 F. Supp.

18  1291 (N.D. Cal. 1992). These are typically referred to as "Vaughn

19  declarations" or "Vaughn indices." Lion Raisins, 354 F.3d at 1082.

20       When an agency claims that an entire document is covered by

21  the deliberative process privilege, the agency must show that the

22  privileged information in the documents could not be segregated out

23  and the non-privileged information provided to the FOIA requester.

24  NRDC, 442 F. Supp. 2d at 872; Ryan v. Dep't of Justice, 617 F.2d

25  781, 790 (D.C. Cir. 1980). In other words, the agency must show

26  what proportion of the document contains privileged information and

how that information is dispersed throughout the document. <u>NRDC</u>, 442 F. Supp. 2d at 872; <u>Meade Data Cent., Inc. v. U.S. Dep't of the Air Force</u>, 566 F.2d 242, 261 (D.C. Cir. 1977). Courts have rejected agency's arguments that factual information within a document should be protected by the privilege because the author's selection of which factual information to discuss reveals the author's opinions and recommendations:

> Anyone making a report must of necessity select the facts to be mentioned in it; but a report does not become a part of the deliberative process merely because it contains only those facts which the person making the report thinks material. If this were not so, every factual report would be protected as a part of the deliberative process.

<u>Playboy Enter., Inc. v. Dep't of Justice</u>, 677 F.2d 931, 935 (D.C. Cir. 1982). Instead, if an agency seeks to assert the deliberative process privilege for factual information within a document, it must show "how the disclosure of the factual information withheld would allow the public to reconstruct the predecisional judgments by which they arose." <u>NRDC</u>, 442 F. Supp. 2d at 874.

Here, the defendants have not shown that the eleven withheld documents are protected from disclosure under the deliberative process privilege.

First, defendants have not met their burden to show that the documents are predecisional. Defendants note that all of the withheld documents were drafts of later, final documents. See Vaughn Decl. ¶ 3. This is reflected by the fact that the documents were marked as drafts on each page of each document, and some of

1   them are plainly incomplete. See, e.g., Vaughn Decl. ¶¶ 4, 6, 9,

2   13, 15-17, 22, 24.[12]

3        The defendants, however, have not shown that these documents

4   were not shared with the public, which would render them no longer

5   pre-decisional.[13] As one court has explained, "[t]he designation of

6   the documents . . . as 'drafts' does not end the inquiry, however.

7   . . . [E]ven if the document is predecisional at the time it is

8   prepared, it can lose that status if it . . . is used by the agency

9   in its dealings with the public." Arthur Anderson & Co. v. I.R.S.,

10  679 F.2d 254, 257-58 (D.C. Cir. 1982) (citations omitted); see also

11  NRDC, 388 F. Supp. 2d at 1104 (holding that government had not met

12  its burden to show that the documents were predecisional because

13  the agency had failed to show in its Vaughn index whether, and if

14  so to whom, the withheld documents had been disclosed). Here, the

15  defendants have not offered any evidence stating who received each

16  of the withheld documents or if they were ever shared with the

17  public. See Vaughn Decl. Therefore the court cannot conclude that,

18  even if the documents were created with the intention of being

19  drafts for internal use only, they nevertheless lost their

20  predecisional status through disclosure.

21  _____

22       [12]Of course, marking a document as a draft doesn't necessarily
    make it one, but certainly it may be some evidence of its
23  character.

24       [13]The plaintiffs raise this argument as a waiver argument,
    which it indeed resembles. Courts that have considered the issue,
    however, appear to treat the disclosure of documents to third
25  parties as indicative of the documents' non-predecisional nature,
    rather than of the agency's waiver of their privilege. See
26  citations in text.

1    Second, defendants have not shown that each of the documents
2  is deliberative in nature. Defendants' Vaughn declaration describes
3  each withheld item only cursorily and with only occasional
4  references to the opinions and recommendations contained therein.
5  See, e.g., Vaughn Decl. ¶ 7 ("for example, the early draft recovery
6  plan's [Item A] twelfth page identifies what the drafter perceives
7  as the a main threat to one of the protected fishes"); ¶ 11 (the
8  non-disclosed portions of Item C "are not merely factual but also
9  evaluative, examples include 'over-utilization' and 'inadequate
10  regulatory mechanisms'"); ¶¶ 13-16 (Items D-F are "multi-row,
11  multi-column" tables describing stressors to certain fish species
12  and the "[c]olumns characterize the stressors in various ways,
13  including various 'weights' indicating different kinds of
14  importance for the stressor"). None of the withheld items are
15  explained in adequate detail to sufficiently show that it contains
16  the types of analysis, recommendations and opinions that the
17  privilege is created to protect. Vaughn, 523 F.2d at 1143-44. Put
18  directly, the Vaughn declaration does not offer enough facts to
19  permit the court to conclude that disclosure of the documents would
20  chill intra- and inter-agency communications so as to impede the
21  agency's functioning. See Assembly of State of Cal., 968 F.2d at
22  920.
23    Moreover, the defendants fail to offer adequate explanation
24  as to why certain contents of each of the documents -- such as
25  factual portions and bibliographies -- cannot be segregated and
26  released. The Vaughn declaration states that a reader could deduce

1  the writer's opinions, thoughts, and recommendations by reading

2  even these portions. See Vaughn Decl. ¶¶ 7, 8, 11, 12, 21, 23. This

3  overly cautious approach, however, has been roundly rejected by the

4  courts. Playboy Enter., Inc., 677 F.2d at 935; Ryan, 617 F.2d at

5  790; Meade Data Cent., Inc., 566 F.2d at 261; NRDC, 442 F. Supp.

6  2d at 872. Moreover, the Vaughn declaration merely states that the

7  documents are written in such a way as to be un-segregable. This

8  type of conclusory statement, with no further explanation, is

9  plainly insufficient. Wiener, 943 F.2d 972; see also Meade Data

10 Cent., Inc., 566 F.2d at 261; NRDC, 442 F. Supp. 2d at 872.

11      As a remedy, the court has discretion to order defendants to

12 produce more detailed Vaughn declarations or indexes or order an

13 in camera review of the withheld documents. Lion Raisins, 354 F.3d

14 at 1082-83. Generally, ordering in camera review is only

15 appropriate after the defendants have been ordered to produce as

16 detailed a Vaughn index as possible, and that has been found

17 inadequate. Id.; see also Weiner, 943 F.2d at 979. Accordingly, the

18 court orders the NMFS to produce a Vaughn index or declaration

19 justifying their withholding of the documents at issue. The index

20 or declaration shall identify each of the documents withheld and

21 a particularized explanation of how the "disclosure of the . . .

22 document would damage the interest protected by the claimed

23 exemption." Weiner, 943 F.2d at 977-78. NMFS should disclose "as

24 much information as possible without thwarting the [claimed]

25 exemption's purpose." Id. at 979, citing King v. United States

26 Dep't of Justice, 830 F.2d 210, 219 (D.C. Cir. 1987).

**C.    Reasonableness of NMFS's Searches**

In their eighth cause of action, plaintiffs contend that defendants have a pattern and practice of unlawfully conducting piecemeal searches, improperly limiting the scope of its searches, and providing incomplete and untimely responses. Additionally, plaintiffs assert that defendants' declarations are not detailed enough to permit the court to assess the manner in which the searches were conducted. Plaintiffs seek declaratory and injunctive relief. Defendants counter that their searches were conducted reasonably.

An agency has a duty to make reasonable efforts to satisfy FOIA requests. Citizens Comm'n on Human Rights v. FDA, 45 F.3d 1325, 1328 (9th Cir. 1995); Founding Church of Scientology of Washington, D.C. v. Nat'l Sec. Agency, 610 F.2d 824, 837 (D.C. Cir. 1979). In determining reasonableness, the court's inquiry is not whether responsive documents may exist that were not provided to the requester, but whether the manner in which the search was conducted was adequate. Citizens Comm'n, 45 F.3d at 1328. An agency's practices may constitute a "withholding" of documents under FOIA if the practice results in significant impairment of the requester's ability to obtain certain types of documents. McGehee III, 697 F.2d at 1110. This withholding is improper if the agency offers no reasonable explanation for it. Id.

**1.    Whether Defendants' Evidence is Sufficiently Detailed to Permit Assessment of Defendants' Search Methods**

The plaintiffs contend that they are entitled to summary

1  judgement because the declarations submitted by the defendants
2  don't adequately describe the role of specific personnel involved
3  in the searches, the specific files that were searched, the timing
4  of the searches, and the search methods that were utilized. As
5  explained below, the court finds that the declarations contain the
6  requisite level of detail regarding the specifics of the August
7  2006 and October 2007 searches to allow the court to ascertain
8  their reasonableness.

9      To prevail on a motion for summary judgment in a FOIA case,
10 the agency must demonstrate "beyond material doubt ... that it has
11 conducted a search reasonably calculated to uncover all relevant
12 documents." Zemansky, 767 F.2d at 571. To establish the adequacy
13 of its search, the agency may rely upon reasonably detailed, non-
14 conclusory affidavits and declarations submitted in good faith. Id.
15 Generally, it is sufficient if the affidavits "describe what
16 records were searched, by whom, and through what process." Lawyers'
17 Comm. for Civil Rights of San Francisco Bay Area v. U.S. Dep't of
18 the Treasury, 534 F. Supp. 2d 1126, 1131 (N.D. Cal. 2008) (citing
19 Steinberg v. U. S. Dep't of Justice, 23 F.3d 548, 552 (D.C. Cir.
20 1994)). Accordingly, affidavits that "do not denote which files
21 were searched, do not reflect any systematic approach to document
22 location, and do not provide information specific enough to enable
23 [the requestor] to challenge the procedures utilized" have been
24 deemed insufficient.   Steinberg, 23 F.3d at 552.

25     The evidence submitted by the agency need not be exhaustive
26 to be adequate. In Citizens Comm'n on Human Rights v. FDA, 45 F.3d

1325, 1327 (9th Cir. 1995), the plaintiff's had requested all
records, notes, electronic information, or other information in the
custody or control of the FDA concerning the drug Prozac. The FDA
submitted a declaration from its staff attorney outlining the FDA's
efforts to locate documents that were responsive to the request.
Id. at 1328. "In addition to searching its main office, the FDA
forwarded CCHR's request to seven of its divisional offices and
spent over one hundred forty hours reviewing the active and retired
Prozac files." Id. Based on this evidence the court concluded that
the declaration was adequately detailed to enable the court to
determine the reasonableness of the search. Id.; see also Zemansky,
767 F.2d at 572 (holding declarations adequate because agency
employee described the general search terms she used, whom she
contacted in conducting the search, and described the response she
obtained to the search); Miller v. U.S. Dept. of State, 779 F.2d
1378, 1383 (8th Cir. 1985)(holding that declarations were adequate,
where they described that department personnel searched manually
through subject-matter files most likely to contain responsive
material).

### a. Adequacy of NMFS's Evidence Describing the August 2006 Search

With respect to the August 2006 request, the declarations
submitted by NMFS specifically identify the personnel involved in
the search and why the scope of the defendant's search was limited
to those particular individuals. Once the National Oceanic and
Atmospheric Administration's FOIA office received plaintiff's
request on August 14, 2006, it assigned Fisheries Biologist Michael

Tucker as the sole searcher in responding to the August 2006 request. Tucker Decl. ¶ 15. Tucker was selected because he is the "lead biologist responsible for the past and current Section 7 consolations with the U.S. Army Corps of Engineers regarding the effects upon listed anadromous species of the operation of the Daguerre Point and Englebright Dams on the Yuba River" and is the only NMFS biologist directly assigned to the Yuba consultations project Id. ¶2. Defendants, therefore, have provided sufficient detail describing what personnel conducted the FOIA search for plaintiffs' August 2006 request, and why that personnel was selected.

Defendants also present detailed evidence of the records that were searched. Mr. Tucker declared with relative specificity that he has searched his own project files, his computer files (including e-mail), and the Sacramento Area Office's shared central filing system. Tucker Decl. ¶¶ 21-23. Upon reviewing the August 2006 request, Tucker determined which physical locations were and were not likely to have responsive documents, based on the personnel located in those offices.[14] Id. ¶ 16. Mr. Tucker consulted his own hardcopy project files, choosing those likely to cover the topics in request, and looked through them for documents on those topics. Id. ¶ 21. Mr. Tucker also consulted the NMFS Southwest Region central database which contains descriptions of

---

[14]On September 19, 2006, the FOIA officer at one of these offices confirmed that the office had no responsive records. Malabanan Decl. ¶ 9.

1  project files by their subject matter. Id. ¶ 22. The database is

2  searchable using keywords and includes any technical assistance or

3  pre-consultation communications. Id. The third source that Mr.

4  Tucker searched was his e-mail inbox and the appropriate subject

5  folders in his email program. Id. ¶ 23. In his declaration, Mr.

6  Tucker described how he stores his e-mails and searched through

7  them. Id. ¶ 6. The court finds the defendants' declarations

8  sufficiently detailed as to what records were searched.

9      Finally, NMFS's declarations describe with sufficient

10 specificity the scope and method of its search in response to

11 plaintiffs' August 2006 request. Mr. Tucker declared that he

12 initially searched through his own hardcopy project files by

13 choosing the ones likely to cover topics in the request and by

14 looking through them for documents on those topics. Tucker Decl.

15 ¶ 21. Then he conducted a search on the Southwest Region central

16 database by entering the specific keywords "Yuba", "Daguerre", and

17 "Englebright." Malabanan Decl. ¶ 70. After identifying the files

18 containing potentially responsive materials, he retrieved the

19 actual paper files and reviewed each document page by page in each

20 folder. Id. Mr. Tucker also searched his e-mail by reviewing e-mail

21 in his inbox and in subject matter folders he identified as

22 responsive to the request. Id. ¶ 23. In June 2007, he learned how

23 to sort out responsive "Sent" emails. Id. E-mails in this folder

24 he sorted by name and looked for individuals he knew were involved

25 in the responsive projects. Malabanan Decl. ¶ 70. The names he

26 looked up included Dough Grothe, Steve Edmonson, Mike Dietl, John

Nelson, Cesar Blanco, Ted Frink, Teresa Fung, Kurt Aikens, John Johnsocn, and Craig Fleming. <u>Id</u>.

It appears to the court that the detail regarding the scope and methods of a search is sufficient and consistent with what other courts have found adequate. <u>See</u> <u>Perry</u>, 684 F.2d at 127; <u>Lawyers'</u>, 534 F. Supp. 2d at 1133; <u>see also</u> <u>People for the Am. Way Found. v. Nat'l Park Serv.</u>, 503 F. Supp. 2d 284, 293 (D.D.C., 2007)(holding the search inadequate because the defendant failed to identify what search terms were used); <u>Maydak v. United States Dep't of Justice</u>, 362 F. Supp. 2d 316, 326 (D.D.C. 2005)(holding agency search inadequate because agency declaration provided no information about search terms or scope of files searched).

In sum, defendants' evidence is adequately detailed to permit the court to assess the reasonableness of NMFS's search methods in response to plaintiffs' August 2006 FOIA request.

### b. Adequacy of NMFS's Evidence Describing the October 2007 Search

First, defendants' declarations provide sufficient detail to permit the court to assess which personnel participated in the search. Mr. Tucker, Ms. Neuman, Ms. Windham, Ms. Wang, Mr. Edmondson, and Mr. Stuart were each assigned search responsibilities. Malabanan Decl. ¶¶ 73, 88. These individuals were selected because the October 2007 request "expanded on the scope of the original request by adding requests for green sturgeon critical habitat and recovery information," and these searchers had expertise in those subjects. <u>Id.</u> ¶ 73. Plaintiffs point out that

these searchers are not listed in Mr. Tucker's declaration, although this appears to be an immaterial discrepancy. Ms. Malabanan is the Regional FOIA Coordinator and is responsible for processing FOIA requests and contacting NMFS employees. Id. ¶ 1. It does not seem unusual that she would be aware of additional individuals involved in the search even if Mr. Tucker was not aware of their efforts.

Second, the defendants have shown with sufficient specificity what files were searched in response to the October 2007 FOIA request. Ms. Malabanan described the files and other locations were each of the employees searched. Malabanan Decl. ¶¶ 70, 71, 78, 81-89, 94. Mr. Tucker searched for records responsive to Items 1 through 21 of the October 2007 request and, to accomplish this, he consulted similar sources and used similar techniques as in the August 2006 search. Tucker Decl. ¶ 70. In addition to the records utilized in the first search, Mr. Tucker "manually reviewed all Yuba River Technical Working Group files in his possession, including files transferred to him by Mr. Edmondson..." Malabanan Decl. ¶ 70. Ms. Newman and Ms. Wang consulted the documents that were maintained electronically in a shared project folder on a local shared server in Long Beach, looking at records dating back to 2006. Id. ¶¶ 81, 82. Ms. Wang also searched the local folder she created within her e-mail system to collect e-mail related to the green sturgeon critical habitat designation project. Id. ¶ 83. Mr. Stuart searched electronic files on his computer and any shares server locations, including working files, and any shared paper

1    project files. Id. ¶ 86. Ms. Windham and Mr. Edmonson each searched

2    their computer files and e-mails. Id. ¶ 89.

3         Defendants also have adequately described the scope and

4    methods of the searches. Ms. Malabanan described the search methods

5    used by each employee in detail, including when the employee was

6    consulted, what subjects the employee was asked to search, the

7    sources the employee searched, and the keywords the employee used

8    to conduct the search. Malabanan Decl. ¶¶ 70, 78, 83, 84, 86, 87,

9    89, 94. This is sufficient detail to allow the court to consider

10   the reasonableness of defendants' methods.

11        Accordingly, the court concludes that defendants' evidence is

12   sufficient to permit the court to assess the reasonableness of

13   NMFS's search methods in response to plaintiffs' October 2007 FOIA

14   request.

15        Finally, there is no indication that defendants submitted

16   their affidavits describing either the August 2006 or October 2007

17   search in bad faith. See Goland v. Cent. Intelligence Agency, 607

18   F.2d 339, 352 (D.C. Cir. 1978). It has been said that "agency

19   affidavits enjoy a presumption of good faith, which will withstand

20   purely speculative claims about the existence and discoverability

21   of other documents." Ground Saucer Watch, Inc. V. Cent.

22   Intelligence Agency, 692 F.2d 770, 771 (D.C. Cir. 1981). Indeed,

23   courts have held that the fact that search results are untimely

24   does not impugn the credibility of the affidavits or show bad faith

25

26

1  by the agency. <u>Miller</u>, 779 F.2d at 1386.[15] Despite the court's
2  reservations (see footnote below) I conclude that plaintiffs have
3  made no showing that the defendants' evidence regarding the nature
4  of their search was submitted in bad faith.

5  **2.   Limitation in Temporal Scope of NMFS's Search**

6  Plaintiffs allege that defendants' search methods are
7  unreasonable in several respects. First, plaintiffs contend that
8  NMFS unreasonably limits its search for responsive documents to the
9  date that the search is commenced. Because NMFS has released the
10 responsive documents several months after beginning the search,
11 plaintiffs argue that the start-of-search cut-off date has the
12 effect of unreasonably narrowing the scope of the search and
13 forcing a requester to make multiple requests over time.

14 It has been held that it is improper for an agency to use as
15 a cut-off date the date of a plaintiff's request for documents,
16 <u>see</u>, <u>e.g.</u>, <u>McGehee III</u>, 697 F.2d at 1103-1104.  This court is
17 unaware of any court holding that an agency acts unreasonably by
18 using as a cut-off date the date of its initial search. Indeed,
19 courts have expressly declined to require agencies to use a rolling
20 cut-off date, or no cut-off date at all, as doing so would "lead[]
21 . . . to an ever-moving target for the production of documents
22 under FOIA." <u>Edmond Inst. v. United States Dep't of the Interior</u>,
23 383 F. Supp. 2d 105, 111 (D.D.C. 2005); <u>see also</u> <u>Public Citizen v.</u>
24 <u>Dep't of State</u>, 276 F.3d 634, 642 (D.C. Cir. 2002) (suggesting a

25 ────────────
26 [15]Realistically, it is difficult to know what evidence a
   requester could produce to demonstrate responder bad faith.

start-of-search cut-off date as an alternative to the agency's
unlawful practice of using the date of the request as the cut-off
date); Ore. Natural Desert Ass'n v. Gutierrez, 409 F. Supp. 2d
1284, 1288 (D. Or. 2006) (same).[16] In any event, the Department of
Commerce's regulations direct agencies to employ a start-of-search
cut-off date. 15 C.F.R. § 4.5(a).[17]

Plaintiffs point out that, because NMFS delays for months
before releasing documents responsive to a request, using a start-
of-search cut-off date will almost invariably cause there to be
responsive documents that go unreleased. Although this may be true,
this circuit has held this result is not dispositive of the issue
of the reasonableness inquiry. See Zemansky, 767 F.2d at 571 ("the
issue to be resolved is not whether there might exist any other
documents possibly responsive to the request, but rather whether
the search for those documents was adequate" (italics omitted)).[18]
In sum, the cut-off date is a product of who bears the burden,

---

[16]It hardly needs mentioning that the problem exists only when
agencies do not promptly gather the relevant documents.  Moreover,
it is not clear to the court why a rolling cut-off date is any more
burdensome than putting the burden on the requester to file
repeated requests.  Moreover, the government, when responding to
requests for documents or interrogatories in civil cases, has the
burden of making current previous responses.  See Fed. R. Civ. P.
26(e).

[17]Because this is a federal regulation, there is no danger
that the requester would be uninformed about what cut-off date the
agency would employ, which some courts have found problematic.  See
McGehee III, 697 F.2d at 1105.  As noted above, however, the issue
is not a lack of notice, but who should bear the burden.

[18]Of course, the existence of unreleased but responsive
documents might bear on the question of whether the search was
adequate.

1  rather than an independent issue of whether the search was
2  unreasonable. While the court is far from convinced that the issue
3  has been resolved properly, I am bound by the Ninth Circuit, and
4  in any event, the apparently unanimous opinion of the courts would
5  counsel against adopting a different course. Accordingly, the court
6  concludes that NMFS's use of a start-of-search cut-off date was
7  proper.

8  **3.  NMFS's "Piecemeal" Responses**

9  Plaintiffs also argue that NMFS's searches were unreasonable
10 because they resulted in the release of documents on a rolling, or
11 "piecemeal," basis. Plaintiffs have not alerted the court to any
12 court that has found this practice unreasonable, nor has the court
13 discovered any such case. Instead, courts have held that it is
14 preferable for an agency to release documents to a requester on a
15 rolling basis, as they are determined to be responsive to the
16 request. See Caifano v. Wampler, 588 F. Supp. 1392, 1395 n. 2 (D.
17 Ill. 1984); cf. Hilton v. Fed. Bureau of Investigation, 527 F.
18 Supp. 223, 225 (D. Pa. 1981). Moreover, it appears to the court
19 that this accords with the purpose of the statute, which favors
20 prompt release of responsive documents. See generally 5 U.S.C. §
21 552(a)(6). For this reason, it does not appear that NMFS's practice
22 of release responsive documents on a rolling basis is unreasonable.

23 **4.  NMFS's Delays and Inefficiencies in Conducting Searches**

24 Finally, plaintiffs assert that NMFS's searches have been rife
25 with delays and inefficient search methods, foreclosing a
26 conclusion that its search process is reasonable. Plaintiffs tether

1   this argument on the McGehee III court's holding that an agency
2   "withholds" a document if it engages in a practice that causes
3   certain types of documents to be released to a requester only after
4   considerable delay. 697 F.2d at 1110. This appears tangential to
5   the plaintiffs' claim, however, as the question of the
6   reasonableness of NMFS's search methods implicates whether the
7   agency's withholding was improper. See id. Courts have found search
8   methods to be reasonable when the search "was especially geared to
9   recover the documents requested." Miller, 779 F.2d at 1383; see
10  also Weisberg, 705 F.2d at 1351-52 (an agency shows its compliance
11  with FOIA by showing that it conducted a thorough search); Perry,
12  684 F.2d at 128-29 (even if search results are untimely, an
13  agency's search is reasonable if it was thorough in scope).

14      Here, defendants' evidence describing its search methods
15  raises questions about their reasonableness. First, there appear
16  to be internal delays between the time a NMFS employee identifies
17  responsive documents and the time they were released to the
18  requester. See Malabanan Decl. ¶ 12. This appears to have
19  contributed to NMFS's failure to release the documents by the
20  deadline set by statute. See id. Second, Mr. Tucker appears to have
21  been an important member of the team of personnel searching for
22  documents responsive to the October 2007 request, although he was
23  occupied with other tasks -- among which was drafting the November
24  2007 Biological Opinion at issue in this case -- which prevented
25  him from completing his search for two months. See Malabanan Decl.
26  ¶ 26; Tucker Decl. ¶¶ 69-71. This again suggests a structural flaw

1 in NMFS's efforts to produce timely, complete responses to FOIA

2 requests. Third, it appears that since Mr. Tucker was lead

3 biologist on the subject matter of the FOIA requests, he was a

4 logical choice to conduct the searches and he appears to have done

5 so diligently and competently. Nevertheless, he acknowledges that

6 he "had little experience in document retrieval or response to

7 [FOIA] requests" and was initially unaware of how to search for

8 documents within his e-mail program. Tucker Decl. ¶¶ 3, 10. This

9 again suggests to the court that there may be flaws in the

10 supervision and training within NMFS that impedes that agency's

11 ability to respond in a timely manner to FOIA requests.

12 These concerns are not so great, however, as to convince the

13 court that defendants search methods are objectively unreasonable.

14 The touchstone of the reasonableness inquiry appears to be simply

15 the thoroughness of the search, notwithstanding the tardiness of

16 the results. Guided by this principle, the court must conclude that

17 NMFS's searches were reasonable.

18    **5.   Good Faith of Defendants' Searches**

19 Even if the agency meets its burden to show that it conducted

20 a reasonably thorough search, a plaintiff may still succeed in his

21 FOIA claim by showing that the defendants performed the search in

22 bad faith. <u>Maynard v. Cent. Intelligence Agency</u>, 986 F.2d 547, 560

23 (1st Cir. 1993); <u>Miller</u>, 779 F.2d at 1383; <u>Meeropol v. Meese</u>, 790

24 F.2d 942, 953 (D.C. Cir. 1986). Evidence that a search is

25 inefficient or untimely does not suffice to show bad faith. The

26 Eighth Circuit has said,

> Whether the backlog and delays result from understaffing or from misapplication of resources or from bureaucratic inertia is . . . immaterial. . ., for none of these things by itself would constitute bad faith as to this plaintiff's request. Delay alone is significant only to the extent that evidence shows that the delay resulted from bad-faith refusal to cooperate.

Miller, 779 F.2d at 1386. That circuit's conclusion, however, is difficult to fully support.  What is attributed to "understaffing" and "bureaucratic" inertia, may as well be attributable to bad faith.  An agency always has the manpower and power to do what it believes must be done.  Following the Eighth Circuit's reasoning allows the agency to allocate its resources to those tasks it views as more important than addressing FOIA requests. On the other hand, the fact that an agency releases documents in a piecemeal fashion tends to show the agency's good faith attempt to discover responsive files and release them when found. Meerpol, 720 F.2d at 953; Military Audit Project v. Casey, 656 F.2d 724, 754 (D.C. Cir. 1981). Here, while there appears to be questions of delay, and lack of training, I cannot conclude that plaintiffs have presented evidence of defendants' bad faith.

While the question is not without difficulty, the court concludes that defendants have met their burden to show that they conducted reasonable searches in response to plaintiffs' August 2006 and October 2007 requests. The court grants defendants' motion for summary judgment on plaintiffs' eighth cause of action, with regards to these FOIA requests.[19]

---

[19]Because there is a possibility that the plaintiffs' complaint may be amended in the future to include allegations

**D.    Injunctive Relief**

Given the deficiencies in NMFS's response to plaintiffs' FOIA requests identified above, the court concludes that injunctive relief is a proper remedy. FOIA allows the court to enjoin an agency from improperly withholding responsive documents. 5 U.S.C. § 552(a)(4)(B). Injunctive relief in a FOIA context is appropriate where the public would be benefitted by the disclosure. Long v. United States Internal Revenue Serv., 693 F.2d 907, 910 (9th Cir. 1982). In making this determination, the court should consider whether "there has been a voluntary cessation of allegedly illegal conduct, [whether] . . . prolonged delays have repeatedly hindered the timely disclosure of non-exempt documents, . . . the likelihood of recurrence, . . . the good faith of any expressed intent to comply, the effectiveness, if any, of the discontinuance and the character of past violations." Id., citing United States v. W.T. Grant Co., 345 U.S. 629, 633 (1952).

Here, these factors weigh in favor of granting an injunction. Defendants have responded in an untimely manner to plaintiffs' August 2006, October 2007, and March 2008 FOIA requests. Although they appear to have acted in good faith in complying with the statute's requirements with regards to the August 2006 and October 2007 requests, they have not voluntarily ceased their practice of untimely responses or shown effective voluntary attempts to conform to the law. Because plaintiffs represent that they have lodged

regarding subsequent requests, the court does not intend for the parties to interpret this grant of summary judgment as foreclosing those possible future claims.

1  another request, in May 2008, there is a likelihood that
2  defendants' violation will recur. Consequently, injunctive relief
3  is merited in this case.

4      NMFS is therefore enjoined to respond to SYRCL's March 17,
5  2008 FOIA request to NMFS and all future requests by SYRCL to NMFS
6  in accord with the  deadlines imposed by 5 U.S.C. §§ 552(a)(3)(A),
7  (a)(6)(A), (a)(6)(C)(I).

8                        IV. CONCLUSION

9      For the reasons stated herein, the court orders as follows:
10     1.   The court DECLARES unlawful NMFS's failure to adhere to
11          FOIA's deadline for responding to plaintiffs' August
12          2006, October 2007, and March 2008 information requests.
13     2.   NMFS is enjoined to respond to SYRCL's March 17, 2008
14          FOIA request to NMFS and all future requests by SYRCL to
15          NMFS in accord with the deadlines imposed by 5 U.S.C. §§
16          552(a)(3)(A), (a)(6)(A), (a)(6)(C)(I).
17     3.   Defendants are ORDERED to produce, no later than twenty
18          days from the date of this order, <u>Vaughn</u> declarations or
19          indices addressing the deliberative process privilege
20          asserted for documents responsive to plaintiffs' October
21          2007 FOIA request.
22     4.   Plaintiffs' motion for summary judgment on their seventh
23          cause of action is DENIED to the extent it alleges that
24          defendant acted unlawfully by referring the request to
25          other government agencies.
26  ////

5.   Plaintiffs' motion is DENIED and defendants' motion is
     GRANTED as to plaintiffs' eighth cause of action.

IT IS SO ORDERED.

DATED: June 20, 2008.


_____
LAWRENCE K. KARLTON
SENIOR JUDGE
UNITED STATES DISTRICT COURT