IN THE UNITED STATES DISTRICT COURT

FOR THE EASTERN DISTRICT OF CALIFORNIA

SOUTH YUBA RIVER CITIZENS
LEAGUE and FRIENDS OF THE RIVER,

      Plaintiffs,                 No. CIV S-06-2845 LKK JFM

    vs.

NATIONAL MARINE FISHERIES
SERVICE, et al.,

      Defendants.              <u>ORDER</u>

_____/

        Plaintiffs' motion to compel discovery was noticed for hearing on July 24, 2008. The motion was taken under submission without oral argument. Upon review of the motion and the Joint Statement re Discovery Disagreement (hereafter "Joint Stmt."), filed July 21, 2008, and good cause appearing therefor, THE COURT FINDS AS FOLLOWS:

        On June 17, 2008, plaintiffs filed a sixth amended complaint challenging the Brophy Diversion ("the project") under the citizen suit provision of the Endangered Species Act (ESA § 11(g); 16 U.S.C. § 1540(g)(1)), and the Administrative Procedures Act ("APA"), asserting eleven claims for relief, three of which are relevant to the instant motion:

/////

      3.  National Marine Fisheries Service ("NMFS") 11/07 Biological Opinion ("BiOp") violated Section 7(a)(2) of the ESA & §§ 706(1) and (2) of the APA;[1]

      4.  The Corps is violating section 9 of the ESA by operating the Project;[2]

      6.  Defendant Yuba County Water Agency ("YCWA") is violating section 9 of the ESA.[3]

(Joint Stmt. at 6-7.)  Plaintiffs have withdrawn those discovery requests pertinent to claims previously dismissed by the district court, and now seek to compel responses to the following discovery requests:

- Interrogatory Nos. 7-11 and 16-20 to NMFS, Carlos Gutierrez & Rodney McInnis (docket no. 68);

/////

---

[1] Because it (a) improperly considered actions that were not reasonably certain to occur as part of the finding of no jeopardy; (b) arbitrarily and capriciously found no jeopardy despite overwhelming evidence of harm to the listed species; (c) failed to set forth reasonable and prudent alternatives to the project that would avoid jeopardy; (d) failed to include an adequate analysis of the current status of the listed species and their critical habitat; (e) failed to include an adequate analysis of the current status of the listed species and their critical habitat; (f) failed to consider whether the project would jeopardize not just the survival of the listed species but their recovery as well; (g) failed to analyze the effect of the ecological surrogates on the population numbers of the listed species or specify the extent of take authorized; (h) ignored the NMFS regulatory definition of "destruction or adverse modification" of critical habitat; and (i) had no reasonable basis to conclude that the reasonable and prudent measure and terms and conditions in the ITS would minimize the level of taking of the listed species to no more than an incidental level.

[2] Because (a) the Corps lacks incidental take protection because none of the NMFS biological opinions have been valid; (b) the Project is causing harm to the listed species resulting in "take" and adverse modification of critical habitat; and (c) even if any of the biological opinions were valid, the Corps has lost incidental take protection by failing to comply with the reasonable and prudent measures, terms & conditions, and ecological surrogates set forth in the ITSs accompanying the biological opinions.

[3] Because (a) YCWA lacks incidental take protection because none of the NMFS biological opinions have been valid; (b) the Brophy Diversion is causing harm to the listed species resulting in "take" and adverse modifications of their critical habitat; (c) even if any of the biological opinions were valid, YCWA has lost incidental take protection because of the Corps' failure to comply with the reasonable and prudent measures, terms and conditions, and ecological surrogates set forth in the ITSs accompanying the biological opinions; and (d) YCWA is operating the Brophy Diversion without any easement, license, or permit issued by the Corps and is therefore not covered by any of the ITSs accompanying the biological opinions.

1  • Interrogatory Nos. 7-10 and 16-20 to Corps, Pete Geren, Sec'y of the Army, and Colonel Thomas C. Chapman, District Engineer (docket no. 68);

• Request for Production of Documents Nos. 3-8, 10, and 13-22 to NMFS, Carlos M. Gutierrez and Rodney McInnis (docket no. 68);

• Request for Production of Documents Nos. 3-8, 10, and 13-20 to Corps, Pete Geren, Sec'y of the Army, and Colonel Thomas C. Chapman, District Engineer (docket no. 68);

• Request for Admission Nos. 1-35, 39-53, 55-62,[4] and 66-73 to NMFS, Carlos Gutierrez & Rodney McInnis (docket no. 68); and

• Request for Admission Nos. 1-35, 39-53, 55-62,[5] and 66-73 to Corps, Pete Geren, Sec'y of the Army, and Colonel Thomas C. Chapman, District Engineer (docket no. 68).

(Joint Stmt. at 8.)

Here, plaintiffs contend they are entitled to obtain discovery because they challenge the substantive provisions of Section 9 of the ESA, which is a "citizen suit provision [creating] an express, adequate remedy." Washington Toxics Coalition v. Environmental Protection Agency, 413 F.3d 1024 (9th Cir. 2005).

> [A]ny person may commence a civil suit on his own behalf . . . to enjoin any person, including the United States and any other governmental instrumentality or agency . . . who is alleged to be in violation of any provision of this chapter or regulation issued under the authority thereof.

16 U.S.C. § 1540(g)(1). "Because this substantive statute independently authorizes a private right of action, the APA does not govern the plaintiffs' claims. Plaintiffs' suits to compel agencies to comply with the substantive provisions of the ESA arise under the ESA citizen suit provision, and not the APA." Washington Toxics Coalition, 413 F.3d at 1034 (citations omitted).

/////

---

[4] Request for Admission No. 63 was withdrawn in the Joint Stmt. Id. at 14 n.6.

[5] Request for Admission No. 63 was withdrawn in the Joint Stmt. Id. at 14 n.6.

3

1  However, as federal defendants note, Washington Toxics Coalition and the cases
2  cited therewith did not involve a challenge to an agency's biological opinion; rather, those cases
3  addressed an alleged failure to initiate consultation in violation of section 7 of the ESA.
4  Washington Toxics Coalition, 413 F.3d at 1034 (whether EPA was required to initiate
5  consultation on pesticide registrations and scope of injunction pending compliance).  Moreover,
6  section 9 of the ESA was not at issue in Washington Toxics Coalition.  Id.[6][7]  Although plaintiffs
7  disagree, at bottom, the key issue here is whether the BiOp was valid, which is subject to
8  administrative record review under the APA.

9  Because plaintiffs challenge administrative agencies' decisions, the APA standard
10  of review applies, which is generally limited to determining agency compliance with the law
11  solely on the administrative record on which the decision was made.  Center for Biological
12  Diversity v. U.S. Fish & Wildlife Serv., 450 F.3d 930, 934 n.4 (9th Cir. 2006).[8]  This limited

---

[6] Even in the context of seeking a preliminary injunction, the Ninth Circuit has confirmed the application of the APA.  See The Lands Council v. McNair, ___ F.3d ___, 2008 WL 2640001, *9 (9th Cir. 2008)(en banc)(reviewing decisions under NEPA and NFMA, "Were we to grant less deference to the agency, we would be ignoring the APA's arbitrary and capricious standard of review.")

[7] "[Section] 9 does not provide coverage for endangered and threatened species that is as broad as that provided in § 7 because 'the Government cannot enforce the § 9 prohibition until an animal has actually been killed or injured.'"  Defenders of Wildlife v. Martin, 454 F.Supp.2d 1085 (E.D. Wash. 2006)(quoting Sweet Home Chapter of Communities for a Great Oregon, 515 U.S. 687, 115 S.Ct. 2407 (1995).  "This 'after-the fact enforcement' does not prevent threats to listed species; that task is accomplished through § 7."  Defenders of Wildlife v. EPA, 420 F.3d 946, 975 (9th Cir. 2005), overruled on other grounds sub nom Nat'l Ass'n of Home Builders v. Defenders of Wildlife, ___ U.S. ___, 127 S.Ct. 2518 (2007).

[8] Footnote 4 reads as follows:  "We review the grant of summary judgment de novo, Citizens for Better Forestry v. U.S. Dep't of Agric., 341 F.3d 961, 969 (9th Cir.2003), and apply the same standards as the district court.  Brower v. Evans, 257 F.3d 1058, 1065 (9th Cir.2001). When reviewing administrative decisions involving the ESA, we are guided by section 706 of the Administrative Procedure Act ("APA").  Ariz. Cattle Growers' Ass'n v. U.S. Fish & Wildlife, 273 F.3d 1229, 1235-36 (9th Cir.2001).  Under the APA, agency actions and findings shall be set aside only when they are found to be "arbitrary, capricious, an abuse of discretion," "in excess of statutory . . . authority," or "without observance of procedure required by law." 5 U.S.C. § 706(2)(A), (C)-(D).  This is a narrow scope of review, which does not allow us to "substitute [our] judgment for that of the agency."  Ariz. Cattle, 273 F.3d at 1236.  We must uphold the agency's decision if the agency considered the relevant factors and made no clear error of

review was recently reaffirmed by the Ninth Circuit in a unanimous en banc decision.  See The Lands Council v. McNair, ____ F.3d ____, 2008 WL 2640001, *9 (9th Cir. 2008)(en banc).[9] "The focal point for judicial review should be the administrative record already in existence, not some new record made initially in the reviewing court." Camp v. Pitts, 411 U.S. 138, 142, 93 S.Ct. 1241 (1973); Southwest Center for Biological Diversity v. U.S. Forest Service, 100 F.3d 1443, 1450 (9th Cir. 1996).

> There are four exceptions to this rule which are narrowly construed:
>
> 1. If the agency has failed to explain its actions so as to frustrate judicial review;
>
> 2. If necessary to determine whether the agency considered relevant factors;
>
> 3. If the agency relied on materials not in the record; or
>
> 4. Upon a showing of bad faith.

Southwest Center for Biological Diversity, 100 F.3d at 1450.  These exceptions, however, are to be applied sparingly.  Rybachek v. EPA, 904 F.2d 1276, 1296 n.25 (9th Cir.1990).  See also Animal Defense Council v. Hodel, 840 F.2d 1432, 1436-38 (9th Cir. 1988)(limited review to administrative record and prohibited discovery where plaintiffs failed to demonstrate administrative record was insufficient for review or show one of the four exceptions applied), modified, 867 F.2d, 1244 (9th Cir. 1989).  Plaintiffs have not attempted to demonstrate they are entitled to discovery based on any of the above four exceptions.

/////

---

judgment. Id." Center for Biological Diversity v. U.S. Fish & Wildlife Serv., 450 F.3d 930, 934 n.4 (9th Cir. 2006).

[9] "Review under the arbitrary and capricious standard "is narrow, and [we do] not substitute [our] judgment for that of the agency." Earth Island Inst. II, 442 F.3d at 1156 (citing U.S. Postal Serv. v. Gregory, 534 U.S. 1, 6-7, 122 S.Ct. 431, 151 L.Ed.2d 323 (2001)). Rather, we will reverse a decision as arbitrary and capricious only if the agency relied on factors Congress did not intend it to consider, "entirely failed to consider an important aspect of the problem," or offered an explanation "that runs counter to the evidence before the agency or is so implausible that it could not be ascribed to a difference in view or the product of agency expertise." Id. (citing Sierra Club v. U.S. Envtl. Prot. Agency, 346 F.3d 955, 961 (9th Cir.2003), amended by 352 F.3d 1186 (9th Cir.2003))." The Lands Council, 2008 WL 2640001 at *4.

Rather, plaintiffs argue discovery is appropriate upon a showing that the agency has failed to produce a complete administrative record and is instead withholding from the record documents in its possession.  For example, <u>Public Power Council v. Johnson</u>, 674 F.2d 791, 794 (9th Cir. 1982); <u>Natural Resources Defense Council, Inc. v. Train</u>, 519 F.2d 287, 291-92 (D.C. Cir. 1975); <u>Exxon Corp. v. Department of Energy</u>, 91 F.R.D. 26, 33 (D.C. Tex. 1981); <u>Tenneco Oil Co. v. Department of Energy</u>, 475 F.Supp. 299, 317 (D. Del. 1979).  (Joint Stmt. at 19, n.8.)

Plaintiffs seek discovery on the ground that the administrative record is incomplete, based on the following:

1. NMFS' failure to include all documents in the administrative record that NMFS cited as supporting references in the BiOps themselves;[10]  (Joint Stmt., Orion Decl., Ex. H.)

2. Comparison of the Corps' administrative record to the NMFS administrative record reflects 90 documents omitted from the NMFS record which should have been included because they were sent to, from or created by NMFS and relate directly to the November 2007 BiOp;  (Joint Stmt., Orion Decl., Ex. I.)

3. Hundreds of documents produced through FOIA were not included in the NMFS administrative record.  Plaintiffs contend at least 160 documents should have been included and fifty more documents were produced from the Corps record, but not included in the NMFS administrative record.[11]  (Joint Stmt., Orion Decl., Exs. J & K.)

4. A number of scientific studies, including studies written by NMFS scientists, were not included in the NMFS administrative record.  (Joint Stmt., Orion Decl., Ex. L.)

---

[10] Plaintiffs contend the 2002 BiOp & the April 2007 BiOp failed to include all documents cited as references within the BiOps, and the November 2007 BiOp omitted at least 33 of 97 documents cited as references within the text or in the "literature cited" portion.

[11] For example, in the FOIA production was a 7/27/00 email from NMFS scientist Mike Tucker to Cal Fish & Game official re Brophy Diversion:  "We were surprised to hear a lot of water percolating thru, and after a closer look it appears the screen is not operating up to standards.  It was apparent that fry could easily be swept into the screen and entombed.  Terrible. . . ."  This email was not included in the administrative record.

6

5. The NMFS record allegedly contains no documents relating to a number of significant inconsistencies in the November 2007 BiOp. The 2002 BiOp included four terms and conditions required to avoid jeopardizing the survival and recovery of the listed species; but when the 2002 BiOp expired, the April 2007 BiOp provided YCWA and the Corps with interim incidental take protection while NMFS completed a long-term biological opinion. (Joint Stmt. at 24.) The April 2007 BiOp deleted all but one of the 2002 BiOp's terms and conditions but then reinstated them in the November 2007 BiOp. (Id.) Moreover, some of the terms and conditions are not required to be implemented for up to 10 years. (Id.)

The federal defendants contend that plaintiffs have not demonstrated exceptional circumstances justifying discovery. "It is not enough that discovery sought 'might have supplied a fuller record' if the discovery would not address new issues." (Joint Stmt. at 40, citing Friends of the Earth v. Hintz, 800 F.2d at 829 (9th Cir. 1986).) Defendants argue plaintiffs have failed to establish that the present record "is so inadequate that judicial review would be 'effectively frustrat[ed].'" (Joint Stmt. at 40, citing Center for Biological Diversity v. Federal Highway Admin., No. 01-cv-1876-JM (POR), 2002 WL 32307826 at *4 (S.D. Cal. Nov. 19, 2002), adopted, 290 F.Supp.2d 1175 (S.D. Cal.2003).)

Defendants' arguments are well-taken. The cases relied upon by plaintiffs are distinguishable from the instant case and do not warrant the broad discovery sought by plaintiffs. In Portland Audobon, credible evidence of improper ex parte contacts with the decisionmaker was submitted to the court yet there was no documentation of same in the record. Portland Audubon Soc. v. Endangered Species Committee, 984 F.2d 1534 (9th Cir. 1993). In Public Power Council, plaintiffs presented credible evidence of bad faith in negotiations that resulted in the challenged energy contract. Public Power Council v. Johnson, 674 F.2d 791 (9th Cir. 1982). Plaintiffs have presented no evidence of bad faith or other facts demonstrating the unique circumstances required to warrant discovery in this action.

/////

Also, plaintiffs have not shown incompleteness of the record by the cases cited in support. In Exxon Corp., the record submitted contained only 126 pages and "[n]ot an iota of documentary 'evidence' has been furnished." Id., 91 F.R.D. at 34. In Tenneco Oil Co., the record contained chiefly official agency documents and virtually no internal discussions or memoranda. Id., 475 F.Supp. at 317. Finally, in Train, "the Administrator did not produce the [88 page] Briefing Book nor did he ever claim that he had filed the entire administrative record," and the appellate court found the district court erred because it did not have the entire administrative record before it when it reached its decision. Natural Resources Defense Council, Inc. v. Train, 519 F.2d 287, 291-92 (D.C. Cir. 1975).

A review of the records submitted herein demonstrate no such deficiency here. Unlike the record in Tenneco Oil Co., both NMFS and the Corps' administrative records "are replete with informal communication and discussion." (Joint Stmt. at 42-43.) The records contain emails, memos, scientific records and other documents approaching 40,000 pages.

In addition, federal defendants acknowledge their obligation to supplement the record during the pendency of the action, and the court notes that supplemental records have been lodged. (See Docket Nos. 162 & 136.) Federal defendants have not yet asserted that the entire administrative record has been lodged; indeed, federal defendants state "NMFS is examining plaintiffs' lists of documents in a good-faith effort to ensure that no record documents were inadvertently omitted." (Joint Stmt. at 41.)

Moreover, plaintiffs' speculation that certain documents should or may exist is insufficient to overcome the presumption that the agency has properly designated and certified the administrative record. Plaintiffs' concern that some documents found in the Corps' administrative record are not similarly located in the NMFS administrative record is not well taken. Both records are before the court, and no purpose would be served to duplicate documents already within this court's record, particularly in light of the size of the present records.

/////

The federal defendants' explanation of the distinction between documents produced under FOIA to those required to be produced in an administrative record is well taken. Federal defendants are not required to produce, in an administrative record, every scrap of relevant paper. Indeed, the court would not want to review such a record. Rather, federal defendants are required to produce the administrative record on which the agency relied, either directly or indirectly, in reaching the BiOp at issue herein. While plaintiffs are correct that the agency should not be permitted to edit or selectively produce documents, particularly those that may conflict with the BiOP, absent unique circumstances not demonstrated here, this court will not order discovery to expand the record beyond the record the agency considered in reaching its decision. Plaintiffs have not met their burden to warrant the grant of such broad discovery.

"The complete administrative record consists of all documents and materials directly or indirectly considered by the agency." Bar MK Ranches v. Yuetter, 994 F.2d 735, 739 (10th Cir.1993). Plaintiffs have obtained numerous other documents pursuant to four FOIA requests. Plaintiffs now have those documents in their possession and may move to supplement the record if they can demonstrate those documents should have been included in the administrative record. The district court retains the discretion to consider any of those documents when it rules on the motion for summary judgment and affidavits submitted by the agencies should plaintiffs be able to meet one of the four exceptions set forth above.

> The scope of these exceptions permitted by our precedent is constrained, so that the exception does not undermine the general rule. Were the federal courts routinely or liberally to admit new evidence when reviewing agency decisions, it would be obvious that the federal courts would be proceeding, in effect, de novo rather than with the proper deference to agency processes, expertise, and decision-making.

The Lands Council v. Powell, 395 F.3d 1019, 1030 (9th Cir. 2005)(as amended).

/////

/////

/////

Accordingly, plaintiff's July 3, 2008 motion to compel is denied. (Docket Nos. 154, 160.) However, federal defendants are reminded of their obligation to provide in the administrative record all documents directly or indirectly considered by the decisionmaker.

DATED: August 25, 2008.

_____
UNITED STATES MAGISTRATE JUDGE

/001; southyuba.mtcf