1
2
3
4
5
6
7
8                   UNITED STATES DISTRICT COURT

9                  EASTERN DISTRICT OF CALIFORNIA

10

11   SOUTH YUBA RIVER CITIZENS
     LEAGUE and FRIENDS OF THE
12   RIVER,
                                          NO. CIV. S-06-2845 LKK/JFM
13
             Plaintiffs,
14
         v.                                      O R D E R
15
     NATIONAL MARINE FISHERIES
16   SERVICE, et al.,

17           Defendants.

18   _____/

19        On March 2, 2009, plaintiffs filed a motion for a preliminary

20   injunction, relying in large part on an accompanying declaration

21   by plaintiffs' expert Brad Cavallo.  Defendant Yuba County Water

22   Agency ("YCWA") then propounded discovery requesting prior drafts

23   of this declaration and communications exchanged between Cavallo

24   and plaintiffs' counsel in preparation of this declaration.

25   Plaintiffs objected to these requests.

26        Pending before this court are two motions relating to this

                                    1

declaration. The first is plaintiffs' motion for reconsideration of the magistrate judge's order compelling responses to YCWA's requests for production. The second motion contains defendant YCWA's evidentiary objections to the Cavallo declaration. YCWA argues that the failure to produce these documents renders the declaration prejudicial, and separately argues that the declaration is unreliable within the meaning of Fed. R. Evid. 702.

## I. BACKGROUND

The facts in this case are more fully set forth in this courts' other orders. In brief, this case concerns the Daguerre and Engelbright dams on the South Yuba River, both operated by the Army Corps of Engineers, and the related South Yuba-Brophy water diversion, operated by YCWA. Plaintiffs allege that these projects harm three species protected by the Endangered Species Act ("ESA"), 16 U.S.C. § 1531 et seq., the spring run Chinook salmon, steelhead, and green sturgeon, in violation of that Act.

Plaintiffs' specific claims are not directly at issue in the present discovery and evidentiary dispute. The court therefore turns to the Cavallo declaration and YCWA's efforts to compel discovery.

## A. Cavallo Declaration

In support of the pending motion for a preliminary injunction, plaintiffs submitted a 32-page expert declaration of Brad Cavallo, Doc. No. 199-11. This declaration describes the overall status of the three species that plaintiffs claim are impacted by defendants' projects, the habitat needs of these three species, the projects'

effects on these species, and recommendations for modifications that would minimize these effects. The declaration also includes a section discussing the impacts of hatchery fish on listed species, although neither the declaration nor the complaint indicate that a hatchery is a component of any of the challenged projects.

YCWA deposed Cavallo regarding this declaration and its basis. In this deposition, Cavallo explained that he had not conducted any experiments or studies specific to the projects at issue. Instead, Cavallo's testimony was based upon experience with and studies conducted on other rivers providing habitat for the three species, coupled with facts in the administrative record, the Biological Opinion for the project issued by NMFS, and his personal observations of the project. See also Cavallo Reply Declaration, ¶ 21.

In preparing this declaration, Cavallo worked extensively with plaintiffs' counsel. Initially, plaintiffs' counsel provided Cavallo with a list of topics upon which plaintiffs had concluded that they needed expert testimony. Cavallo and counsel had approximately six phone calls discussing his opinions on these topics. When the initial draft of the declaration was prepared, roughly 80 percent of the declaration was typed by plaintiffs' counsel. Between five and ten subsequent drafts were prepared "as an exchange of thought and ideas between [Cavallo] and counsel." Some further text was prepared by Cavallo. Cavallo reviewed and approved the entire content of the final declaration, as indicated

by his signature on it.

**B.    YCWA's Requests for Production**

YCWA propounded requests for production ("RFPs") of documents seeking "any and all documents" relating to any opinions Cavallo had been asked to render or anticipates rendering in this case. Plaintiffs object to these requests to the extent that they seek:

     (1)   email messages from Plaintiffs' counsel to Mr. Cavallo setting forth and discussing counsel's views on topics that Plaintiffs had determined they need expert testimony on,

     (2)   email messages between Plaintiffs' counsel to Mr. Cavallo discussing revisions to drafts of the Cavallo Declaration, and

     (3)   drafts of the Cavallo Declaration.

Pls. Mem. Supp. Mot. Reconsider, 4.   In light of plaintiffs' objections, on March 20, 2009, YCWA filed a motion to compel responses to these RFPs.   Also on that day, YCWA filed three evidentiary objections to the Cavallo declaration.   First, YCWA argued that, absent responses to the RFPs, it was unable to respond to the declaration, such that the declaration was unfairly prejudicial under Fed. R. Evid. 403.   Second, YCWA argued that the entire declaration was unreliable under Fed. R. Evid. 702.   Third, and in the alternative, YCWA argued that three specific portions of the declaration were unreliable: discussion of the South Yuba-Brophy diversion, discussion of critical habitat for Spring run Chinook Salmon and steelhead, and discussion of water diversions or flows in the Yuba River.

The magistrate assigned to this case granted YCWA's motion to

compel on March 26, 2009. Plaintiffs' motion for reconsideration of that order, together with YCWA's motion regarding evidentiary objections, are the subject of this order. These motions are discussed separately.

## II. MOTION FOR RECONSIDERATION

**A.    Standard for Reconsideration of A Magistrate Judge's Order**

Federal Rule of Civil Procedure 72(a) provides that non-dispositive pretrial matters may be decided by a magistrate judge, subject to reconsideration by the district judge. See also Local Rule 72-303(f). The district judge shall, upon reconsideration, modify or set aside any part of the magistrate judge's order which is "found to be clearly erroneous or contrary to law." Id.; see also 28 USC § 636 (b)(1)(A).

Discovery motions are non-dispositive pretrial motions within the scope of Rule 72(a) and 28 USC § 636(b)(1)(A), and thus subject to the "clearly erroneous or contrary to law" standard of review. Rockwell Intern., Inc. v. Pos-A-Traction Industries, Inc., 712 F.2d 1324, 1325 (9th Cir. 1983) (per curiam). "A finding is 'clearly erroneous' when although there is evidence to support it, the reviewing court on the entire evidence is left with the definite and firm conviction that a mistake has been committed." United States v. United States Gypsum Co., 333 U.S. 364, 395 (1948); Anti-Monopoly, Inc. v. General Mills Fun Group, Inc., 684 F.2d 1316, 1318 (9th Cir. 1982).

**B.    Analysis**

Plaintiffs argue that YCWA's requests for production

impermissibly sought protected attorney work product. The magistrate held that the work product rule does not protect materials, including attorney opinion, considered by a testifying expert in formation of his opinions. Order at 2 (quoting <u>Ass'n of Irritated Residents v. Dairy</u>, No. 1:05cv0707, 2008 U.S. Dist. Lexis 57459 (E.D. Cal. June 18, 2008)). The majority of courts to have considered the issue have agreed with this conclusion.

In their motion for reconsideration, plaintiffs encourage this court to reject the majority rule, at least with regard to opinion work product. Plaintiffs alternatively argue that even under the majority rule, production of the drafts of the Cavallo declaration were not required, because these documents were not "considered" by Cavallo. For the reasons stated below, the court rejects both of these arguments.

Plaintiffs have not argued against, and have instead embraced, YCWA's and the magistrate's assumption that if the majority rule is the correct one, and if the requested documents were considered by Cavallo, then the motion to compel was properly granted. Accordingly, this court joins in the assumption that this rule may be properly applied to an expert declaration submitted in support of a motion for a preliminary injunction.

**1.** **The Magistrate Properly Adopted The "Majority Rule" Regarding Discovery of Work Product Considered by A Testifying Expert**

This dispute concerns the intersection of the protection afforded to work product and the policy favoring discovery of

information considered by testifying experts.  The latter policy is expressed in two of the Federal Rules of Civil Procedure.  Fed. R. Civ. P. 26(a)(2) requires parties to disclose "the identity of any witness it may use at trial to present [expert] evidence." This expert disclosure must be accompanied by a report which contains, inter alia, "a complete statement of all opinions the [expert] witness will express and the basis and reasons for them [and] the data or other information considered by the witness in forming them."  Rule 26(a)(2)(B)(i)-(ii).  These provisions were added as part of the 1993 amendments to Rule 26.  Furthermore, Rule 26(b)(4) provides that while a party may not ordinarily depose another party's non-testifying expert, this protection does not apply to experts "whose opinions may be presented at trial."

Although these rules refer to experts used at trial, courts have applied them when an expert's testimony is offered to the court in connection with summary judgment motions, reasoning that in such situations, the expert has "entered the judicial arena." United States v. Hooker Chemicals & Plastics Corp., 112 F.R.D. 333, 339 (W.D.N.Y. 1986).  See also Quevedo v. Trans-Pacific Shipping, 143 F.3d 1255, 1258 (9th Cir. 1998) (upholding exclusion of expert testimony offered in summary judgment proceeding for failure to comply with Rule 26(a)(2)), United States, ex rel. Woodruff v. Haw. Pacific Health, 560 F. Supp. 2d 988, 996 (D. Haw. 2008) (same), Hooker Chemicals & Plastics Corp., 112 F.R.D. at 339 ("when a party offers an affidavit of an expert witness in opposition to, or in support of a motion for summary judgment, it waives its right not

to have the deposition of said expert taken."). The parties and the magistrate assume that these rules also apply at the preliminary injunction stage, and this court joins in this assumption while expressly refraining from deciding this issue.[1]

The protection afforded to attorney work product is embodied by Fed. R. Civ. P. 26(b)(3). See also Hickman v. Taylor, 329 U.S. 495 (1947). This rule "prevent[s] exploitation of [another] party's efforts in preparing for litigation." Holmgren v. State Farm Mut. Auto. Ins. Co., 976 F.2d 573, 576 (9th Cir. 1992) (quotation omitted). The work product rule applies to both "non-

---

[1] This court is aware of only a few cases directly addressing this issue, which reached contradictory results and provide only limited discussion. Compare Plymovent Corp. v. Air Tech. Solutions, Inc., 243 F.R.D. 139, 144 (D.N.J. 2007) (presentation at a preliminary injunction hearing of a document prepared by an expert renders that expert a "testifying expert" within the purposes of Rule 26(b)(4)); with Intervet, Inc. v. Merial, Ltd., 2007 U.S. Dist. LEXIS 44970 (D. Neb. June 20, 2007) (presentation of an expert's opinion in connection with a preliminary injunction motion is not testimony within the meaning of Rule 26(b)(4)(B) and does not implicate Rule 26(a)(2)(B)'s disclosure obligation), Midwest Guar. Bank v. Guar. Bank, 270 F. Supp. 2d 900, 908 (E.D. Mich. 2003) ("Given the expedited nature of a preliminary injunction hearing," the court considered an expert declaration despite noncompliance with Rule 26(a)(2)(B)).
Courts have similarly reached conflicting results in considering pretrial matters other than preliminary injunctions or summary judgment. One case has held that voluntary production of documents created by the expert outside the summary judgment context may waive the protections afforded to non-testifying experts by Rule 26(b)(4)(B). Atari Corp. v. Sega of America, 161 F.R.D. 417, 418-20 (N.D. Cal. 1994). But see City of Owensboro v. Ky. Utils. Co., 2008 U.S. Dist. LEXIS 79292 (W.D. Ky. Oct. 8, 2008) (Rule 26(a)(2)(B) is a trial oriented rule, and therefore does not apply to declarations submitted in connection with a Daubert motion) (quoting Florists' Mutual Insurance Co. v. Lewis Taylor Farms, Inc., 2008 U.S. Dist. LEXIS 24445, 2008 WL 875493, *17 n. 12 (M.D. Ga. March 27, 2008)), UAW v. GMC, 235 F.R.D. 383, 388 (E.D. Mich. 2006) (holding that Rule 26(a)(2) does not apply settlement fairness hearings).

opinion" product, such as factual information, and to "opinion" product, including "mental impressions, conclusions, opinions, or legal theories."[2] <u>Holmgren</u>, 976 F.2d 576 (quoting Fed. R. Civ. P. 26(b)(3)(A)). The two types of work product receive differing levels of protection. Non-opinion work product may be discovered upon a showing of "substantial need" for the material and an inability to otherwise obtain the information without "undue hardship." <u>Id.</u>, Rule 26(b)(3)(A)(ii). Discovery of opinion work product requires "a far stronger showing of necessity and unavailability by other means." <u>Upjohn Co. v. United States</u>, 449 U.S. 383, 402 (1981). In the Ninth Circuit, this "stronger showing" is present "when mental impressions are <u>at issue</u> in a case and the need for the material is compelling." <u>Holmgren</u>, 976 F.2d at 577 (emphasis in original). This principle similarly insulates non-testifying experts from depositions, so as to encourage litigants to receive expert guidance in formulating their strategies. Fed. R. Civ. P. 26(b)(4)(B); <u>see also</u> <u>Krisa v. Equitable Life Assur. Soc'y</u>, 196 F.R.D. 254, 259-60 (M.D. Pa. 2000).

These rules intersect when otherwise protected work product is communicated to a testifying expert and considered in the formation of the expert's opinions. In this case, the magistrate resolved this conflict in favor of discovery, holding that "all

_____

[2] Some courts also use the term "core work product" to refer to opinion work product. <u>See, e.g.</u>, <u>In re Pioneer Hi-Bred Int'l, Inc.</u>, 238 F.3d 1370, 1375 (Fed. Cir. 2001).

things communicated to [a testifying] expert and considered by the expert in forming an opinion must be disclosed even if it constitutes opinion otherwise protected as work product." Order at 2 (quoting Ass'n of Irritated Residents v. Dairy, No. 1:05cv0707, 2008 U.S. Dist. Lexis 57459 (E.D. Cal. June 18, 2008). Ass'n of Irritated Residents applied a "bright line" rule that matters considered by a testifying expert in formulating his testimony were automatically discoverable, such that that court did not conduct a fact-specific application of the Rule 26(b)(3) or Holmgren tests.

Although no binding authority compels this position, numerous district courts in the Ninth Circuit have reached this conclusion,[3] and this court is not aware of a contrary decision by any court within the Ninth Circuit. This interpretation has also been adopted by a majority of courts outside the Ninth Circuit, including every court of appeals to have considered the issue. See Elm Grove Coal Co. v. Dir., Office of Workers' Compensation Programs, 480 F.3d 278, 302 n.24 (4th Cir. 2007), Regional Airport Auth. of Louisville v. LFG, LLC, 460 F.3d 697, 715 (6th Cir. 2006),

---

[3] See Ass'n of Irritated Residents, 2008 U.S. Dist. Lexis 57459, Securities and Exchange Commission v. Reyes, 2007 U.S. Dist. LEXIS 27767 (N.D. Cal. March 30, 2007), United States v. City of Torrance, 163 F.R.D. 590, 593 (C.D. Cal. 1995), Baxter Diagnostics, Inc. v. AVL Scientific Corp., 1993 U.S. Dist. LEXIS 11798 (C.D. Cal. Aug. 6, 1993); see also Intermedics, Inc. v. Ventirex, 193 F.R.D. 384, 387 (N.D. Cal. 1991) (holding, prior to the adoption of the 1993 amendments, that opinion work product considered by a testifying expert was discoverable "absent an extraordinary showing of unfairness that goes well beyond the interests generally protected by the work product doctrine.").

In re Pioneer Hi-Bred Int'l, 238 F.3d 1370, 1375 (Fed. Cir. 2001).[4] Courts adopting this view have cited the Advisory Committee note for the 1993 amendment to Rule 26(a)(2)(B), which explains that pursuant to the 1993 amendments to the rule (the most recent), "The report is to disclose the data and other information considered by the expert . . . litigants should no longer be able to argue that materials furnished to their experts to be used in forming their opinions--whether or not ultimately relied upon by the expert--are privileged or otherwise protected from disclosure . . . ." See also 8 Wright, Miller and Marcus, Fed. Practice and Procedure Civ. 2d. § 2031.1 (explaining that parties must disclose "any written or tangible data provided to testifying experts," but not discussing opinion work product).

Nonetheless, a minority of courts have rejected this position, at least with regard to opinion work product. See, e.g., In re Teleglobe Communs. Corp., 392 B.R. at 575, (collecting cases), Krisa, 196 F.R.D. at 258-60. Krisa provided three main arguments against the majority rule, each of which is repeated by plaintiffs here. First, the court concluded that disclosure of opinion, rather than facts, was generally not necessary to enable

_____

[4] Plaintiffs argue that the contrary position was adopted by In re Cendant Corp. Sec. Litig., 343 F.3d 658, 661-68 (3d Cir. 2003). That case considered discovery of information considered by a non-testifying expert, and therefore did not address the question at issue. Nonetheless, I note that some district courts in the Third Circuit have relied on Cendant in adopting the contrary view. See In re Teleglobe Communs. Corp., 392 B.R. at 576-77. The other appellate case cited by plaintiffs, Bogosian v. Gulf Oil Corp., 738 F.2d 587 (3d Cir. 1984), was decided prior to the 1993 amendments to Fed. R. Civ. P. 26(a)(2).

impeachment of a testifying expert, because "even where an expert's opinion originated with the attorney, the most effective way to discredit an opposing expert is the presentation of one's own credible expert . . . who can dispute, based upon authorities in that expert's field, the conclusions of the other party's expert." 196 F.R.D. at 259-60. Second, the court held that the majority interpretation rendered exceptions to the work product rule provided in Rule 26(b)(3) as surplusage. Id. at 260, see also In re Teleglobe Communs. Corp., 392 B.R. at 577 (adopting Krisa's reasoning on this point). Third, the court held that the majority rule imposed unwarranted economic burdens on parties, as it encouraged parties to retain separate experts for testimonial and litigation consulting purposes. Krisa, 196 F.R.D. at 259. In light of these considerations, that court narrowly construed Rule 26(a)(2) and the advisory committee note to its 1993 amendment, holding that "disclosure of core work product to a testifying expert does not abrogate the protection accorded such information." Id. at 260.[5]

The arguments provided by Krisa are not persuasive. The first reflects an unrealistic view of the role of expert testimony.

_____

[5] It is unclear whether Krisa rejected the majority view only with regard to opinion work product, or also with regard to non-opinion work product. The court's quoted conclusion suggests the former. However, the court criticized the majority view on the ground that it failed to give effect to Rule 26(b)(3)'s provision that "documents containing work product [be produced] only when the requesting party shows necessity and undue hardship," a protection that applies to non-opinion work product. 196 F.R.D. at 260. The same uncertainty is manifest in In re Teleglobe Communs. Corp., 392 B.R. at 577.

Krisa identified one way to rebut expert testimony: to demonstrate to the jury that the expert's conclusions are not connected to the underlying facts by proper reasoning. Because this method of rebuttal attacks the reasoning itself, it only requires the factual information underlying the opinion; under this method, it is irrelevant whether the opinion originated with the expert or an attorney. Juries, however, often defer to an expert's testimony without developing their own understanding of it. See Ronald J. Allen & Joseph S. Miller, The Common Law Theory of Experts: Deference or Education?, 87 Nw. U.L. Rev. 1131 (1993). This practice receives implicit support from the Federal Rules of Evidence, which allow expert testimony to be presented without presentation of its underlying basis. Fed. R. Evid. 703.[6] When the party introducing an expert invites the jury to defer in this way, the opposing party faces a choice. It may be that the most laudable response is to educate the jury so that they understand the opinion and do not need to defer. However, where the opinion originated with, or was at least influenced by, an attorney who may have no more expertise than the jury, it may be simpler and more effective to reveal this fact to the jury, who can then conclude that opinion is not entitled to deference. "The fact that

_____

[6] Similarly, a judge may consider whether an expert's "theory or technique enjoys 'general acceptance' within a 'relevant scientific community'" in determining the admissibility of the expert's testimony. Kumho Tire Co. v. Carmichael, 526 U.S. 137, 150 (1999) (quoting Daubert v. Merrell Dow Pharms., 509 U.S. 579, 592 (1993)). In so doing, the judge defers to the judgment of that community as a factor separate from the judge's independent understanding of the evidence

a lawyer has participated in the preparation of his testifying expert's report . . . potentially impact[s] . . . the weight to be accorded such opinion evidence.  For example, the lawyer could have . . . direct[ed] the witness to emphasize . . . specific facts or reach . . . particular opinions." <u>Elm Grove Coal Co.</u>, 480 F.3d at 301 n.23.  An adverse party must have the opportunity to show "that the opinions an expert was presenting . . . as his own had in fact been spoon fed to him." <u>City of Torrance</u>, 163 F.R.D. at 593.

The second argument adopted by <u>Krisa</u> fares no better.  The majority rule does not "ignore the language" of Rule 26(b)(3)'s test for exceptions to the work product privilege.  Instead, the majority rule reflects a categorical determination that in the context of information considered by a testifying expert, the opposing party will have a substantial need of this information, and that this information will not be available from an alternative source, because the issue is not only the content of the information, but whether the expert considered it.  Similarly, the rule reflects a categorical determination under the <u>Holmgren</u> test for opinion work product.  Moreover, this categorical determination is expressed by the Rules themselves.  "[The 1993 amendment to] Rule 26 and its supporting commentary reveal that the drafters considered the imperfect alignment between 26(b)(3) and 26(b)(4) under the old Rule, and clearly resolved it by providing that the requirements of (a)(2) 'trump' any assertion of work product or privilege." <u>Karn v. Ingersoll Rand</u>, 168 F.R.D. 633, 639 (N.D. Ind. 1996).

1    Third, the fact that the majority rule's limit on work product

2    protection potentially increases the cost of litigation cannot

3    itself justify the minority position.  It is true that if

4    discussions of litigation strategy with a testifying expert may be

5    discovered, the effect may be that parties hire separate litigation

6    consultants and testifying experts.  See Securities Exchange

7    Commission, 2007 U.S. Dist. LEXIS 27767, *8.  Nonetheless, this

8    court agrees with the majority of courts that a party's need to

9    minimize expenses should not shield the basis of its experts'

10   opinions from discovery.

11   Accordingly, by following this district's decision in Ass'n

12   of Irritated Residents the magistrate correctly formulated the

13   applicable law.

14   **2.   Whether The Requested Discovery Seeks Information**

15        **"Considered" by Cavallo**

16   Having concluded that material considered by Cavallo in

17   forming his opinions is not protected by the work product rule, the

18   remaining question is whether the material sought by YCWA's

19   requests for production was so considered.  Plaintiffs have argued

20   that three distinct types of documents should be shielded from

21   discovery: emails discussing topics upon which plaintiffs would

22   seek expert testimony, emails discussing drafts of the Cavallo

23   declaration, and the drafts of the declaration themselves.

24   ////

25   ////

26   ////

15

**a.    Emails Discussing Potential Discovery Topics**[7]

When an expert serves as a litigation consultant, materials reviewed or generated by the expert ordinarily are not discoverable.    Fed. R. Civ. P. 26(b)(3).    When an expert wears multiple "hats," however, serving as both a litigation consultant and a testifying expert, materials considered by the expert in formation of his testimony are discoverable regardless of whether these same materials were also considered by the expert in his role as a litigation consultant.    See Securities Exchange Commission, 2007 U.S. Dist. LEXIS 27767, *6 (collecting district court cases). This court agrees with the reasoning of Judge Breyer in Securities Exchange Commission that in this situation, the appropriate test for discoverability is "whether the documents reviewed or generated by the expert could reasonably be viewed as germane to the subject matter on which the expert has offered an opinion." Id. at *8 n.2 (citing United States v. Nobles, 422 U.S. 225, 239 (1975), United States v. Martinez, 514 F.2d 334, 343 (9th Cir. 1975)).

Because plaintiffs have not provided this court with a privilege log or other enumeration of the contents of specific emails, this court cannot determine whether any particular documents are not germane to Cavallo's testimony.    The court reiterates that documents considered by an expert are not only

---

[7] The magistrate's order granted "defendants' March 20, 2009 (#217) motion to compel production of the drafts of Brad Cavallo's declaration."    That motion also sought to compel emails that contained more than mere copies of prior drafts.    While the magistrate granted YCWA's motion in full, the order did not specifically address this issue.

those documents providing the factual basis for his opinion. Documents may be germane to an expert's testimony even if they consist solely of opinion, rather than facts. See Elm Grove Coal, 480 F.3d at 301. If plaintiffs contend that, pursuant to this standard, some documents are protected, plaintiffs should have presented this argument to the magistrate.

### b. Drafts of The Cavallo Declaration and Email Discussing These Drafts

As noted above, plaintiffs' counsel participated extensively in the drafting of the Cavallo declaration.[8] Emails from counsel regarding changes between one draft of the declaration and the next clearly contained information "considered by" Cavallo in the formulation of the opinion expressed by the final declaration. Pursuant to the majority rule adopted here, these documents are discoverable even if they contain opinion work product.

As to the drafts of the declarations themselves, courts have held that these drafts are discoverable under two rules. It may be that the expert's own revisions to prior drafts are not "considered" by the expert, and therefore outside the scope of Rule 26(a)(2)(B). See In re Teleglobe Communs. Corp., 392 B.R. at 573 (adopting this conclusion where declaration prepared by expert acting alone). However, several cases have held that in this

---

[8] As noted by the parties, this participation is itself consistent with the Federal Rules, which permit counsel to assist experts in preparing their Rule 26(a)(2) reports. See Fed. R. Civ. P. 26(a)(2)(B) advisory committee's note (1993) (counsel may assist assisting an expert in preparing a report provided that the report reflects the expert's testimony and is signed by the expert).

situation, the drafts are not work product within the meaning of Rule 26(b)(3), and are therefore discoverable under Rule 26(b)(4). Krisa, 196 F.R.D. at 257, Hewlett-Packard Co. v. Bauch & Lomb, Inc., 116 F.R.D. at 536. As to counsel's contributions to the draft declarations, these contributions are considered by the expert, and are therefore discoverable under Rule 26(a)(2)(B). Trigon Ins. Co. v. United States, 204 F.R.D. 277, 283 (E.D. Va. 2001), Hewlett-Packard Co., 116 F.R.D. at 540 (holding, prior to the 1993 amendment to Rule 26(a)(2)(B), that neither Hickman nor Rule 26(b)(3) protected attorney contributions to a testifying expert's declaration). The court follows both approaches here. The magistrate correctly held that all prior drafts of the declaration are discoverable.

**C. Summary**

As explained above, any material, including attorney opinion, considered by a testifying expert in formation of his testimony is not protected by the work product rule. Ass'n of Irritated Residents, No. 1:05cv0707, 2008 U.S. Dist. Lexis 57459. The material sought by YCWA's requests for productions is therefore discoverable, either as material considered under Fed. R. Civ. P. 26(a)(2)(B), or as non-work product discoverable under Rule 26(b)(4). Accordingly, plaintiffs' motion for reconsideration (Doc. No. 236) of the magistrate's order of January 26, 2009 (Doc. No. 234) will be denied.

**III. OBJECTIONS TO EVIDENCE**

In a separate motion, YCWA raises three evidentiary objections

to the Cavallo declaration, under Federal Rules of Evidence 403 and 702, and accordingly requests that this court strike the declaration in whole or in part.

At the outset, the court notes that evidence submitted in support of a motion for a preliminary injunction need not be admissible, although authorities reaching this conclusion have not considered expert evidence or a claim that evidence is unfairly prejudicial. Cobell v. Norton, 391 F.3d 251, 261 (D.C. Cir. 2004), Sierra Club, Lone Star Chapter v. FDIC, 992 F.2d 545, 551 (5th Cir. 1993); see also 11A Wright, Miller and Marcus, Fed. Practice & Procedure Civ. 2d. § 2949 (noting that Fed. R. Civ. P. 65, unlike Fed. R. Civ. P. 56(e), does not require that supporting affidavits contain facts that would be admissible). At the preliminary injunction stage, courts may accept, for example, affidavits containing hearsay or not based on personal knowledge. Cobell, 391 F.3d 251. This is because preliminary injunction proceedings are "streamlined," id., and must often occur before the parties can "obtain and marshal their evidence in a manner that would be proper for a summary judgment hearing or for an actual trial." 11A Wright, Miller and Marcus, Fed. Practice & Procedure Civ. 2d. § 2949 (quoting Kennedy on behalf of NLRB v. Sheet Metal Workers International Asso., 289 F. Supp. 65, 90 (C.D. Cal. 1968)). The fact that evidence would be inadmissible at a later stage may nonetheless be relevant at the preliminary injunction stage, both because the policies underlying the rules of evidence warrant attaching less weight to evidence that would be excluded by those

rules, and because to the extent that plaintiffs' evidence would be inadmissible at a later stage of the proceedings, this calls into question plaintiffs' likelihood of later success on the merits. These factors address the merits of the preliminary injunction motion, however, and do not themselves warrant striking references to that evidence.

Notwithstanding the looser standards for evidence submitted in connection with a motion for a preliminary injunction, it may be that courts should nonetheless exclude evidence at this stage when objections are raised under Fed. R. Evid. 403 and 702. These objections go to the facts presented by the evidence, rather than to the source of those facts, and as such, identify problems that parties are ordinarily unable to cure through added preparation.

The court need not resolve this question here, because YCWA's Fed. R. Evid. 702 objections are unfounded, and because the parties agree that if plaintiffs' motion for reconsideration of the magistrate's order is denied, YCWA should be provided additional time to respond to the documents it seeks.[9] Having narrowed the issues presented by YCWA's motion, the court addresses YCWA's specific objections in turn.

---

[9] The court discusses YCWA's 702 objections despite the conclusion that plaintiffs' failure to produce the requested discovery created prejudice, because the objections seek different remedies. The prejudice objection will effectively exclude the testimony only until the documents are produced, whereas the 702 objections would exclude the declaration despite any future production of these documents.

20

## A.    YCWA's Claim That The Entire Declaration Is Unreliable

Fed. R. Evid. 702 provides that testimony consisting of scientific knowledge is admissible if "(1) the testimony is based upon sufficient facts or data, (2) the testimony is the product of reliable principles and methods, and (3) the witness has applied the principles and methods reliably to the facts of the case." YCWA argues that the Cavallo declaration does not satisfy this standard because it is not based on any research (whether conducted by Cavallo or others) specific to the Yuba river.  However, the rules of evidence impose no such requirement.  An expert may appropriately apply principles discerned through general studies to the facts presented by a particular scenario, as Cavallo did here.  The lack of site-specific studies does not render Cavallo's testimony unreliable per se.

## B.    YCWA's Objection to The Reliability of Specific Components of The Cavallo Declaration

YCWA separately specifically objects to the Cavallo declaration's discussion of the South Yuba-Brophy diversion, critical habitat for spring-run Chinook salmon and steelhead, and water diversions or flows in the Yuba river.

In objecting to these portions of the declaration, YCWA has provided little supporting argument.  YCWA primarily identifies additional information Cavallo could have considered but did not. The fact that additional information was available does not itself demonstrate that the information considered was "[in]sufficient," Fed. R. Evid. 702(1), absent a showing that the considered

information cannot support the opinion or that other information would have raised serious issues.

Beyond these general arguments about availability of other information, YCWA also argues that as to the South Yuba-Brophy diversion, "the only study Mr. Cavallo relied on" was both unreliable and supported a conclusion contrary to Cavallo's. This argument is based on Cavallo's deposition testimony, in which Cavallo discussed these issues and explained his basis for nonetheless reaching his conclusion. In light of these considerations, the court cannot conclude that Cavallo's testimony is so unreliable as to be inadmissible. YCWA's criticisms of Cavallo's testimony instead go to the weight of such evidence. Dorn v. Burlington N. Santa Fe R.R. Co., 397 F.3d 1183, 1196 (9th Cir. 2005), Humetrix, Inc. v. Gemplus S.C.A., 268 F.3d 910, 919 (9th Cir. 2001).

**C.    YCWA's Inability to Challenge The Declaration**

YCWA's primary objection is that because it has not been provided with the drafts of the declaration and the emails relating to its creation, YCWA is unable to properly challenge the opinions expressed by the declaration. YCWA packages this argument as an objection under Fed. R. Evid. 403, arguing that an expert declaration is unfairly prejudicial when an opposing party is deprived of the opportunity to make such a challenge.

Plaintiffs do not dispute that if the motion for reconsideration is denied, YCWA has a right to receive and respond to the requested discovery prior to resolution of the pending

motion for a preliminary injunction. Plaintiffs further concede that if the Cavallo declaration is struck, the pending motion does not make a showing entitling plaintiffs to the preliminary injunction they seek.

In light of the parties' positions, the court grants YCWA's motion to strike references to the Cavallo testimony, and therefore denies plaintiffs' motion for a preliminary injunction without prejudice. Plaintiffs may refile this motion after YCWA has had an opportunity to review the relevant documents.

## IV. CONCLUSION

For the reasons stated above, the court orders as follows:

1.     Plaintiffs' motion for reconsideration (Doc. No. 236) of the magistrate's order of January 26, 2009 (Doc. No. 234) is DENIED.

2.     Defendant YCWA's motion to strike (Doc. No. 218-8) is GRANTED.

3.     Plaintiffs' motion for a preliminary injunction (Doc. No. 197) is DENIED WITHOUT PREJUDICE.

4.     Plaintiffs SHALL comply with the magistrate's order compelling discovery by no later than May 20, 2009.  If plaintiffs believe that, consistent with this order, some of the emails exchanged between counsel and Cavallo concerning topics for anticipated expert testimony are protected, plaintiffs' response MAY assert such privilege.

5.     Plaintiffs SHALL NOT file a renewed motion seeking a

23

1    preliminary injunction UNTIL either they have produced
2    the documents sought by YCWA's motion to compel or all
3    disputes concerning such discovery have been resolved.
4    6.   If plaintiffs file a renewed motion, this motion SHALL
5    be noticed for hearing in accordance with the ordinary
6    requirements of Local Rule 78-230(b).
7    IT IS SO ORDERED.
8    DATED: May 6, 2009.

LAWRENCE K. KARLTON
SENIOR JUDGE
UNITED STATES DISTRICT COURT