UNITED STATES DISTRICT COURT

EASTERN DISTRICT OF CALIFORNIA

SOUTH YUBA RIVER CITIZENS
LEAGUE and FRIENDS OF THE
RIVER,

        NO. CIV. S-06-2845 LKK/JFM

    Plaintiffs,

  v.                                     O R D E R

NATIONAL MARINE FISHERIES
SERVICE, et al.,

    Defendants.
_____/

    This order addresses the appropriate timeline for remand to the National Marine Fishery Service to complete a new Biological Opinion concerning operations of the Englebright and Daguerre dams on the Yuba River. In an order issued on July 8, 2010, (the "July Order") this court held that the National Marine Fishery Service acted arbitrarily and capriciously in issuing a 2007 Biological Opinion ("BiOp") that concluded that operations associated with the Englebright and Daguerre dams posed no jeopardy to the survival of

1

spring-run Chinook salmon ("chinook,"), Central Valley Steelhead ("steelhead"), and green sturgeon, all of which are on the threatened species list. For the reasons stated below, the court finds it appropriate to remand the matter to the NMFS to prepare a BiOp consistent with this court's July Order by December 12, 2011. A further order from this court will address whether any of the interim measures that plaintiffs have requested will be required during the remand process.

## I. Background

This court's July Order addressed claims by plaintiff that the National Marine Fishery Service acted arbitrarily and capriciously in adopting the BiOp, in violation of Section 7 of the Endangered Species Act. This court held that the BiOp was arbitrary and capricious because it concluded that the operation of the dams would pose "no jeopardy" to the threatened fish, when that conclusion was not supported by the record. Upon a finding that the project poses no jeopardy to the survival or recovery of a threatened species, an agency may operate the project pursuant to an Incidental Take Statement ("ITS"). The ITS specifies any incidental "takings" of individual species that will result from the project, the mitigation measures that are necessary to minimize the takings, and sets forth the terms and conditions that must be complied with to implement those mitigation measures. The court held that the NMFS had not sufficiently supported its no-jeopardy conclusion, "but not that a jeopardy conclusion was inescapable." July 8 Order 16:18.

1  The court ordered additional briefing on the issue of whether the Corps had violated the terms and conditions of the ITS, and whether the plaintiffs would be entitled to preliminary relief if such a violation had occurred. On November 16, 2010, after supplemental briefing on the issue the court dismissed as prudentially moot plaintiffs' claim that the Corps had violated the ITS, and denied plaintiffs' motions for a preliminary injunction. On November 23, 2010, this court entered an order approving a stipulation by the parties. In that stipulation, the parties agreed, *inter alia*, that the BiOp and ITS should not be vacated during remand. Thus, the project is currently operating pursuant to the 2007 BiOp and the ITS.

## II. Standard

A timeline for remanding a matter back to the agency under the Endangered Species Act should be "reasonable." <u>Conservation Council v. Babbitt</u>, 24 F. Supp. 2d 1074, 1076 (D. Haw. 1998)(citing <u>Environmental Defense Center v. Babbitt</u>, 73 F.3d 867, 872 (9th Cir. 1995)). <u>See also</u> <u>Ctr. for Biological Diversity & Cal. Native Plant Soc'y v. Norton</u>, 212 F. Supp. 2d 1217 (S.D. Cal. 2002)("The Court will therefore set a reasonable timeline for defendants to complete the critical habitat determination" required by the ESA.) Courts may consider such constraints as the agency's "budgetary shortfalls, workload constraints, and other relevant factors when setting the timeline." <u>Id.</u>

## III. Analysis

The parties do not dispute that the matter should be remanded

3

back to the NMFS to prepare a new BiOp that satisfies the deficiencies identified in this court's July Order. See Pls.' Final Remedy Brief ("Remedy Brief") 29:24-27, ECF No. 363; Federal Defs.' Opp'n to Mot. for Inj. ("Defs.' Opp'n.") 10:7-8, ECF No. 372. The parties disagree, however, on how much time is reasonably needed for the preparation of a new BiOp. Plaintiffs request that the court order defendants to issue the new BiOp by June 6, 2011, six months from the filing of plaintiffs' final remedy brief. Remedy Brief 29. Defendants, on the other hand, seek a June 30, 2012 deadline. Defs.' Opp'n 12.

The regulations promulgated pursuant to the ESA create a presumptive deadline of 135 days from the completion of a Biological Assessment to the issuance of a BiOp. See 50 C.F.R. 402.14(e). Typically, the Biological Assessment is prepared before a project commences in order to determine whether a project is likely to adversely affect a listed species or habitat. 50 C.F.R. § 402.02. Following the completion of the Biological Assessment, the regulations provide for a 90-day period for consultation between the "service" (here, the NMFS) and the "agency" (here, the Army Corps of Engineers). After the consultation period, the regulations provide for 45 days for the issuance of the BiOp. 50 C.F.R. 402.14(e). Thus, the BiOp should be issued within a total of 135 days after the Biological Assessment is completed. The 135-day period is not mandatory, and may be extended by agreement between the service and the agency. In this case, both of those entities have jointly submitted an extended schedule and the court

assumes that they have agreed to extend the time line set out in 50 C.F.R. 402.14(e).

The Biological Assessment, consultation, and BiOp processes are typically completed while the project under review is not yet operational and no harm to any species or habitat is occurring. Here, the project is operating pursuant to a BiOp that the court has found to be insufficient. Thus the 135 period and the ability of the agency and the service to extend the timeline indefinitely is not directly applicable in this case. Instead, the 135 days described in 50 CFR 402.12(e) serves as a guide for the court's "reasonableness" analysis in instant case. In other words, the court, lacking other authoritative guidance on the matter,[1] defers to the regulations promulgated jointly by the U.S. Fish and Wildlife Service and the National Marine Fisheries Service, which conclude that 135 days is a reasonable period in which to complete a BiOp. Because the project is currently ongoing without a valid BiOp and there is a possibility that endangered species are being harmed, the court concludes that it is defendant's burden to show that a period of more than 135 would be reasonable under the

---

[1] There is not much guidance available regarding specific reasonable periods for remand. In National Wildlife Federation v. National Marine Fisheries Service, 2005 WL 1278878 (D. Or. 2005)(not reported) the court referenced a prior order granting "two motions for remand . . . for a total of 18 months). In American Rivers v. NOAA Fisheries, 2006 WL 2792675 *5 (D. Or. 2006)(not reported) the court granted defendants four months after completion of a separate BiOp for remand of the challenged BiOp, and stated that the court "may grant Federal Defendants an extension of time provided that significant progress is being made and will continue to be made."

5

circumstances.

The BiOp under which the project is currently operating was determined by this court to be insufficient on July 8, 2010. July Order. The defendants indicated at the hearing held on March 7, 2011 that NMFS and the Corp have taken steps towards the preparation of a new BiOp. The defendants stated that a new Biological Assessment would be completed in June 2011. Hearing Transcript 30:16. Plaintiffs assert that it would be reasonable to require the defendants to issue a new BiOp by June 30, 2011--six months from the date that plaintiffs filed their remedy brief. They argue that this is reasonable because NMFS and the Corps have indicated that they have already started work on the new BiOp. Remedy Brief 30:5. Plaintiffs also contend that defendants should not wait for a new Biological Assessment to be completed by the Corps in June 2011, before starting work on the new BiOp because information for the new BiOp can be drawn from the previous Biological Assessment. Reply, 1, ECF. No. 377.

Defendants, on the other hand, request a one-year period after the issuance of the Biological Assessment to complete the new BiOp. Defendants argue that this additional time is "necessary to address the Court's concerns with the 2007 BiOp and to produce a legally sufficient BiOp . . . [that can] withstand attacks by either the Plaintiffs or interests in opposition to them." Opp'n 14:25- 15:1.

Defendants include in their proposed timeline 90 days for independent peer review of the BiOp by the Delta Science Program, which they believe will aid the scientific merit on the BiOp. Brown

Decl., 1, ECF. No. 321-1. In order to address the court's concerns, defendants plan to revise the analytical framework of the BiOp to include a "life cycle model and consideration of the viable salmonid population parameters." Id. Defendants assert that plaintiffs' rapid timeline is not necessary to avoid irreparable harm, and that it would "precipitate a biological opinion that plaintiffs would view as inadequate." Sprague Decl., 8, ECF. No. 372-2. Defendants explain that an adequate amount of time is needed to incorporate the "significant new information [that] has arisen" since the 2007 BiOp was created. Id. This new information includes "data on fish migrations and composition, information collected in developing the Draft Plan to Recover Salmon and Steelhead Trout in California's Central Valley, and information about the implementation of the reasonable and prudent alternatives in the Biological Opinion and Conference Opinion on the Long-Term Operations of the Central Valley Project and State Water Project." Id.

Plaintiffs contend that defendants set forth no reason to seek peer review or establish a new framework for Salmonid viability in the new BiOp, each of which purportedly require additional time. Plaintiffs state that defendants "have not shown that this project warrants such a substantial departure from the norm" of 135 days to produce a BiOP. Pl.s' Reply Brief 1, ECF No. 377. Other than those discussed above, the plaintiffs have not specifically disputed the time allotted any of tasks proposed in the defendants' detailed proposed schedule.

It appears reasonable to the court to allow time for defendants to restructure their previous analytical framework and seek independent peer review of the new BiOp. It also seems reasonable, given the new information that will be available in the updated Biological Assessment, for the defendants to allow time to thoroughly consider any new findings in this assessment, rather than assuming that the previous Biological Assessment will suffice. To do otherwise, would increase the risk of producing another inadequate BiOp and present more delay and greater danger to the species which the law seeks to protect. See <u>Nat'l Wildlife Fed'n v. Nat'l Marine Fisheries Serv.</u>, 524 F.3d 917 (9th Cir. 2008). (affirming an arbitrary and capricious finding of a BiOp created which itself was the product of a remand).

However, it is unreasonable to permit defendants an unnecessarily long time. Because projects are ongoing without a sufficient BiOp, the possibility of irreparable harm to the species remains, and there is therefore some urgency in issuing the new BiOp. However, the plaintiffs' proposed deadline of June 11, 2011 does not appear reasonable or feasible.

In his declaration, defendants' expert Howard Brown indicated that "to the extent practicable, NMFS will attempt to use the time before receiving the B[iological] A[ssessment] to begin some of the tasks" that are normally completed within the 135-day period. Brown Decl. 1:16-17.

Based on the standard of reasonableness and the guidance provided in C.F.R. 402.14(e), the court will allow 165 days from

8

the projected issuance of the Biological Assessment for defendants to complete the new BiOp. Since the release of the Biological Assessment is projected at June 30, 2011, this places the deadline for the new BiOp at December 12, 2011. Defendants are encouraged to make adjustments to their internal calendar in order to accommodate extra time needed for peer review and developing an analytical framework. If such adjustments do not suffice, defendants are encouraged to seek a stipulation from plaintiffs for a deadline extension. If those efforts are unavailing, defendants may apply to the court for an extension.

### IV. Conclusion

For the foregoing reasons, the court ORDERS as follows:

    [1] The matter is REMANDED to the National Marine and Fisheries Services to prepare a new BiOp consistent with this court's July 8, 2010 Order, ECF No. 316.

    [2] The new BiOp SHALL be completed by November 12, 2011.

IT IS SO ORDERED.

DATED: April 28, 2011.

LAWRENCE K. KARLTON
SENIOR JUDGE
UNITED STATES DISTRICT COURT