UNITED STATES DISTRICT COURT

EASTERN DISTRICT OF CALIFORNIA

SOUTH YUBA RIVER CITIZENS
LEAGUE and FRIENDS OF THE
RIVER,

NO. CIV. S-06-2845 LKK/JFM

    Plaintiffs,

  v.                                  O R D E R

NATIONAL MARINE FISHERIES
SERVICE, et al.,

    Defendants.
_____/

    Plaintiffs in this case have challenged a Biological Opinion issued by the National Marine Fisheries Service ("NMFS") related to two dams on the South Yuba River operated by the Army Corps of Engineers ("the Corps"). Pending before the court are three motions filed by plaintiffs: a motion for partial reconsideration of this court's Final Remedy Order, a motion for partial reconsideration of this court's dismissal of Claim 4B as prudentially moot, and a motion for partial summary judgment on Claim 4B. Plaintiffs request

1

that the court consider the latter two motions only if the first motion is denied. The court resolves the instant motions on the papers and after oral argument. For the reasons stated herein plaintiffs' motions are DENIED.

## I. Factual and Procedural Background

Plaintiffs filed the operative Sixth Amended Complaint on June 17, 2008. ECF No. 150. Although the complaint alleged eleven claims for relief, only Claims 3 and 4 were adjudicated on the merits. With respect to Claim 3, plaintiffs successfully challenged the conclusions reached in a Biological Opinion issued by National Marine Fishery Service. In July 2010, this court held that government had acted arbitrarily and capriciously in issuing the Biological Opinion, because the BiOp concluded that the operation of the dams would pose "no jeopardy" to the threatened fish, when that conclusion was not supported by the record. ECF No. 316. In April 2011 the matter was remanded to the National Marine Fishery Service to prepare a new Biological Opinion consistent with the court's July Order by December 12, 2011. ECF No. 398. This deadline was later extended to February 29, 2012. In July 2011, this court issued a further remedial order ("Remedial Order"), adopting some interim remedial measures proposed by plaintiffs. ECF No. 402. Of relevance to the pending motions, the court denied plaintiffs' requested "Measure 9," which would have required the Corps to develop a final plan and implement a project to plant native riparian vegetation on a parcel of land on the lower Yuba River. Although the court concluded that woody debris is a necessary

element of spawning habitat for the threatened species, and that the lack of woody debris caused by Englebright dam was a stressor on those species, the court declined to adopt Measure 9 because plaintiffs had not shown that irreparable injury to the threatened species would occur in the absence of the Measure. In so concluding, the court noted that Measure 9 was similar to a mitigation measure called for in the Incidental Take Statement issued pursuant to the 2007 BiOp, but also held that plaintiffs' expert testimony did not establish that the lack of woody debris would cause irreparable harm in the interim period before a new BiOp is issued. Plaintiffs' expert said that the increase of woody debris would be "very beneficial" to spring Chinook and steelhead, but not that it was necessary to prevent irreparable harm. Remedial Order 42.

Claim 4 is divided into two analytical parts: Claim 4A alleged that the Incidental Take Statement was invalid such that it could never shield the Corps from liability for take of the listed species. The court granted summary judgment to defendants on this claim. See ECF No. 316 at 71. Claim 4B alleged that the Corps had violated the terms and conditions imposed by the Incidental Take Statement. On November 16, 2010, after supplemental briefing on the issue the court dismissed as prudentially moot plaintiffs' claim 4B, holding that reaching the merits of the claim would not potentially serve to award plaintiffs any meaningful relief. ECF No. 343.

Plaintiffs now seek reconsideration of the portion of this

court's Remedial Order. Specifically, plaintiffs ask the court to reconsider its denial of a Proposed Measure 9. Plaintiffs now seek a modified remedial measure with respect to replenishing woody debris in the Yuba River. Plaintiffs' requested measure calls for "logs and or other large wood to be placed on the riverbank in the reach of the river between Parks Bar and Hammon Bar along the margins of the main active channel." Pls.' Mot. Recon 8, ECF No. 445.

Plaintiffs offer two other motions as an alternative if the court does not grant reconsideration of the remedial order. In the two latter motions, plaintiffs see reconsideration of the court's dismissal of Claim 4B as prudentially moot, and summary judgment on the merits of Claim 4B.

### III. Standards

**A. Standard for a Motion for Reconsideration**

Federal Rule of Civil Procedure 60(b) provides: "On motion and just terms, the court may relieve a party . . . from a final judgment, order, or proceeding" in the case of mistake or excusable neglect, newly discovered evidence, fraud, a judgment that is void, satisfaction of the judgment, or for "(6) any other reason that justifies relief." Fed. R. Civ. P. 60(b). This catch-all provision of Rule 60(b)(6) "vests power in courts adequate to enable them to vacate judgments whenever such action is appropriate to accomplish justice." Klapprott v. United States, 335 U.S. 601, 615 (1949). Rule 60(b) "attempts to strike a proper balance between the conflicting principles that litigation must be brought to an end

4

and that justice should be done." Delay v. Gordon, 475 F.3d 1039, 1044 (9th Cir, 2007)(*quoting* 11 Wright & Miller Federal Practice & Procedure § 2851 (2d ed. 1995). Nonetheless, in order to seek relief under Rule 60(b)(6), the movant must demonstrate "extraordinary circumstances." Liljeberg v. Health Services Acquisition Corp., 486 U.S. 847 (1988)(quoting Ackermann v. United States, 340 U.S. 193, 199 (1950)).

In addition, Local Rule 230(j) applies to motions for reconsideration filed in the Eastern District. That rule requires the movant to brief the court on, inter alia, "what new or different facts or circumstances were not shown upon such prior motion, or what other grounds exist for the motion; and why the facts or circumstances were not shown at the time of the prior motion."

**B. Standard for a Motion for Summary Judgment**

Summary judgment is appropriate "if the movant shows that there is no genuine dispute as to any material fact and the movant is entitled to judgment as a matter of law." Fed. R. Civ. P. 56(a); Ricci v. DeStefano, 557 U.S. ___, 129 S. Ct. 2658, 2677 (2009) (it is the movant's burden "to demonstrate that there is 'no genuine issue as to any material fact' and that they are 'entitled to judgment as a matter of law'"); Walls v. Central Contra Costa Transit Authority, 653 F.3d 963, 966 (9th Cir. 2011) (same).

Consequently, "[s]ummary judgment must be denied" if the court "determines that a 'genuine dispute as to [a] material fact' precludes immediate entry of judgment as a matter of law." Ortiz

5

1 v. Jordan, 562 U.S. ___, 131 S. Ct. 884, 891 (2011), quoting Fed.
2 R. Civ. P. 56(a); Comite de Jornaleros de Redondo Beach v. City of
3 Redondo Beach, ___ F.3d ___, 2011 WL 4336667 at 3 (9th
4 Cir. September 16, 2011) (same).
5     Under summary judgment practice, the moving party bears the
6 initial responsibility of informing the district court of the basis
7 for its motion, and "citing to particular parts of the materials
8 in the record," Fed. R. Civ. P. 56(c)(1)(A), that show "that a fact
9 cannot be ... disputed." Fed. R. Civ. P. 56(c)(1); In re Oracle
10 Corp. Securities Litigation, 627 F.3d 376, 387 (9th Cir. 2010)
11 ("The moving party initially bears the burden of proving the
12 absence of a genuine issue of material fact"), citing Celotex v.
13 Catrett, 477 U.S. 317, 323 (1986).
14     If the moving party meets its initial responsibility, the
15 burden then shifts to the non-moving party to establish the
16 existence of a genuine issue of material fact. Matsushita Elec.
17 Indus. Co. v. Zenith Radio Corp., 475 U.S. 574, 585-86 (1986);
18 Oracle Corp., 627 F.3d at 387 (where the moving party meets its
19 burden, "the burden then shifts to the non-moving party to
20 designate specific facts demonstrating the existence of genuine
21 issues for trial"). In doing so, the non-moving party may not rely
22 upon the denials of its pleadings, but must tender evidence of
23 specific facts in the form of affidavits and/or other admissible
24 materials in support of its contention that the dispute exists.
25 Fed. R. Civ. P. 56(c)(1)(A).
26     "In evaluating the evidence to determine whether there is a

genuine issue of fact," the court draws "all reasonable inferences supported by the evidence in favor of the non-moving party." <u>Walls</u>, 65.3 F.3d at 966.  Because the court only considers inferences "supported by the evidence," it is the non-moving party's obligation to produce a factual predicate as a basis for such inferences.  See <u>Richards v. Nielsen Freight Lines</u>, 810 F.2d 898, 902 (9th Cir. 1987).  The opposing party "must do more than simply show that there is some metaphysical doubt as to the material facts .... Where the record taken as a whole could not lead a rational trier of fact to find for the nonmoving party, there is no 'genuine issue for trial.'"  <u>Matsushita</u>, 475 U.S. at 586-87 (citations omitted).

### III. Analysis

**A. Whether the Court has Jurisdiction to Hear the Instant Motions**

Defendants argue that this court lacks jurisdiction to hear plaintiff's motions because the Endangered Species Act requires plaintiffs to give sixty-days notice to an alleged violator of the Act before bringing suit under the citizen-suit provision.

The citizen-suit provision of the ESA provides that any person may commence a civil suit under the act, but that "no action may be commenced. . . prior to sixty days after written notice of the violation has been given to the Secretary [of Commerce or of the Interior] and to any alleged violator of any such provision or regulation." 16 U.S.C. § 1540(g)(2)(A)(I). The sixty-day notice requirement is jurisdictional; courts lack jurisdiction to hear a

7

1  claim where plaintiffs have failed to give proper written notice.
2  <u>Save the Yaak Committee v. Block</u>, 840 F.2d 714, 721 (9th Cir.
3  1988). The purpose of the notice requirement is to give the
4  defendant an opportunity to come into compliance without a lawsuit.
5  <u>Gwaltney of Smithfield, Ltd. v. Chesapeake Bay Foundation, Inc.</u>,
6  484 U.S. 49, 60 (1987).

7  The written notice need not "list every specific aspect or
8  detail of every alleged violation. Nor is the citizen required to
9  describe every ramification of a violation." <u>Cmty. Ass'n for
10 Restoration of the Env't v. Henry Bosma Dairy</u>, 305 F.3d 943, 951
11 (9th Cir. 2002)(quoting <u>Pub. Interest Research Group v. Hercules</u>,
12 Inc., 50 F.3d 1239, 1248 (3d Cir. 1995)). The notice must allow the
13 alleged violator to know what it is doing wrong and what corrective
14 action will prevent a lawsuit. <u>Id.</u> Interpreting a similar citizen-
15 suit provision in the Clean Water Act, the Third Circuit has held
16 that violations discovered subsequent to the sending of written
17 notice may be included in the suit, so long as they are directly
18 related to what is in the notice. <u>Public Interest Research Group
19 v. Hercules, Inc.</u>, 50 F.3d 1239, 1248 (3d Cir. 1995).

20 In this case, plaintiffs sent written notice to the defendants
21 and to the Secretary of Commerce on November 30, 2007. 2007 NOI
22 Letter, ECF No. 456-1. The letter alleged that the Corps was taking
23 listed species in violation of ESA Section 9 because it was
24 operating outside of a valid Incidental Take Statement.
25 Specifically, the letter alleged "Englebright stands as a barrier
26 (as it is at all times) to the passage of gravel and woody debris

8

1  necessary for creation of healthy spawning, rearing, and sheltering
2  habitat for the listed species." Id. at 16. The letter further
3  alleged that the Corps had failed to comply with the terms and
4  conditions required by the ITS. Specifically, the ITS included five
5  measures to minimize the take of listed species, including "(2) The
6  Corps must complete a study to detennine an effective method for
7  replenishing into the Yuba River the supply of large woody material
8  that is trapped by Englebright and upstream reservoirs and then
9  develop and commence implementing a long-term program to replenish
10 woody debris in the River within 4 years." Id. at 13. The letter
11 went on to allege that the "Corps is not currently performing such
12 actions as needed to comply with these terms and conditions." Id.
13     This letter provided notice to the defendants of what
14 plaintiffs claims were, and how the defendants could come into
15 compliance. Without concluding that the notice requirement applies
16 to requests for remedies on claims that have already been
17 adjudicated, the court concludes that the 2007 notice letter
18 satisfies any notice requirement that might apply.

**B. Whether Plaintiffs' Requested Woody Debris Replenishment Measure is Necessary to Prevent Irreparable Harm**

21     As noted in the Remedial Order, interim injunctive measures
22 are warranted only if the measures are necessary to prevent
23 irreparable injury, whether remedies available at law are
24 inadequate to compensate for that injury, whether the balance of
25 hardships weigh in favor of injunctive relief, and whether the
26 public interest would be served by the injunction. Under the

9

Endangered Species Act, the third and fourth factors listed always tip in favor of protecting the species. Tennesee Valley Authority v. Hill, 437 U.S. 153 (1978) ("Congress has spoken in the plainest of words, making it abundantly clear that the balance has been struck in favor of affording endangered species the highest of priorities."). Thus, "the balance of hardships and the public interest tip heavily in favor of endangered species. We may not use equity's scales to strike a different balance." Sierra Club v. Marsh, 816 F.2d 1376, 1383 (9th Cir. 1987). Additionally, in environmental cases, it is presumed that remedies at law are inadequate. "Environmental injury, by its nature, can seldom be adequately remedied by money damages and is often permanent or at least of long duration, i.e., irreparable. Cal. ex rel. Lockyer v. United States Dep't of Agric., 2009 U.S. App. LEXIS 19219 (9th Cir. 2009).

    Thus, the court only needs to determine whether plaintiff has shown that irreparable harm to the listed species will result from defendants' violation of the ESA in the absence of the measures requested by plaintiffs.

    This court held that plaintiffs' previously submitted evidence did not meet that burden with respect to proposed Measure 9, and noted that the measure was redundant with Term and Condition 2 of the Incidental Take Statement, which was "currently in effect." Remedial Order 42.

    Plaintiffs now submit evidence showing that any action that the defendants have taken towards compliance with Term and

Condition 2 has not improved the woody debris habitat. That term called for defendants to commence implementation of a program to bring woody material to the lower Yuba River by November 21, 2011. BiOp at 40, ECF No. 84-2. The Biological Assessment prepared by defendants in preparation for issuing a new BiOp on remand states that, with respect to Term and Condition 2, "the Corps has identified a potential source of large woody material and initiated a study to determine a feasible method of woody material management." Biological Assessment, Ex. 1 to Sproul Decl., ECF No. 445-5. The Biological Assessment goes on to say that the Corps will conduct another pilot project to determine where and how to place woody debris within one year of the completion of the new BiOp, and that it will implement a long-term large woody material management plan within one year following completion of this pilot. Id. According to the Biological Assessment, then, implementation of the program will not occur until February 29, 2014, or two years from the completion of a new BiOp.

Plaintiffs assert that any representations made by defendant that proposed Measure 9 was not necessary because it was redundant with Term and Condition 2 should be disregarded in light of defendants' disclosure that the program had not yet been implemented. Additionally, plaintiffs have submitted expert testimony stating that "the ability of juvenile salmonids to survive and thrive in the Yuba has been harmed" by the loss of habitat, including woody material. Reedy Decl. ¶ 14, ECF No. 445-1. The expert calls the need for woody material "urgent."

11

Plaintiffs' requested interim measure would require the Corps to "complete an implementation plan" by March 30, 2012, and then to implement the plan by June 30, 2012, subject to review by various state and federal agencies and by plaintiff SYRCL.

Although the court is persuaded that any actions that defendants have taken to restore woody debris to the subject area have not resulted in an improvement of habitat for the listed species, and that prompt action is needed to protect the species from jeopardy, the court declines to adopt the measure plaintiffs' request because it will provide no benefit to the listed species before the new BiOp is issued on February 29, 2012. Accordingly, plaintiffs' motion for reconsideration of this court's remedial order is DENIED.

**B. Whether Reconsideration is Warranted on Claim 4B**

The court declines to reconsider its holding that Claim 4B is prudentially moot for the same reason: the court can offer no meaningful relief on Claim 4B in light of the forthcoming BiOp, and Incidental Take Statement.

Prudential mootness arises from doctrines of remedial discretion. <u>Sierra Club v. Babbitt</u>, 69 F. Supp. 2d 1202, 1244 (E.D. Cal. 1999)(ISHI). The central inquiry for a district court considering whether to exercise its discretion in granting relief is "have circumstances changed since the beginning of litigation that forestall any occasion for meaningful relief." <u>Id.</u> It is within a district court's "sound discretion [to] withhold[] the remedy where it appears that a challenged 'continuing practice' is,

1 at the moment adjudication is sought, undergoing significant modification so that its ultimate form cannot be confidently predicted." A. L. Mechling Barge Lines, Inc. v. United States, 368 U.S. 324, 331 (1961).

As noted, defendants' new BiOp is due on February 29, 2012. The BiOp is very likely to be accompanied by a new Incidental Take Statement, including terms and conditions having to do with woody debris. The court elects to exercise its sound discretion to withhold the remedy requested here, given the forthcoming BiOp. Here, the court is guided by "considerations of prudence and comity for the coordinate branches of government. . . stay its hand, and to withold relief it has the power to grant." Sierra Club, 69 F. Supp. 2d ant 1244.

Having declined to reconsider the holding that Claim 4B is prudentially moot, the court need not proceed to the merits of the claim.

**IV. Conclusion**

For the foregoing reasons, plaintiffs' motions, ECF Nos. 445, 446, and 447, are DENIED.

IT IS SO ORDERED.

DATED: February 2, 2012.

LAWRENCE K. KARLTON
SENIOR JUDGE
UNITED STATES DISTRICT COURT

13