1

2

3

4

5

6

7

8                    UNITED STATES DISTRICT COURT

9                    EASTERN DISTRICT OF CALIFORNIA

10

11   SOUTH YUBA RIVER CITIZENS
     LEAGUE and FRIENDS OF THE
12   RIVER,
                                          NO. CIV. S-06-2845 LKK/JFM
13
             Plaintiffs,
14
         v.                                        O R D E R
15
     NATIONAL MARINE FISHERIES
16   SERVICE, et al.,

17           Defendants.

18   _____/

19       Pending before the court is a motion for attorneys fees. ECF

20   No. 407. Plaintiffs seek fees and costs for their work challenging

21   a Biological Opinion issued by the National Marine Fisheries

22   Service related to two dams on the South Yuba River operated by the

23   Army Corps of Engineers. Plaintiffs seek fees under the Equal

24   Access to Justice Act[1] and under the Endangered Species' Act. For

25   _____

26       [1] As discussed below, the defendants concede that the fee
     request in this case is governed by the Endangered Species Act and

                                    1

1  the reasons stated below, plaintiffs' motion is granted in part and

2  denied in part.

3  **I. Procedural Background**

4     Plaintiffs filed the operative Sixth Amended Complaint on June

5  17, 2008. ECF No. 150. The complaint alleged eleven claims for

6  relief. Of those, Claims 1 and 2, arising under the Administrative

7  Procedures Act ("APA"), had previously been dismissed as moot by

8  this court. See Sixth Amended Complaint 28:23-29:6. The remaining

9  claims included five separate Freedom of Information Act claims

10  (Claims 5, 7, 8, 10, and 11); Claim 6 against defendant Yuba County

11  Water Agency, which was bifurcated from the instant action, ECF No.

12  165; Claim 3 for violation of the APA by issuing an inadequate

13  BiOp; Claim 4 violation of the Endangered Species Act ("ESA") for

14  "take" of listed fish species; and Claim 9 for violation of the APA

15  for failing to promulgate protective regulations for Green

16  Sturgeon.

17     The court entered summary judgment in favor of defendants on

18  the Claim 8, a FOIA claim. ECF No. 151. The remaining four FOIA

19  claims were dismissed pursuant to stipulated settlement approved

20  by the court. ECF No. 170. The parties reached a settlement

21  agreement as to attorney's fees and costs on all FOIA claims. ECF

22  No. 182. In the settlement agreement, NMFS agreed to pay counsel

23  for SYRCL $89,236 in attorney's fees and costs for the FOIA claims.

24  The agreement provides that the payment fully satisfied any claim

25  _____

26  not the EAJA.

1  for FOIA attorneys fees by plaintiffs in thie case. <u>Id.</u>

2      Claim 9 was dismissed as moot after the NMFS promulgated a

3  rule specifying the protection owed to Green Sturgeon. ECF No. 316.

4      Thus, the only claims adjudicated on the merits were Claims

5  3 and 4. With respect to Claim 3, plaintiffs successfully

6  challenged the conclusions reached in a Biological Opinion issued

7  by National Marine Fishery Service. In July 2010, this court held

8  that government had acted arbitrarily and capriciously in issuing

9  the Biological Opinion. ECF No. 316. In April 2011 the matter was

10 remanded to the National Marine Fishery Service to prepare a new

11 Biological Opinion consistent with the court's July Order by

12 December 12, 2011. ECF No. 398. In July 2011, this court issued a

13 further remedial order, adopting some of plaintiffs' requested

14 interim injunctive measures. ECF No. 402.

15     With respect to Claim 4, the court granted summary judgment

16 to defendants on the question of whether defendants were causing

17 "take" of listed species without the protection of a valid

18 Incidental Take Statement. <u>See</u> ECF No. 316 at 71. After further

19 briefing, the court dismissed the remainder of Claim 4 as

20 prudentially moot. ECF No. 343. Plaintiffs filed a motion for

21 reconsideration of that order, which this court denied on February

22 13, 2012. ECF No. 462.

23     Plaintiffs' initial fee motion sought approximately $2.33

24 million in attorneys fees, $40,094 in expert costs, and $11,752.03

25 in other costs. Defendants sought to reduce the total award by 90%.

26 The court ordered defendant to file an additional brief containing

3

1  objections to individual entries in plaintiff's billing records.

2  Defendants did so by filing a brief objecting to $1.1 million in

3  specific line items, but continuing to request a 90% reduction.

4  Plaintiffs have filed a response brief.

5                    **II. Standard for a Motion for Fees under**

6                          **the Endangered Species Act.**

7      The ESA's fee-shifting provision is a waiver of sovereign

8  immunity. As such, it "must be strictly construed in the United

9  State's favor." <u>Ardestani v. INS</u>, 502 U.S. 129, 137 (1991). It is

10 the plaintiff's burden to show both that the hourly fee requested

11 is reasonable, and that the number of hours spent is reasonable.

12 <u>Hensley v. Eckerhart</u>, 461 U.S. 424, 434 (1983).

13     Because the district court's "familiarity with the case allows

14 it to distinguish reasonable from excessive fee requests," <u>Moreno</u>

15 <u>v. City of Sacramento</u>, 534 F.3d 1106, 1116 (9th Cir. 2008),

16 district courts have "a great deal of discretion in determining the

17 reasonableness of the fee." <u>In re Smith</u>, 586 F.3d 1169, 1173-1174

18 (9th Cir. 2009). A district court judge may "impose a small

19 reduction, no greater than 10 percent--a 'haircut'--based on its

20 exercise of discretion and without a more specific explanation.

21 <u>Moreno</u>, 534 F.3d at 1112.

22     In cases such as this one "where a voluminous fee application

23 is filed, in exercising its billing judgment the district court is

24 not required to set forth an hour-by-hour analysis of the fee

25 request. It has been recognized that in such cases, the district

26 court has the authority to make across-the-board percentage cuts

                                    4

1  in the number of hours claimed as a practical means of trimming the
2  fat from a fee application. However, irrespective of its obvious
3  utility, the percentage or, 'meat-axe approach,' nonetheless has
4  been criticized when employed in cases where the fee applications
5  at issue involved substantial amounts of money and where district
6  courts failed adequately to articulate their reasons for selecting
7  specific percentage deductions." In re Smith, 586 at 1173-1174
8  (internal quotation marks and citation omitted).

### III. Analysis

10 **A. Whether Plaintiffs' request is governed by the ESA or EAJA.**

11     Plaintiffs' fee request is pursuant to the Endangered Species
12 Act citizen suit provision, 16 U.S.C. § 1540(g)(4), or in the
13 alternative to the Equal Access to Justice Act. Under the EAJA,
14 plantiffs would be entitled to fees upon a showing that (1) the
15 party seeking fees is the prevailing party; (2) the government has
16 not met its burden of showing that its positions were substantially
17 justified or that special circumstances make an award unjust; and
18 (3) the requested fees and costs are reasonable. United States v.
19 Milner, 583 F.3d 1174, 1196 (9th Cir. 2009) (citing Perez-Arellano
20 v. Smith, 279 F.3d 791, 793 (9th Cir. 2002)). The EAJA caps hourly
21 rates at $150, with a cost of living adjustment. Under the ESA's
22 citizen suit provision, a court may award fees when the plaintiffs
23 have achieved some degree of success on the merits, and contributed
24 substantially to the goals of the ESA. See, e.g., Home Builders
25 Ass'n v. United States Fish & Wildlife Serv., 2007 U.S. Dist. LEXIS
26 94339 (E.D. Cal. 2007)(Shub). There is no statutory cap on fees

5

1   under the ESA. Instead, fees are calculated according to the

2   lodestar.

3       In this case, plaintiffs argue, and defendants apparently

4   concede, that plaintiffs' fee request is governed by the Endangered

5   Species Act, rather than the EAJA. According to defendants, "while

6   the [APA] claims against NMFS BiOP, standing alone, would be

7   governed by the. . . EAJA, . . . the relief sought against the

8   Corps is governed by the ESA citizen suit provision. . . Thus, for

9   this opposition, Federal Defendants analyze this fee claim under

10  the ESA citizen suit fee-shifting provisions." Defs.' Opp'n 3:29-

11  27.

12      Under the Endangered Species' Act, a district court "may award

13  costs of litigation (including reasonable attorney and expert

14  witness fees) to any party, whenever the court determines such

15  award is appropriate." 16 U.S.C. § 1540(g)(4). Since "The

16  attorney's fees provisions of the ESA and the Civil Rights Act of

17  1964 likewise have a common purpose," courts "apply to the ESA the

18  civil rights standard for awarding fees to prevailing parties."

19  Marbled Murrelet v. Babbitt, 182 F.3d 1091, 1095 (9th

20  Cir.1999)(cert. denied 528 U.S. 1115 (2000)). Thus, an award of

21  attorney's fees is appropriate when the plaintiffs have achieved

22  some degree of success on the merits. Ruckelshaus v. Sierra Club,

23  463 U.S. 680, 684 (1983); Marbled Murrelet, 182 F. 3d at 1095 ("the

24  Supreme Court has read a prevailing party requirement into the

25  ESA").

26      Additionally, some district courts have required the plaintiff

1  to have contributed substantially to the goals of the ESA. See
2  e.g., Home Builders Ass'n v. United States Fish & Wildlife Serv.,
3  2007 U.S. Dist. LEXIS 94339 (E.D. Cal. 2007)(Shub) affirmed by Home
4  Builders Ass'n of N. Cal. v. United States Fish & Wildlife Serv.,
5  616 F.3d 983 (9th Cir. 2010). The "substantial contribution"
6  requirement was set forth in Carson-Truckee Water Conservancy
7  Dist. v. Sec'y of the Interior, 748 F.2d 523, 524 (9th Cir. 1984),
8  which was later overruled on other grounds by Marbled Murrelet 182
9  F.3d 1091 at 1094-95 (9th Cir. 1999). The Ninth Circuit has not
10 decided whether the Carson-Tucker substantial contribution
11 requirement has been abandoned. See e.g., Envtl. Prot. Info. Ctr.
12 v. Pac. Lumber Co., 103 Fed. Appx. 627, 629 (9th Cir. 2004)("We
13 need not resolve this doctrinal dispute, because [the] motion for
14 attorneys fees satisfied both standards."). In recent cases, the
15 Ninth Circuit has omitted the "substantial contribution"
16 requirement from its attorneys' fees analysis. In a case filed
17 under the Clean Water Act,[2] the Ninth Circuit characterized the
18 proper attorneys fees analysis to be applied by the district
19 courts: ""First, the court must find that the fee applicant is a
20 'prevailing or substantially prevailing party.' Second, it must
21 find that an award of attorney fees is 'appropriate.' An award of
22 attorney fees may not be appropriate where 'special circumstances'
23 are found." Resurrection Bay Conservation Alliance v. City of
24
25      [2] The Supreme Court has held that the attorneys fees
   provisions of the Clean Water Act and the ESA are identical and
   should be interpreted accordingly. Ruckelshaus v. Sierra Club, 463
26 U.S. 680, 691 (1983).

1  Seward, 640 F.3d 1087, 1091 (9th Cir. 2011)(internal citations
2  omitted).    Defendants  concede  that  plaintiffs  have  met  the
3  requirements  for  fees  under  the  ESA  because  plaintiffs  have
4  "achieved some success in this case. . . Thus, they are eligible
5  for fees." Defs.' Opp'n 5:21-25. The remaining dispute, therefore,
6  is over the amount of attorneys fees sought by plaintiffs.

7       Additionally, the Ninth Circuit has held that plaintiffs may
8  recover under the "catalyst theory" in ESA cases. Ass'n of Cal.
9  Water Agencies v. Evans, 386 F.3d 879, 885 (9th Cir. 2004). The
10  catalyst  theory  allows  attorneys  fees  to  be  awarded  to  a
11  "plaintiff who, by simply filing a nonfrivolous but nonetheless
12  potentially  meritless  lawsuit  (it  will  never  be  determined),  has
13  reached  the  'sought-after  destination'  without  obtaining   any
14  judicial relief." Id. at 884.

15      Here, plaintiffs have prevailed on the merits of at least some
16  of their  claims,  and  achieved  a  remedial  order  requiring  a  new
17  Biological Opinion and interim remedial measures to protect listed
18  species during the  remand  period.  The  court  therefore  concludes
19  that plaintiffs are entitled to fees under the Endangered Species
20  Act.

21  **B. The Fee Amount**

22      Having established that plaintiffs meet the requirement to
23  obtain some fees under the Endangered Species Act, the court now
24  considers the amount of fees and costs that are reasonable. "The
25  usual approach to evaluating the reasonableness of an attorney fee
26  award  requires  application  of  the  lodestar  method  and  Kerr

8

factors." <u>Resurrection Bay Conservation Alliance v. City of Seward</u>, 640 F.3d 1087, 1095 (9th Cir. 2011). The lodestar calculation involves multiplying the number of hours reasonably expended on the litigation times a reasonably hourly rate.  The so-called <u>Kerr</u> factors are:

> (1) the time and labor required,[3] (2) the novelty and difficulty of the questions involved, (3) the skill requisite to perform the legal service properly, (4) the preclusion of other employment by the attorney due to acceptance of the case, (5) the customary fee, (6) whether the fee is fixed or contingent,[4] (7) time limitations imposed by the client or the circumstances, (8) the amount involved and the results obtained, (9) the experience, reputation, and ability of the attorneys, (10) the "undesirability" of the case, (11) the nature and length of the professional relationship with the client, and (12) awards in similar cases.

<u>Kerr v. Screen Extras Guild, Inc.</u>, 526 F.2d 67, 70 (9th Cir. 1975).

**i. Reasonableness of the Hours Expended**

Plaintiffs claim to have spent approximately 5,800 hours of attorney time and 97 hours of paralegal time on the litigation in this case. Sproul Decl. ¶ 67, ECF No. 407-2.[5] Plaintiffs are entitled to fees spent on claims on which they prevailed, as well

---

[3] This factor has been deemed duplicative of the "reasonable hours" component of the lodestar calculation.

[4] This factor has been deemed irrelevant by the Supreme Court. <u>See</u> <u>City of Burlington v. Dague</u>, 112 S.Ct. 2638 (1992).

[5] Plaintiffs do not seek recovery of attorneys fees for their FOIA claims, since the parties reached a settlement on those claims, including attorneys fees. Additionally, plaintiffs do not seek fees for time spend litigating Claim 6, which was bifurcated from the case at bar.

1  as on claims "related" to the prevailing claims. A district court

2  may award fees for time spent on unsuccessful claims when a the

3  claims for relief involve a "common core of facts or are based on

4  related legal theories." Hensley v. Eckerhart, 461 U.S. 424, 434

5  (U.S. 1983). In such cases, the court "should focus on the

6  significance of the overall relief obtained by the plaintiff in

7  relation to the hours reasonably expended on the litigation. Where

8  a plaintiff has obtained excellent results, his attorney should

9  recover a fully compensatory fee." Id. Plaintiffs assert and

10 defendants agree that "Plaintiff's claims and requested relief all

11 arose out of the same factual basis-the challenged BiOp." Defs.'

12 Opp'n 3. Looking at the result obtained by plaintiffs, the court

13 agrees that Claims 1, 2, 3, 4, and 9 are related within the Hensley

14 meaning, and plaintiffs may recover for work performed on these

15 claims. As noted, plaintiffs do not seek to recover for time spent

16 on their FOIA claims, nor on the claim against YWCA, which was

17 bifurcated from this case.

18     With respect to Claim 9, plaintiffs are also entitled to

19 attorneys fees under the catalyst theory. Claim 9 sought to compel

20 the defendants to promulgate regulations to protect green sturgeon,

21 as required by § 4(d) of the Endangered Species Act. The court

22 ultimately dismissed this claim as moot, after the regulations were

23 promulgated.

24     The court disagrees with plaintiffs, however, that all 5,800

25 hours billed for these claims are reasonable. While the "court is

26 not required to set forth an hour-by-hour analysis of the fee

1   request," <u>In re Smith</u>, 586 at 1174, the court has identified some

2   areas in which plaintiffs' submitted hours are unreasonable,

3   warranting a reduction beyond the 10% "haircut." The court finds

4   that plaintiffs' hours should be reduced by 20%.

5       Plaintiff has billed some time spent traveling at the full

6   hourly rate. The court finds that it is reasonable to reduce hours

7   billed for travel time by half. <u>See e.g.</u> <u>Watkins v. Fordice</u>, 7 F.3d

8   453, 459 (5th Cir. 1993)(affirming a reduction by half of the

9   hourly rate for time billed for travel, where the Voting Rights Act

10  provided for "reasonable fees" to be awarded to the prevailing

11  party.). Plaintiffs' submitted timesheets do not separate travel

12  time from time spent on another task. For example, on March 17,

13  2009, Orion billed 16 hours to "Attend and defend deposition of B.

14  Cavallo; travel to and from Sacramento for same." The court cannot

15  discern which portion of the 16 hours was spent traveling and

16  therefore subject to a 50% reduction.

17      Defendants argue that they should not be made to pay

18  attorneys fees for clerical tasks performed by attorneys. Courts

19  may deem clerical costs to constitute overhead, and already

20  included in the hourly rate. <u>See, e.g.</u>, <u>Martinez v. Thrifty</u>

21  <u>Payless, Inc</u>., No. 02-cv-745, ECF No. 68; <u>FREVACH v. MULTNOMAH</u>

22  <u>COUNTY</u>, 2001 U.S. Dist. LEXIS 22255 (D. Or. 2001). Defendants have

23  identified what they claim are 654 hours of clerical work billed

24  at attorney rates, for a total of $219,276. However, upon review

25  of the exhibits to defendant's supplemental brief, it appears to

26  the court that some of the entries that defendant characterizes as

1  clerical time include time for which plaintiff could reasonably
2  bill, though the court cannot discern precisely how much time that
3  is.

4       Defendants object to time plaintiffs billed for phone calls
5  and conferences with each other. Defendants contend that: "no
6  reasonable client would pay for the numerous occasions in which
7  three or more attorneys each billed time to discuss things like
8  'strategy,' or each other's legal research." Opp'n 9. Defendants
9  assert that 964 such hours are billed, for a total of $425,975.
10 Defendants claim that time spent in conference with multiple
11 attorneys can be billed to one attorney only. Key Bank Nat'l Ass'n
12 v. Van Noy, 598 F. Supp. 2d 1160, 1166 (D. Or. 2009), cited in
13 defendants' opposition, is distinguished because in that case, the
14 court concluded that one attorney could have performed all of the
15 work on the case, and therefore that billing for multiple attorneys
16 to conference about the case was unreasonable. Here, the court has
17 made no such conclusion, and defendants have not argued for one.
18 Although defendants have not identified specific conferences for
19 which it was unreasonable to have multiple attorneys present, the
20 court finds that plaintiffs' practice of billing for each attorney
21 present at a conference supports the overall 20% fee reduction.
22 **ii. Reasonableness of the Hourly Rates**
23 **a. The relevant legal community**

24      Plaintiffs contend that they are entitled to hourly rates
25 based on prevailing rates in San Francisco. "Generally, the
26 relevant community is the forum in which the district court sits."

1    Barjon v. Dalton, 132 F.3d 496, 500 (9th Cir. 1997). Rates from
2    outside the forum may be used if local counsel was unwilling or
3    unable to do the work because they "lack the degree of experience,
4    expertise, or specialization required to handle properly the case."
5    Gates v. Deukmejian, 987 F.2d 1392, 1405 (9th Cir. 1992). See also
6    L.H. v. Schwarzenegger, 645 F. Supp. 2d 888 (E.D. Cal. 2009).

7         In this case, plaintiffs South Yuba Citizens League sent
8    letters to seven law firms to solicit representation. Rainey Decl.
9    2, ECF No. 407-19. Environmental Associates, located in San
10   Francisco, was the only organization willing to take the case on
11   a fee-recovery basis. Id. Defendants argue that San Francisco rates
12   may only apply if local counsel is unwilling *because* they lack the
13   degree of experience, expertise or specialization, Opp'n. 19-20,
14   and not unwilling because of the fee arrangement. The court finds
15   this reading of Gates to be untenable, and contrary to the purpose
16   of the fee-shift provision of the Endangered Species' Act. Under
17   defendants' reading, it would be difficult for any plaintiffs who
18   lack their own resources to retain counsel, especially in secondary
19   markets where the availability of law firms willing to take cases
20   on a contingency basis is limited. Moreover, Barjon emphasizes that
21   in order to get out-of-forum rates, plaintiffs may show "proof of
22   either unwillingness *or* inability due to lack of experience,
23   expertise, or specialization." 132 F.3d at 501 (emphasis in the
24   original). The court concludes that the lack of experience,
25   expertise, or specialization requirement applies only to the
26   inquiry of whether local firms are able to perform the work, and

1   not whether they are willing.

2      Based on the Rainey declaration, the court concludes that no

3   Sacramento counsel were available to represent plaintiffs in this

4   case, and that San Francisco rates apply.

5      Plaintiff's stated San Francisco rates are based on the Laffey

6   Matrix, and range from $585 per hour for an attorney with 25 years

7   of experience to $315 per hour for an attorney with four years of

8   experience.   Plaintiffs   requested   rates   are   supported   by

9   declarations from counsel that compare the rates with those of

10  comparable attorneys in San Francisco. Plaintiffs have also

11  submitted a declaration by Richard Pearl, an expert in court-

12  awarded attorneys fees. See Exs. 1 and 2 to Sproul Decl., ECF No

13  407-3 and 407-4.

14     Plaintiffs have not, however, accounted for the fact that this

15  litigation has spanned several years. The rates given by plaintiffs

16  are based on the current experience level of each of the attorneys,

17  and not on the experience level of the attorney at the time the

18  work   was   performed.   The   court   finds   that   this   discrepancy

19  contributes to the reasonableness of an overall 20% reduction in

20  the fee amount.

## IV. Conclusion

21

22     For the reasons stated herein, the court ORDERS as follows:

23          [1] Plaintiffs' motion, ECF No. 407 is GRANTED in part

24          and DENIED in part.

25          [2] Plaintiffs are entitled to recover fees and costs

26          in the amount of $1,875,951.20 from the federal

14

1    defendants. This reflects a 20% reduction in the

2    loadstar amount requested by plaintiffs.

3  IT IS SO ORDERED.

4  DATED: March 26, 2012.

5

6

7

8  LAWRENCE K. KARLTON
   SENIOR JUDGE
9  UNITED STATES DISTRICT COURT

10

11

12

13

14

15

16

17

18

19

20

21

22

23

24

25

26