1

2

3

4

5

6

7

8                    UNITED STATES DISTRICT COURT

9                    EASTERN DISTRICT OF CALIFORNIA

10

11  SOUTH YUBA RIVER CITIZENS
    LEAGUE and FRIENDS OF THE
12  RIVER,
                                        NO. CIV. S-06-2845 LKK/JFM
13
              Plaintiffs,
14
         v.                                        O R D E R
15
    NATIONAL MARINE FISHERIES
16  SERVICE, et al.,

17            Defendants.

18  _____/

19        Pending before the court is a motion for attorneys fees. ECF

20  No. 407. Plaintiffs seek fees and costs for their work challenging

21  a Biological Opinion issued by the National Marine Fisheries

22  Service related to two dams on the South Yuba River operated by the

23  Army Corps of Engineers. Plaintiffs seek fees under the Equal

24  Access to Justice Act[1] and under the Endangered Species' Act. For

25  _____

26        [1] As discussed below, the defendants concede that the fee
    request in this case is governed by the Endangered Species Act and

                                    1

1  the reasons stated below, plaintiffs' motion is granted in part and

2  denied in part.

3                          **I. Procedural Background**

4        Plaintiffs filed the operative Sixth Amended Complaint on June

5  17, 2008. ECF No. 150. The complaint alleged eleven claims for

6  relief. Of those, Claims 1 and 2, arising under the Administrative

7  Procedures Act ("APA"), had previously been dismissed as moot by

8  this court. See Sixth Amended Complaint 28:23-29:6. The remaining

9  claims included five separate Freedom of Information Act claims

10 (Claims 5, 7, 8, 10, and 11); Claim 6 against defendant Yuba County

11 Water Agency, which was bifurcated from the instant action, ECF No.

12 165; Claim 3 for violation of the APA by issuing an inadequate

13 BiOp; Claim 4 violation of the Endangered Species Act ("ESA") for

14 "take" of listed fish species; and Claim 9 for violation of the APA

15 for failing to promulgate protective regulations for Green

16 Sturgeon.

17       The court entered summary judgment in favor of defendants on

18 the Claim 8, a FOIA claim. ECF No. 151. The remaining four FOIA

19 claims were dismissed pursuant to stipulated settlement approved

20 by the court. ECF No. 170. The parties reached a settlement

21 agreement as to attorney's fees and costs on all FOIA claims. ECF

22 No. 182. In the settlement agreement, NMFS agreed to pay counsel

23 for SYRCL $89,236 in attorney's fees and costs for the FOIA claims.

24 The agreement provides that the payment fully satisfied any claim

25 _____

26 not the EAJA.

for FOIA attorneys fees by plaintiffs in thie case. Id.

Claim 9 was dismissed as moot after the NMFS promulgated a rule specifying the protection owed to Green Sturgeon. ECF No. 316.

Thus, the only claims adjudicated on the merits were Claims 3 and 4. With respect to Claim 3, plaintiffs successfully challenged the conclusions reached in a Biological Opinion issued by National Marine Fishery Service. In July 2010, this court held that government had acted arbitrarily and capriciously in issuing the Biological Opinion. ECF No. 316. In April 2011 the matter was remanded to the National Marine Fishery Service to prepare a new Biological Opinion consistent with the court's July Order by December 12, 2011. ECF No. 398. In July 2011, this court issued a further remedial order, adopting some of plaintiffs' requested interim injunctive measures. ECF No. 402.

With respect to Claim 4, the court granted summary judgment to defendants on the question of whether defendants were causing "take" of listed species without the protection of a valid Incidental Take Statement. See ECF No. 316 at 71. After further briefing, the court dismissed the remainder of Claim 4 as prudentially moot. ECF No. 343. Plaintiffs filed a motion for reconsideration of that order, which this court denied on February 13, 2012. ECF No. 462.

Plaintiffs' initial fee motion sought approximately $2.33 million in attorneys fees, $40,094 in expert costs, and $11,752.03 in other costs. Defendants sought to reduce the total award by 90%. The court ordered defendant to file an additional brief containing

1 objections to individual entries in plaintiff's billing records.

2 Defendants did so by filing a brief objecting to $1.1 million in

3 specific line items, but continuing to request a 90% reduction.

4 Plaintiffs have filed a response brief.

5                    **II. Standard for a Motion for Fees under**

6                            **the Endangered Species Act.**

7      The ESA's fee-shifting provision is a waiver of sovereign

8 immunity. As such, it "must be strictly construed in the United

9 State's favor." <u>Ardestani v. INS</u>, 502 U.S. 129, 137 (1991). It is

10 the plaintiff's burden to show both that the hourly fee requested

11 is reasonable, and that the number of hours spent is reasonable.

12 <u>Hensley v. Eckerhart</u>, 461 U.S. 424, 434 (1983).

13     Because the district court's "familiarity with the case allows

14 it to distinguish reasonable from excessive fee requests," <u>Moreno</u>

15 <u>v. City of Sacramento</u>, 534 F.3d 1106, 1116 (9th Cir. 2008),

16 district courts have "a great deal of discretion in determining the

17 reasonableness of the fee." <u>In re Smith</u>, 586 F.3d 1169, 1173-1174

18 (9th Cir. 2009). A district court judge may "impose a small

19 reduction, no greater than 10 percent--a 'haircut'--based on its

20 exercise of discretion and without a more specific explanation.

21 <u>Moreno</u>, 534 F.3d at 1112.

22     In cases such as this one "where a voluminous fee application

23 is filed, in exercising its billing judgment the district court is

24 not required to set forth an hour-by-hour analysis of the fee

25 request. It has been recognized that in such cases, the district

26 court has the authority to make across-the-board percentage cuts

                                    4

1  in the number of hours claimed as a practical means of trimming the

2  fat from a fee application. However, irrespective of its obvious

3  utility, the percentage or, 'meat-axe approach,' nonetheless has

4  been criticized when employed in cases where the fee applications

5  at issue involved substantial amounts of money and where district

6  courts failed adequately to articulate their reasons for selecting

7  specific percentage deductions." In re Smith, 586 at 1173-1174

8  (internal quotation marks and citation omitted).

### III. Analysis

**A. Whether Plaintiffs' request is governed by the ESA or EAJA.**

11  Plaintiffs' fee request is pursuant to the Endangered Species

12  Act citizen suit provision, 16 U.S.C. § 1540(g)(4), or in the

13  alternative to the Equal Access to Justice Act. Under the EAJA,

14  plantiffs would be entitled to fees upon a showing that (1) the

15  party seeking fees is the prevailing party; (2) the government has

16  not met its burden of showing that its positions were substantially

17  justified or that special circumstances make an award unjust; and

18  (3) the requested fees and costs are reasonable. United States v.

19  Milner, 583 F.3d 1174, 1196 (9th Cir. 2009) (citing Perez-Arellano

20  v. Smith, 279 F.3d 791, 793 (9th Cir. 2002)). The EAJA caps hourly

21  rates at $150, with a cost of living adjustment. Under the ESA's

22  citizen suit provision, a court may award fees when the plaintiffs

23  have achieved some degree of success on the merits, and contributed

24  substantially to the goals of the ESA. See, e.g., Home Builders

25  Ass'n v. United States Fish & Wildlife Serv., 2007 U.S. Dist. LEXIS

26  94339 (E.D. Cal. 2007)(Shub). There is no statutory cap on fees

1  under the ESA. Instead, fees are calculated according to the

2  lodestar.

3      In this case, plaintiffs argue, and defendants apparently

4  concede, that plaintiffs' fee request is governed by the Endangered

5  Species Act, rather than the EAJA. According to defendants, "while

6  the [APA] claims against NMFS BiOP, standing alone, would be

7  governed by the. . . EAJA, . . . the relief sought against the

8  Corps is governed by the ESA citizen suit provision. . . Thus, for

9  this opposition, Federal Defendants analyze this fee claim under

10 the ESA citizen suit fee-shifting provisions." Defs.' Opp'n 3:29-

11 27.

12     Under the Endangered Species' Act, a district court "may award

13 costs of litigation (including reasonable attorney and expert

14 witness fees) to any party, whenever the court determines such

15 award is appropriate." 16 U.S.C. § 1540(g)(4). Since "The

16 attorney's fees provisions of the ESA and the Civil Rights Act of

17 1964 likewise have a common purpose," courts "apply to the ESA the

18 civil rights standard for awarding fees to prevailing parties."

19 Marbled Murrelet v. Babbitt, 182 F.3d 1091, 1095 (9th

20 Cir.1999)(cert. denied 528 U.S. 1115 (2000)). Thus, an award of

21 attorney's fees is appropriate when the plaintiffs have achieved

22 some degree of success on the merits. Ruckelshaus v. Sierra Club,

23 463 U.S. 680, 684 (1983); Marbled Murrelet, 182 F. 3d at 1095 ("the

24 Supreme Court has read a prevailing party requirement into the

25 ESA").

26     Additionally, some district courts have required the plaintiff

1   to have contributed substantially to the goals of the ESA. See

2   e.g., Home Builders Ass'n v. United States Fish & Wildlife Serv.,

3   2007 U.S. Dist. LEXIS 94339 (E.D. Cal. 2007)(Shub) affirmed by Home

4   Builders Ass'n of N. Cal. v. United States Fish & Wildlife Serv.,

5   616 F.3d 983 (9th Cir. 2010). The "substantial contribution"

6   requirement was set forth in Carson-Truckee Water Conservancy

7   Dist. v. Sec'y of the Interior, 748 F.2d 523, 524 (9th Cir. 1984),

8   which was later overruled on other grounds by Marbled Murrelet 182

9   F.3d 1091 at 1094-95 (9th Cir. 1999). The Ninth Circuit has not

10  decided whether the Carson-Tucker substantial contribution

11  requirement has been abandoned. See e.g., Envtl. Prot. Info. Ctr.

12  v. Pac. Lumber Co., 103 Fed. Appx. 627, 629 (9th Cir. 2004)("We

13  need not resolve this doctrinal dispute, because [the] motion for

14  attorneys fees satisfied both standards."). In recent cases, the

15  Ninth Circuit has omitted the "substantial contribution"

16  requirement from its attorneys' fees analysis. In a case filed

17  under the Clean Water Act,[2] the Ninth Circuit characterized the

18  proper attorneys fees analysis to be applied by the district

19  courts: ""First, the court must find that the fee applicant is a

20  'prevailing or substantially prevailing party.' Second, it must

21  find that an award of attorney fees is 'appropriate.' An award of

22  attorney fees may not be appropriate where 'special circumstances'

23  are found." Resurrection Bay Conservation Alliance v. City of

24

25          [2]  The Supreme Court has held that the attorneys fees
    provisions of the Clean Water Act and the ESA are identical and
26  should be interpreted accordingly. Ruckelshaus v. Sierra Club, 463
    U.S. 680, 691 (1983).

1  <u>Seward</u>, 640 F.3d 1087, 1091 (9th Cir. 2011)(internal citations
2  omitted).  Defendants  concede  that  plaintiffs  have  met  the
3  requirements  for  fees  under  the  ESA  because  plaintiffs  have
4  "achieved some success in this case. . . Thus, they are eligible
5  for fees." Defs.' Opp'n 5:21-25. The remaining dispute, therefore,
6  is over the amount of attorneys fees sought by plaintiffs.

7     Additionally, the Ninth Circuit has held that plaintiffs may
8  recover under the "catalyst theory" in ESA cases. <u>Ass'n of Cal.</u>
9  <u>Water Agencies v. Evans</u>, 386 F.3d 879, 885 (9th Cir. 2004). The
10  catalyst  theory  allows  attorneys  fees  to  be  awarded  to  a
11  "plaintiff who, by simply filing a nonfrivolous but nonetheless
12  potentially  meritless  lawsuit  (it  will  never  be  determined),  has
13  reached  the  'sought-after  destination'  without  obtaining  any
14  judicial relief." <u>Id.</u> at 884.

15     Here, plaintiffs have prevailed on the merits of at least some
16  of their claims, and achieved a remedial order requiring a new
17  Biological Opinion and interim remedial measures to protect listed
18  species during the remand period. The court therefore concludes
19  that plaintiffs are entitled to fees under the Endangered Species
20  Act.

21  **B. The Fee Amount**

22     Having established that plaintiffs meet the requirement to
23  obtain some fees under the Endangered Species Act, the court now
24  considers the amount of fees and costs that are reasonable. "The
25  usual approach to evaluating the reasonableness of an attorney fee
26  award  requires  application  of  the  lodestar  method  and  <u>Kerr</u>

factors." <u>Resurrection Bay Conservation Alliance v. City of Seward</u>, 640 F.3d 1087, 1095 (9th Cir. 2011). The lodestar calculation involves multiplying the number of hours reasonably expended on the litigation times a reasonably hourly rate.  The so-called <u>Kerr</u> factors are:

> (1) the time and labor required,[3] (2) the novelty and difficulty of the questions involved, (3) the skill requisite to perform the legal service properly, (4) the preclusion of other employment by the attorney due to acceptance of the case, (5) the customary fee, (6) whether the fee is fixed or contingent,[4] (7) time limitations imposed by the client or the circumstances, (8) the amount involved and the results obtained, (9) the experience, reputation, and ability of the attorneys, (10) the "undesirability" of the case, (11) the nature and length of the professional relationship with the client, and (12) awards in similar cases.

<u>Kerr v. Screen Extras Guild, Inc.</u>, 526 F.2d 67, 70 (9th Cir. 1975).

**i. Reasonableness of the Hours Expended**

Plaintiffs claim to have spent approximately 5,800 hours of attorney time and 97 hours of paralegal time on the litigation in this case. Sproul Decl. ¶ 67, ECF No. 407-2.[5] Plaintiffs are entitled to fees spent on claims on which they prevailed, as well

---

[3] This factor has been deemed duplicative of the "reasonable hours" component of the lodestar calculation.

[4] This factor has been deemed irrelevant by the Supreme Court. <u>See</u> <u>City of Burlington v. Dague</u>, 112 S.Ct. 2638 (1992).

[5] Plaintiffs do not seek recovery of attorneys fees for their FOIA claims, since the parties reached a settlement on those claims, including attorneys fees. Additionally, plaintiffs do not seek fees for time spend litigating Claim 6, which was bifurcated from the case at bar.

1   as on claims "related" to the prevailing claims. A district court

2   may award fees for time spent on unsuccessful claims when a the

3   claims for relief involve a "common core of facts or are based on

4   related legal theories." Hensley v. Eckerhart, 461 U.S. 424, 434

5   (U.S. 1983). In such cases, the court "should focus on the

6   significance of the overall relief obtained by the plaintiff in

7   relation to the hours reasonably expended on the litigation. Where

8   a plaintiff has obtained excellent results, his attorney should

9   recover a fully compensatory fee." Id. Plaintiffs assert and

10  defendants agree that "Plaintiff's claims and requested relief all

11  arose out of the same factual basis-the challenged BiOp." Defs.'

12  Opp'n 3. Looking at the result obtained by plaintiffs, the court

13  agrees that Claims 1, 2, 3, 4, and 9 are related within the Hensley

14  meaning, and plaintiffs may recover for work performed on these

15  claims. As noted, plaintiffs do not seek to recover for time spent

16  on their FOIA claims, nor on the claim against YWCA, which was

17  bifurcated from this case.

18      With respect to Claim 9, plaintiffs are also entitled to

19  attorneys fees under the catalyst theory. Claim 9 sought to compel

20  the defendants to promulgate regulations to protect green sturgeon,

21  as required by § 4(d) of the Endangered Species Act. The court

22  ultimately dismissed this claim as moot, after the regulations were

23  promulgated.

24      The court disagrees with plaintiffs, however, that all 5,800

25  hours billed for these claims are reasonable. While the "court is

26  not required to set forth an hour-by-hour analysis of the fee

1  request," In re Smith, 586 at 1174, the court has identified some

2  areas in which plaintiffs' submitted hours are unreasonable,

3  warranting a reduction beyond the 10% "haircut." The court finds

4  that plaintiffs' hours should be reduced by 20%.

5      Plaintiff has billed some time spent traveling at the full

6  hourly rate. The court finds that it is reasonable to reduce hours

7  billed for travel time by half. See e.g. Watkins v. Fordice, 7 F.3d

8  453, 459 (5th Cir. 1993)(affirming a reduction by half of the

9  hourly rate for time billed for travel, where the Voting Rights Act

10 provided for "reasonable fees" to be awarded to the prevailing

11 party.). Plaintiffs' submitted timesheets do not separate travel

12 time from time spent on another task. For example, on March 17,

13 2009, Orion billed 16 hours to "Attend and defend deposition of B.

14 Cavallo; travel to and from Sacramento for same." The court cannot

15 discern which portion of the 16 hours was spent traveling and

16 therefore subject to a 50% reduction.

17     Defendants argue that they should not be made to pay

18 attorneys fees for clerical tasks performed by attorneys. Courts

19 may deem clerical costs to constitute overhead, and already

20 included in the hourly rate. See, e.g., Martinez v. Thrifty

21 Payless, Inc., No. 02-cv-745, ECF No. 68; FREVACH v. MULTNOMAH

22 COUNTY, 2001 U.S. Dist. LEXIS 22255 (D. Or. 2001). Defendants have

23 identified what they claim are 654 hours of clerical work billed

24 at attorney rates, for a total of $219,276. However, upon review

25 of the exhibits to defendant's supplemental brief, it appears to

26 the court that some of the entries that defendant characterizes as

1   clerical time include time for which plaintiff could reasonably
2   bill, though the court cannot discern precisely how much time that
3   is.

4        Defendants object to time plaintiffs billed for phone calls
5   and conferences with each other. Defendants contend that: "no
6   reasonable client would pay for the numerous occasions in which
7   three or more attorneys each billed time to discuss things like
8   'strategy,' or each other's legal research." Opp'n 9. Defendants
9   assert that 964 such hours are billed, for a total of $425,975.
10  Defendants claim that time spent in conference with multiple
11  attorneys can be billed to one attorney only. <u>Key Bank Nat'l Ass'n</u>
12  <u>v. Van Noy</u>, 598 F. Supp. 2d 1160, 1166 (D. Or. 2009), cited in
13  defendants' opposition, is distinguished because in that case, the
14  court concluded that one attorney could have performed all of the
15  work on the case, and therefore that billing for multiple attorneys
16  to conference about the case was unreasonable. Here, the court has
17  made no such conclusion, and defendants have not argued for one.
18  Although defendants have not identified specific conferences for
19  which it was unreasonable to have multiple attorneys present, the
20  court finds that plaintiffs' practice of billing for each attorney
21  present at a conference supports the overall 20% fee reduction.
22  **ii. Reasonableness of the Hourly Rates**
23  **a. The relevant legal community**

24       Plaintiffs contend that they are entitled to hourly rates
25  based on prevailing rates in San Francisco. "Generally, the
26  relevant community is the forum in which the district court sits."

1   Barjon v. Dalton, 132 F.3d 496, 500 (9th Cir. 1997). Rates from

2   outside the forum may be used if local counsel was unwilling or

3   unable to do the work because they "lack the degree of experience,

4   expertise, or specialization required to handle properly the case."

5   Gates v. Deukmejian, 987 F.2d 1392, 1405 (9th Cir. 1992). See also

6   L.H. v. Schwarzenegger, 645 F. Supp. 2d 888 (E.D. Cal. 2009).

7        In this case, plaintiffs South Yuba Citizens League sent

8   letters to seven law firms to solicit representation. Rainey Decl.

9   2, ECF No. 407-19. Environmental Associates, located in San

10  Francisco, was the only organization willing to take the case on

11  a fee-recovery basis. Id. Defendants argue that San Francisco rates

12  may only apply if local counsel is unwilling *because* they lack the

13  degree of experience, expertise or specialization, Opp'n. 19-20,

14  and not unwilling because of the fee arrangement. The court finds

15  this reading of Gates to be untenable, and contrary to the purpose

16  of the fee-shift provision of the Endangered Species' Act. Under

17  defendants' reading, it would be difficult for any plaintiffs who

18  lack their own resources to retain counsel, especially in secondary

19  markets where the availability of law firms willing to take cases

20  on a contingency basis is limited. Moreover, Barjon emphasizes that

21  in order to get out-of-forum rates, plaintiffs may show "proof of

22  either unwillingness *or* inability due to lack of experience,

23  expertise, or specialization." 132 F.3d at 501 (emphasis in the

24  original). The court concludes that the lack of experience,

25  expertise, or specialization requirement applies only to the

26  inquiry of whether local firms are able to perform the work, and

13

1  not whether they are willing.

2      Based on the Rainey declaration, the court concludes that no
3  Sacramento counsel were available to represent plaintiffs in this
4  case, and that San Francisco rates apply.

5      Plaintiff's stated San Francisco rates are based on the Laffey
6  Matrix, and range from $585 per hour for an attorney with 25 years
7  of experience to $315 per hour for an attorney with four years of
8  experience.   Plaintiffs   requested   rates   are   supported   by
9  declarations  from  counsel  that  compare  the  rates  with  those  of
10 comparable  attorneys  in  San  Francisco.  Plaintiffs  have  also
11 submitted  a  declaration  by  Richard  Pearl,  an  expert  in  court-
12 awarded attorneys fees. See Exs. 1 and 2 to Sproul Decl., ECF No
13 407-3 and 407-4.

14     Plaintiffs have not, however, accounted for the fact that this
15 litigation has spanned several years. The rates given by plaintiffs
16 are based on the current experience level of each of the attorneys,
17 and not on the experience level of the attorney at the time the
18 work  was  performed.  The  court  finds  that  this  discrepancy
19 contributes to the reasonableness of an overall 20% reduction in
20 the fee amount.

### IV. Conclusion

21
22     For the reasons stated herein, the court ORDERS as follows:
23          [1] Plaintiffs' motion, ECF No. 407 is GRANTED in part
24          and DENIED in part.
25          [2] Plaintiffs are entitled to recover fees and costs
26          in the amount of $1,875,951.20 from the federal

1          defendants. This reflects a 20% reduction in the

2          loadstar amount requested by plaintiffs.

3     IT IS SO ORDERED.

4     DATED: March 26, 2012.

5

6

7

8                         LAWRENCE K. KARLTON
                          SENIOR JUDGE
9                         UNITED STATES DISTRICT COURT

10

11

12

13

14

15

16

17

18

19

20

21

22

23

24

25

26